No. 25-10973-G

In the
# United States Court of Appeals for
# the Eleventh Circuit

BOE, ET AL. v. MARSHALL, ET AL.,
(IN RE: MELODY H. EAGAN & JEFFREY P. DOSS)

———————

On Appeal from the United States District Court
for the Middle District of Alabama
(Case No. 2:22-CV-184-LCB-CWB)

———————

**INITIAL BRIEF OF APPELLANTS
MELODY H. EAGAN AND JEFFREY P. DOSS**

———————

Richard Klugh
Jenny Wilson
KLUGH WILSON LLC
40 NW Third Street, PH 1
Miami, Florida 33128
Tel: (305) 536-1191

Robert B. Remar
SMITH GAMBRELL &
RUSSELL, LLP
1105 West Peachtree Street NE
Suite 1000
Atlanta, Georgia 30309
Tel: (404) 815-3568

*David Oscar Markus
MARKUS/MOSS PLLC
40 NW Third Street, PH 1
Miami, Florida 33128
Tel: (305) 379-6667
dmarkus@markuslaw.com

*Counsel of record for Appellants
Eagan and Doss

# CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-3, Appellants Melody H. Eagan and Jeffrey P. Doss state that they are individuals and that the following persons or entities may have an interest in the outcome of this appeal:

Alliance Defending Freedom – Counsel for Defendants

Assaf, Eugene F. – Counsel for Respondent

Austin, Sarah – Counsel for Plaintiff

Badham & Buck LLC – Counsel for Respondent

Bailey, Daryl D. – Defendant

Bainbridge Mims Rogers & Smith LLP – Counsel for Respondent

Balkoski, Katherine – Counsel for Respondent

Barnes, Brian W.  – Counsel for Defendants

Beaverstock, Hon. Jeffrey U. – U.S. District Judge

Berg, Rachel – Counsel for Plaintiff

Bowdre, Alexander Barrett – Counsel for Defendants

Brooks, Roger G.  – Counsel for Defendants

Bryan, Hon. Chad W. – U.S. Magistrate Judge

Buck, Brannon Jeffrey – Counsel for Respondent

Burke, Hon. Liles C. – U.S. District Judge

Carr, Danny – Defendant

Charles, Carl Solomon – Respondent

Cooper & Kirk, PLLC – Counsel for Defendants

Copeland Franco Screws & Gill – Counsel for Respondent

Crocker, Champ – Defendant

Davis, James William – Counsel for Defendants

Dominick Feld Hyde, P.C. – Counsel for Respondent

Doss, Jeffrey P. – Respondent / Appellant

Driver, Christopher B. – Counsel for Respondent

Eagan, Melody H. – Respondent / Appellant

Eggleston, Warren Neil – Counsel for Respondent

Esseks, James D. – Respondent

Farella Braun & Martell LLP – Counsel for Respondent

Faulks, LaTisha Gotell – Respondent

Frampton, Henry W. IV – Counsel for Defendants

Franklin, Samuel H. – Counsel for Respondent

GLBTQ Legal Advocates & Defenders – Counsel for Plaintiffs

Hartnett, Kathleen Roberta – Respondent

Holliday, Shannon Lynn – Counsel for Respondent

Human Rights Campaign Foundation – Counsel for Plaintiffs

Jenner & Block LLP – Counsel for Respondent

King & Spalding – Counsel for Plaintiffs

King, Mark Christian – Counsel for Respondent

Kirkland & Ellis LLP – Counsel for Respondent

Klugh, Richard C. – Counsel for Appellants

LaCour Jr., Edmund Gerard – Counsel for Defendants

Levi, Jennifer L. – Respondent

Lightfoot, Franklin & White LLC – Counsel for Respondent

Markus, David Oscar – Counsel for Appellants

Marshall, Steve – Defendant

McCoy, Scott D. – Respondent

McKay, Charles A. – Counsel for Defendants

Mills, Christopher Ernest – Counsel for Defendants

Minter, Shannon – Respondent

National Center for Lesbian Rights – Counsel for Plaintiffs

Office of the Alabama Attorney General – Counsel for Defendants

Orr, Asaf – Respondent

Otterberg, April A. – Counsel for Respondent

Pacheco, Byron – Counsel for Respondent

Patterson, Peter A.  – Counsel for Defendants

Peterson, Misty L. – Counsel for Plaintiffs

Prater IV, Harlan I. – Counsel for Respondent

Pratt, James Andrew – Counsel for Plaintiffs

Proctor, Hon. R. David – U.S. District Judge

Ragsdale, Barry Alan – Counsel for Respondent

Ramer, John D.  – Counsel for Defendants

Reinke, Adam – Counsel for Plaintiffs

Remar, Robert B.– Counsel for Appellants

Rogers, Bruce Frederick – Counsel for Respondent

Schoenberg, Anthony Paul – Counsel for Respondent

Sechler, Philip A.  – Counsel for Defendants

Segall, Robert David – Counsel for Respondent

Seiss, Benjamin Matthew – Counsel for Defendants

Shortnacy, Michael B. – Respondent

Soto, Diego Armando – Counsel for Plaintiffs

Southern Poverty Law Center – Counsel for Plaintiffs

Spero Law LLC – Counsel for Defendants

Stoll, Christopher F. – Counsel for Plaintiffs

Stone, Jessica Lynn – Counsel for Plaintiffs

Tarbox, James H. – Defendant

Terenzi, Elizabeth Nicholson – Counsel for Respondent

Thompson, David H. – Counsel for Defendants

Ugai, John Michael – Counsel for Respondent

Unikowsky, Adam Granich – Counsel for Respondent

Vague, Amie A. – Counsel for Plaintiffs

Vance III, Robert Smith – Counsel for Respondent

Ventiere, Jessica – Defendant

Warbelow, Sarah – Counsel for Plaintiffs

Watkins, Hon. William Keith – U.S. District Judge

Weaver, Cynthia Cheng-Wun – Counsel for Plaintiffs

Whelan, Amy – Counsel for Plaintiffs

Wilson, Jenny – Counsel for Appellants

Wilson, Thomas Alexander – Counsel for Defendants

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. This appeal raises important and novel questions of first impression in this Circuit, including whether sanctions are appropriate for voluntary dismissal of a case in accordance with Federal Rule of Civil Procedure 41(a)(1)(A)(i)—which gives an unqualified right to dismiss for any reason—where a substantially similar case with different plaintiffs is subsequently filed in a different district.

Because the issues in this appeal go to the heart of Rule 41, attorney independence and advocacy, and fundamental constitutional protections, oral argument would aid the Court's resolution.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . C-1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . i

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    I.    RULE 41 GRANTS PLAINTIFFS AN UNQUALIFIED RIGHT TO DISMISS, REGARDLESS OF THE REASONS FOR DOING SO. . . . . . . . . . . . . . . . . . . . . . . . 33

    II.    EAGAN AND DOSS HAD A GOOD-FAITH, OBJECTIVELY REASONABLE BELIEF THEIR CONDUCT WAS PERMISSIBLE AND WERE NOT ON NOTICE THAT RULE 41 WAS SUBSTANTIALLY NARROWED BY A SUBSEQUENTLY ANNOUNCED, POLICY-BASED JUDICIAL LIMITATION . . . . . . . . . . . 45

        A.    THERE MUST BE SUBJECTIVE BAD FAITH TO SANCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

B.   EAGAN AND DOSS HAD NO NOTICE AT THE
     TIME OF DISMISSAL THAT THEIR CONDUCT
     COULD TRIGGER SANCTIONS . . . . . . . . . . . . . . .   49

C.   BELLSOUTH DID NOT PUT EAGAN AND DOSS
     ON NOTICE THAT THE CONDUCT WAS
     PROHIBITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   53

D.   LITIGATION DECISIONS SUPPORTED BY
     REASONABLE INTERPRETATIONS OF THE
     LAW DO NOT FORM A BASIS FOR
     SANCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   56

E.   UNCONTRADICTED TESTIMONY FAVORING
     EAGAN AND DOSS LEFT NO BASIS FOR A
     FINDING OF BAD FAITH . . . . . . . . . . . . . . . . . . . .   58

III.   THE SANCTIONS PROCEEDINGS VIOLATED DUE
       PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   70

A.   EAGAN AND DOSS WERE DEPRIVED OF A
     MEANINGFUL DEFENSE . . . . . . . . . . . . . . . . . . .   71

B.   THE CLOSED-DOOR SEQUESTERED
     SANCTIONS PROCEEDINGS VIOLATED
     DUE PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . . .   74

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   80

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . .   81

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . .   82

# TABLE OF CITATIONS

**CASES:**

*Absolute Activist Value Master Fund Ltd. v. Devine,*
    998 F.3d 1258 (11th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Adams v. Ford Motor Co.,*
    653 F.3d 299 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*Adams v. USAA Cas. Ins. Co.,*
    863 F.3d 1069 (8th Cir. 2017) . . . . . . . . . . . . . . . . . . . 34, 41, 42, 55

*Am. Cyanamid Co. v. McGhee,*
    317 F.2d 295 (5th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Amlong & Amlong, *P.A. v. Denny's, Inc.,*
    500 F.3d 1230 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Arlook v. S. Lichtenberg & Co.,*
    952 F.2d 367 (11th Cir.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*ASX Inv. Corp. v. Newton,*
    183 F.3d 1265 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 35, 37

*Bechuck v. Home Depot USA, Inc.,*
    814 F.3d 287 (5th Cir. 2016) . . . . . . . . . . . . . . 34, 39, 40, 42, 43, 56

*Boettcher v. Hartford Ins. Grp.,*
    927 F.2d 23 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Burns v. Lawther,*
    53 F.3d 1237 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Chambers v. NASCO, Inc.*
    501 U.S. 32 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Cooter & Gell v. Hartmax Corp.*,
  496 U.S. 384 (1990) . . . . . . . . . . . . . . . . . . . . . 36, 38, 40, 41, 44, 45

*Fields v. Gates*,
  233 F.3d 1174 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 41

*Fletcher v. Ben Crump Law, PLLC*,
  No. 21-1433, 2023 WL 3095571 (N.D. Ala. Apr. 26, 2023) . . . . . 48

*Forrester v. MidFirst Bank*,
  No. 2:18-mc-1392, 2019 WL 13217066,
  (N.D. Ala. Feb. 8, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

*Gust Inc. v. Alphcap Ventures, LLC*,
  905 F.3d 1321 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . 47, 68

*Hernandez v. City of El Monte*,
  138 F.3d 393 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 40

*In re BellSouth Corp.*,
  334 F.3d 941 (11th Cir. 2003) . . . . . . . 18, 26, 53, 54, 55, 56, 72, 78

*In re FCC*,
  208 F.3d 137 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*In re Finklestein*,
  901 F. 2d 1560 (11th Cir. 1990) . . . 18, 48, 49, 50, 51, 53, 73, 74, 78

*In re Mroz*,
  65 F.3d 1567 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re Richardson*,
  793 F.2d 37 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*In re Ruffalo*,
  390 U.S. 544 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . 70, 76, 79

*In re Vague,*
      No. 22-mc-03977 (M.D. Ala. May 10, 2022)
      . . . . . . . . . . . . . . . . . . . 7, 9, 10, 11, 12, 13, 14, 22, 61, 64, 66, 74, 79

*J.C. Penney Corp., Inc. v. Oxford Mall, LLC,*
      No. 19-560, 2021 WL 3421394 (N.D. Ala. Aug. 5, 2021) . . . . . . . 47

J.C. Penney Corp., *Inc. v. Oxford Mall, LLC,*
      No. 19-560, 2022 WL 2374369 (N.D. Ala. June 30, 2022) . . . . . . 48

*Jones v. Bock,*
      549 U.S. 199 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Keach v. Cnty. of Scenectady,*
      593 F.3d 218 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*Kleiner v. First National Bank of Atlanta,*
      751 F.2d 1193 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Kornhauser v. Comm'r of Social Sec.,*
      685 F.3d 1254 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Ladinsky v. Ivey,*
      No. 5:22-cv-447-LCB (N.D. Ala. April 8, 2022)
      . . . . . . . . 5, 6, 7, 8, 9, 10, 11,12,15,16,17, 19, 20, 22, 24, 25, 27, 28
      . . . . . . . . . . . . . . . . . . 37, 46, 56, 59, 60, 61, 62, 63, 64, 65, 69, 72

*Marques v. Fed. Reserve Bank of Chi.,*
      286 F.3d 1014 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Martinez v. City of Chi.,*
      823 F.3d 1050 (7th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*Marx v. Gen. Revenue Corp.,*
      133 S. Ct. 1166 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Massengale v. Ray,*
    267 F.3d 1298 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Matthews v. Gaither,*
    902 F.2d 877 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*McCuin v. Tex. Power & Light Co.,*
    714 F.2d 1255, (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 55, 56, 67

*Nat'l Bank v. Jones Day,*
    800 F.3d 936 (8th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

*Ouachita Nat'l Bank v. Tosco Corp.,*
    686 F.2d 1291 (8th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Pilot Freight Carriers v. International Brotherhood of Teamsters,*
    506 F.2d 914 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . 35, 38, 39, 41

*Purchasing Power, LLC v. Bluestem Brands, Inc.,*
    851 F.3d 1218 (11th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . 47, 48

*Rowe v. Gary,*
    773 Fed. App'x 500 (11th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . 47

Ruff v. Ford Motor Co.,
    No. 2:22-cv--00064-SCJ (N.D. Ga.) . . . . . . . . . . . . . . . . . . . . . . . 27

*Ruiz v. Wing,*
    991 F.3d 1130 (11th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Sargeant v. Hall,*
    951 F.3d 1280 (11th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*S.E.C. v. Diversified Corp. Consulting Grp.,*
    378 F.3d 1219 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 79

*Schlumberger Technologies, Inc. v. Wiley,*
    113 F.3d 1553 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 29, 51, 52

*Serra Chevrolet, Inc. v. Gen. Motors Corp.,*
    446 F.3d 1137 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Smith v. Williams,*
    67 F.4th 1139 (11th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Tarasewicz v. Royal Carribbean Cruises Ltd.,*
    No. 14-60885, 2016 WL 3944178, (S.D. Fla. Mar. 17, 2016) . . . . 48

*The Nationalist Movement v. City of Cumming,*
    913 F.2d 885 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Thomas v. Tenneco Packaging Co. Inc.,*
    293 F.3d 1306 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 18, 73, 74

*Thorp v. Scarne,*
    599 F.2d 1169 (2d. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. 789 Cases of Latex Surgeon Gloves,*
    13 F.3d 12 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*United States v. Dinitz,*
    538 F.2d 1214 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Gilbert,*
    198 F.3d 1293 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 48

*United States v. Murphy,*
    306 F.3d 1087 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 55

*United States v. Shaygan,*
    652 F. 3d 1297 (11th Cir. 2011). . . . . . . . . . . 16, 47, 76, 77, 78, 79

*United States v. Vega-Castillo,*
 540 F.3d 1235 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*United States v. Williamson, et. al.,*
 No. 2:19-cr-466-ACA-JHE (N.D. Ala.). . . . . . . . . . . . . . . 22, 64, 65

*Vaqueria Tres Monjitas, Inc. v. Rivera Cubano,*
 341 F. Supp. 2d 69 (D.P.R. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 41

*Walker v. City of Mesquite, Tex.,*
 129 F.3d 831 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

*Walker v. Marshall,*
 No. 5:22-cv-48-LCB (N.D. Ala. April 11, 2022)
 . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 8, 9, 10, 16, 53, 62, 63

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage,*
 564 F.3d 110 (2d. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . 34, 44, 55

## STATUTES

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## RULES

Fed.R.Civ.P. 4(a)(2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 56

Fed. R. Civ. P. 11(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

Fed.R.Civ.P. 41
. . . . . . . . . . . . . . 18, 26, 27, 31, 33, 34, 35, 36, 37, 38, 39, 40, 45, 46, 49,
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 55, 56, 57 58, 69, 78

Fed.R.Civ.P. 41(a)(1) . . . . . . . . . . . . . . . . . . . 3, 34, 39, 42, 43, 54, 56, 72

Fed.R.Civ.P. 41(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Fed.R.Civ.P. 41(a)(1)(A)(i). . . . . . . i, 2, 7, 18, 31, 34, 35, 36, 37, 43, 57, 72

Fed.R.Civ.P. 41(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Fed.R.Civ.P. 41(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Fed. R. Civ. P. 83 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Fed. R. Evid. 615(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 77

OTHER AUTHORITIES:

*Absolute Dismissal under Federal Rule 41(a):*
    *The Disappearing Right of Voluntary Nonsuit*,
    63 Yale L.J. 738, 738 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Gattis, Paul, *Lawsuits Seeking to Overturn New*
    *Alabama Transgender Law Dropped, Could*
    *Be Refiled*, al.com (Apr. 16, 2022, 5:43 p.m.)
    https://www.al.com/news/2022/04/
    lawsuits-seeking-to-overturn-new-
    alabama-transgender-law-dropped-could-be-refiled.html. . . . . . . 8

Joseph, Gregory, *"Sanctions: The Federal Law*
    *of Litigation Abuse* (6th Ed. 2020, Supp. 2024) . . . . . . . . . . . 18, 71

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Appellants filed a timely notice of appeal from the order imposing sanctions entered on February 25, 2025. The underlying action was dismissed on May 1, 2025. DE:737. Under Fed. R. of App. P. 4(a)(2), the original notice of appeal should be treated as filed after the dismissal. See Rule 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.").

In an abundance of caution, Appellants Eagan and Doss filed an amended notice of appeal in the district court after the parties dismissed the action. DE:741. Jurisdiction is proper regardless of whether the first or amended notice is treated as the operative notice.

## STATEMENT OF THE ISSUES

1.     Whether the district court erred by imposing sanctions based on a judge-made limitation to Rule 41(a)(1)(A)(i) that appears nowhere in the rule's text, was not previously disclosed to the parties, and contradicts the rule's plain language providing an unqualified right of dismissal for any reason.

2.     Whether sanctions were wrongly imposed upon attorneys whose interpretation of Rule 41(a)(1)(A)(i) and governing case law was objectively reasonable, particularly absent notice of any local or other rule-based limitations.

3.     Whether the district court sanctions proceedings, and the grand-jury-style panel proceedings, violated due process and fundamental protections.

## Introduction

Lawyers are not just permitted—they are *obligated*—to advocate zealously for their clients. So long as their arguments are grounded in law and not frivolous, courts cannot punish them because a judge disagrees or dislikes the strategy. Yet that is what happened here. The district court improperly sanctioned Melody Eagan and Jeffrey Doss for pursuing a legal strategy on behalf of their clients that they reasonably believed permissible.

The court's finding that the lawyers' actions constituted a bad faith, sanctionable attempt to "manipulate the Court's random case assignment procedures" or impermissible "judge-shopping" is not supported by precedent, the Federal Rules, or the evidentiary record. Federal Rule of Civil Procedure 41(a)(1) expressly allows dismissal for any reason. Nothing prohibits refiling in another venue with different plaintiffs. Every step Eagan and Doss took on behalf of their clients had a sound basis in the law and the rules. Even if they were mistaken (which they were not), their belief that dismissal and refiling were allowed under Rule 41 and binding precedent was reasonable. Moreover, the process used to impose sanctions was riddled with due process violations.

Sanctioning lawyers for taking positions that they reasonably believed had a basis in law is both wrong and dangerous. It sends a chilling message to lawyers: representing your client consistent with the rules can get you sanctioned, and zealous advocacy in conformity with your professional duty can threaten your career. The sanctions imposed on Eagan and Doss cannot stand.

# STATEMENT OF THE CASE

## Statement of Facts, Course of Proceedings, and Disposition in the District Court

## I. Appellants sue to enjoin enforcement of Alabama's new law criminalizing transgender health care for minors.

In April 2022, Melody Eagan[1] and Jeffery Doss[2] of the law firm Lightfoot Franklin & White, LLC, were among a group of law firms and advocacy groups who represented individuals suing the State of Alabama to enjoin enforcement of a law criminalizing the provision of certain gender-related medical treatments for transgender patients under the age of 19. *See Ladinsky v. Ivey*, No. 5:22-cv-447-LCB (N.D. Ala. April 8, 2022); *Walker v. Marshall*, No. 5:22-cv-48-LCB (N.D. Ala. April 11, 2022) (originally filed in Middle District). Eagan and Doss, who accepted the

---

[1] Melody Eagan is a graduate of Vanderbilt University Law School, Order of the Coif, where she was the Managing Editor of the Law Review. She is the first woman to be managing partner of Lightfoot and previously served as president of the Alabama Defense Lawyers Association, only the third woman ever elected to the office. Chambers USA recognized her as a "Leading Lawyer" for Litigation (Alabama).

[2] Jeffrey Doss is a "rising star" in Alabama, as recognized by a number of publications. He graduated *magna cum laude* from Samford University, Cumberland School of Law. He then clerked for U.S. District Judges James Hancock and R. David Proctor. He serves on Lightfoot's Associate Training Committee.

matter pro bono, were co-counsel for the *Ladinsky* plaintiffs[3]; the *Walker* case was filed three days later in the Middle District of Alabama by different plaintiffs and different lawyers.

*Ladinsky* was initially assigned to Judge Manasco who then recused; after random assignment to Magistrate Judge Cornelius, the case was randomly reassigned to Judge Axon. *Ladinsky*, DE:3; DE:11. *Walker* was thereafter transferred to the Northern District for potential consolidation with *Ladinsky*, the first-filed case. *Walker*, DE:20:2. *Walker* was assigned to Judge Burke in the Northern District. *See* 5:22-cv-480-LCB.

The *Ladinsky* lawyers' plan was to seek consolidation and transfer of *Walker* (now in the Northern District) before Judge Axon, the judge presiding over the first-filed case, per the established process in the Northern District, with *Ladinsky* as the lead case. Before a consolidation motion could be filed, Judge Axon *sua sponte* transferred *Ladinsky*, the first-filed case, to Judge Burke, who had been assigned the second-filed case a few hours earlier, for "efficiency and judicial economy." *Ladinsky*,

---

[3] The *Ladinsky* team also included lawyers from King & Spalding, the National Center for Lesbian Rights ("NCLR"), GLBTQ Legal Advocates & Defenders ("GLAD"), Southern Poverty Law Center, and the Human Rights Campaign.

DE:14. This designation of Judge Burke to handle *Ladinsky* meant that it was no longer randomly assigned.

Shortly thereafter, the plaintiffs voluntarily dismissed both cases under Fed.R.Civ.P. 41(a)(1)(A)(i). *See Walker*, DE:23; *Ladinsky*, DE:15. The *Ladinsky* team obtained consent from each of their clients prior to dismissing the case. *See Vague*, DE:27-2:1-2. As explained by Eagan and Doss in briefing and testimony and confirmed by the sequestered testimony of every other member of the *Ladinsky* team, they agreed to the decision to dismiss *Ladinsky* for several reasons "late on a hectic Good Friday afternoon" following the "unexpected docket text order that appeared to transfer *Ladinsky* out of the random case assignment system." *See, e.g.*, DE:356:2. The reassignment from Judge Axon to Judge Burke was contrary to their understanding of and experience with the Northern District's practice: either (1) cases are randomly assigned if an assigned judge cannot handle the case, or (2) in the case of similar cases to be consolidated, the judge assigned to the first-filed case would consolidate and handle all cases. *Id.* They believed that Rule 41(a)(1)(A)(i) conferred an "unfettered right to dismiss", and they also believed they had the right to re-file *Ladinsky* or file a new, similar case under the rules. *Id.* The next

day, in response to substantial press interest in the case, Melody Eagan transparently advised a reporter "we do plan to refile imminently." Paul Gattis, *Lawsuits Seeking to Overturn New Alabama Transgender Law Dropped, Could Be Refiled*, al.com (Apr. 16, 2022, 5:43 p.m.), https://www.al.com/news/2022/04/lawsuits-seeking-to-overturn-new-alabama-transgender-law-dropped-could-be-refiled.html.

After receiving the dismissal notices, Judge Burke entered a closing order in *Walker*, but not *Ladinsky,* writing: "Plaintiffs' course of conduct could give the appearance of judge shopping—'a particularly pernicious form of forum shopping'—a practice that has the propensity to create the appearance of impropriety in the judicial system." *Walker*, DE:24:3. Judge Burke also indicated his intent to "closely monitor how this case proceeds." *Id.* He sent a copy of his order to every federal district judge in Alabama. *Id.*

On April 19, 2022, without knowledge of the *Walker* order, *Ladinsky* counsel filed a new challenge on behalf of new plaintiffs in the Middle District of Alabama, adding a claim not asserted in *Ladinsky*. DE:1. Immediately after being docketed and randomly assigned to Judge Huffaker, Judge Huffaker reassigned *Eknes-Tucker* (later restyled as *Boe*

*v. Marshall*) to Judge Burke, to handle the case in the Middle District. DE:3.

The *Eknes-Tucker* plaintiffs moved for preliminary injunctive relief to enjoin enforcement. DE:7. The court entered a preliminary injunction. DE:107.

## II. Federal district judges in Alabama convene panel to conduct investigation into plaintiffs' attorneys' conduct.

As *Eknes-Tucker* was being litigated, the Chief Judges of Alabama's three federal districts, in response to Judge Burke's order, convened a panel of three judges, one from each district, to "investigate whether counsel intentionally tried to subvert the random case-assignment procedures for the Northern and Middle Districts of Alabama." *In re Vague*, No. 22-mc-03977 (M.D. Ala. May 10, 2022), DE:1:5. All lawyers who represented plaintiffs in *Walker* or *Ladinsky* were ordered to appear before the panel, to "allow the panel to inquire about the issues raised by counsel's actions." *Id.*

When counsel arrived at the proceeding, the panel promptly placed all attorneys under oath and sequestered them under a "modified" version of Fed. R. Evid. 615, preventing them from hearing each other's testimony

before giving their own. *Vague*, DE:75:7, 74. The Court also warned that in these early proceedings, the loss of a license or jail time was not at stake unless there was a lack of candor or a "cover-up"—in which case, all bets were off. *Id.* at 18.

The panel designated retired Alabama Supreme Court Justice Harwood to take testimony from the junior attorneys who had knowledge but no input in the decisions made by *Ladinsky* or *Walker* counsel. These attorneys were interviewed one-by-one, alone, in a separate courtroom without counsel present and without an opportunity for them to seek counsel. *Id.* at 74, 76, 79-81. The lawyers who had input into *Ladinsky* or *Walker* strategies, as well as a few junior lawyers who participated in certain attorney discussions, testified before the panel over five days of hearings spanning a six-month period. Twenty-one respondents, including Eagan and Doss, also filed *in camera* declarations concerning their participation in and knowledge of several categories of information requested by the panel. *Vague*, DE:22:1-2.

Every *Ladinsky* lawyer subject to sequestration—including those lawyers who the panel dismissed and accused of no misconduct—identified virtually the same set of factors that motivated the decision to voluntarily

dismiss *Ladinsky* and to file *Eknes-Tucker* in the Middle District. As to dismissal, factors included the unexpected way *Ladinsky* was assigned to Judge Burke in a non-random way contrary to appellants' experience in the Northern District, concerns about losing the benefits of *Ladinsky*'s first-filed status, and Judge Burke's anticipated receptiveness to the plaintiffs' claims. *See* DE:514, Appendix C; *Vague*, DE:78:79-82, 240-43. For those lawyers who had knowledge of the reasons for filing *Eknes-Tucker* in the Middle District, each sequestered lawyer explained that having a new set of plaintiffs (and most defendants situated in the Middle District) and increasing the chances of securing a randomly assigned judge played a role in the decision. *See Vague*, DE:78:108-09, 266-68; DE:514, Appendix D.

Throughout the proceedings, respondents raised due process concerns and objections to the disclosure of attorney work-product. *See, e.g., Vague*, DE:21:5; *Vague*, DE:27; *Vague,* DE:32; *Vague*, DE:76:11-13, 18-21, 23-24. They sought dismissal of the proceedings, relying on the unqualified right to dismiss under Rule 41 and absence of any rule or precedent prohibiting the underlying conduct. *See, e.g., Vague*, DE:21; *Vague*, DE:32; *Vague*, DE:78:274-75. The panel rejected respondents'

requests.  *Vague*, DE:41; *Vague*, DE:70.

In September 2022, the panel released 21 lawyers, leaving 18 attorneys, including Eagan and Doss, as continued subjects of the inquiry. *Vague*, DE:59.  After the final evidentiary hearing, respondents again requested guidance on the specific acts about which the panel had concerns after hearing the evidence, the rule or standard that the panel believed potentially violated by respondents' conduct, and to submit additional briefing to address the panel's concerns.  *Vague*, DE:69.

The panel did not provide the requested guidance or allow briefing, issuing instead a sealed Final Report of Inquiry on October 3, 2023. *Vague*, DE:70.  Although attorneys had endured vigorous cross-examination by the panel, the report characterized the hearings as an "inquiry, not an adversarial proceeding." *Id.* at 3.  The panel found 11 attorneys, including Eagan and Doss, committed misconduct by "purposefully attempt[ing] to circumvent" the random case assignment procedures for both the Northern and Middle Districts (notwithstanding the fact that Judge Burke had never been randomly assigned to *Ladinsky* or *Eknes-Tucker*).  *Id.* at 51.

**III.  Judge Burke holds disciplinary proceedings and imposes sanctions.**

    A.    <u>Publication of the Final Report and Related Panel Testimony</u>.

Upon receipt of the Final Report, the district court promptly initiated the proceedings that ultimately resulted in the sanctions order.  Pursuant to his instruction, the Clerk emailed the Final Report to all counsel in the *Eknes-Tucker* case on October 4, 2023, including for the State of Alabama, who were defending enforcement.  DE:318.  Due to the attorney work-product outlined in the Report, Eagan and Doss moved to stay dissemination of the sealed Report, as did other counsel.  DE:319; DE:333.  Eagan and Doss also appealed the Final Report to this Court. *Vague*, DE:87.

During a hearing on November 2, 2023, the district court asserted that the Final Report did not contain attorney work product and that even if it did, the attorneys "can't hide behind work product" because they were guilty of misconduct.  DE:354:8.  The court further indicated its understanding, based on its communications with the panel, that the Final Report only provided findings of fact, leaving it to the district court to apply the correct standard of law to those facts.  *Id*. at 9.  The panel then

13

reopened *In re Vague* on its own motion, stating that its Report was not a final judgment or interlocutory decision and inviting further proceedings by the district court. *Vague*, DE:99. Accordingly, Eagan and Doss dismissed their appeal. *In re: James Esseks, et al.*, Case No. 23-13524-G (11th Cir.), DE:5.

Before conducting any show-cause proceedings, the district court unsealed the Final Report and all related filings and transcripts, including the testimony and declarations from the panel proceeding. DE:450. The court found that the attorneys' communications, including their mental impressions and strategies underlying litigation decisions, were not subject to the work-product privilege and, without briefing on the issue, deemed such information to be subject to the crime-fraud exception. DE:459:12-13. Despite the district court's later assertions that it reviewed "the evidence independently, without deference to the Panel's findings," DE:711:62, it found a prima facie case of judge-shopping based only on the Final Report, which it deemed a "crime" sufficient to trigger the crime-fraud exception. The court cited no authority for this conclusion. DE:459:13.

B.    The Court's Show-Cause Orders.

Declining Eagan and Doss's stay request, the district court issued a single show-cause order against the eleven attorneys, instructing them to show cause why they should not be sanctioned for "attempting to manipulate the random case assignment procedures for the U.S. District Courts for the Northern and Middle Districts of Alabama" and to address "all applicable grounds of individual and collective misconduct" identified in the Final Report." DE:406:8-9.  It also ordered respondents to show cause why they should not be sanctioned for "misrepresenting or otherwise failing to disclose key facts during the panel's inquiry," without delineating what testimony by *Ladinsky* counsel it viewed to be misleading or key facts it believed omitted.  *Id.* at 9.

In response, Eagan, Doss, and other attorneys moved to lift the sequestration orders regarding the testimony gathered by the panel. DE:421.  They also filed a joint motion for clarification and objection to the show-cause order, asserting that the order failed to comply with due process because it did not give each respondent notice of what specific rule he or she allegedly violated and how he or she violated it.  DE:423:2-3. Eagan and Doss separately requested an order identifying their individual

conduct at issue, including the precise rule, standard, or law they purportedly violated and how, in accordance with the requirements of *United States v. Shaygan*, 652 F. 3d 1297, 1318-1319 (11th Cir. 2011). DE:432:1-2. They argued that the show-cause order did not give notice of their prior testimony to be addressed in briefing, as it failed to identify what testimony might constitute sanctionable misrepresentations or omissions. *Id*. at 3. They moved for leave to submit additional evidence. DE:433.

The district court rejected the attorneys' due process arguments but agreed to "indulge" the attorneys by issuing supplemental show-cause orders directed to each attorney. DE:466:2. Citing to "controlling precedent", Rule 11, the professional conduct rules applicable in the Northern and Middle Districts of Alabama, and certain attorney oaths, the court ordered Eagan, Doss, and other *Ladinsky* counsel to show cause why they should not be sanctioned for coordinating the *Walker* and *Ladinsky* dismissal; engaging in discussions about how judges were favorable or unfavorable in deciding whether to dismiss; suddenly dismissing *Ladinsky* and *Walker* after a series of phone conferences in which counsel discussed their prospects in front of the court; abruptly stopping the pursuit of

emergency relief to dismiss and refile even though time was of the essence as to what they viewed as an unconstitutional law; the weekend decision to file *Eknes-Tucker* in the Middle District even though the plan for years had been to file in the Northern District; and deciding with *Ladinsky* counsel to file a new case in the Middle District to avoid the appearance of judge-shopping and to avoid Judge Burke. DE:483:10-11; DE:484:10-11. The court further asserted that it was misconduct for Eagan to "make clear that the new case" would be filed when speaking to the media. DE:483:10; DE:484:10.

The court also ordered Eagan, Doss, and their *Ladinsky* co-counsel to show cause why they should not be sanctioned for allegedly misrepresenting or otherwise failing to disclose key facts; failing to address any findings implicating their credibility; and failing to address the panel's finding that it was misconduct for all counsel to claim that "the dismissal was because Judge Axon did not explain the reassignment of *Ladinsky*." DE:483:11-12; DE:484:11-12.

C.    Evidence in Response to the Show-Cause Order.

1.    *The Expert Declaration of Gregory Joseph.*

This Court has recognized the importance of submitting evidence to

establish the reasonableness of an attorney's conduct in sanction proceedings, including expert affidavits or testimony. *See, e.g., In re Finklestein*, 901 F. 2d 1560, 1564 (11th Cir. 1990); *Thomas v. Tenneco Packaging Co. Inc.*, 293 F.3d 1306, 1323 n.27 (11th Cir. 2002). Accordingly, Eagan and Doss asked the Court to consider expert testimony from Gregory Joseph, the author of "Sanctions: The Federal Law of Litigation Abuse (6th ed. 2020, Supp. 2024)," and a member of the Board of Editors of Moore's Federal Practice (3d. ed.), whose responsibilities include editing the Rule 41 chapter. DE:433; DE:496; DE:496-1:1-2. Mr. Joseph opined that a reasonable lawyer would understand that Rule 41(a)(1)(A)(i) conferred an absolute right to dismissal, even if the prime purpose of doing so was to judge-shop; and that a reasonable lawyer would not have read *In re BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003), as affecting the Rule 41 right to dismiss. DE:496-1:4-8. Despite this Court's prior approval of such testimony, the district court refused to allow the declaration, finding that "expert testimony on the propriety of sanctions would not *help* the Court at all" and that the district court was "well equipped to handle the questions posed by these proceedings without the testimony of Mr. Joseph." DE:449:3 (emphasis in original); *see also*

DE:577:2.

2. *Eagan and Doss's Supplemental Declarations.*

Eagan and Doss also filed supplemental declarations. DE:495-1; DE:495-2. Both verified the accuracy of their declarations and live testimony previously provided to the panel. DE:495-1:3; DE:495-2:2. They individually addressed the six acts of "misconduct" referenced in the panel's Final Report and outlined in the district court's show cause order. DE:495-1:11-15; DE:495-2:2-6. They apologized for their conduct and made clear they did not intend to abuse the judicial process or circumvent any procedure, rule, standard, or law. DE:495-1:10-11; DE:495-2:14-15. They also described the report's substantial harmful impact on them and their firm. DE:495-1:15-17; DE:495-2:14-15.

While the *Ladinsky* attorneys' testimony before the panel was materially consistent, Eagan and Doss responded to the few examples noted by the panel where attorneys' testimony indicated slight differences in their recollections or opinions. See, e.g., DE:495-1:3-5,7; DE:495-2:12-14. Importantly, no witness testified materially differently when asked about the decision to dismiss or the filing of *Eknes-Tucker*. All witnesses, despite being sequestered, confirmed that it was a multi-factored decision

19

that was triggered by the unusual way *Ladinsky* was assigned to Judge Burke. While Eagan and Doss acknowledged that assignment to Judge Burke, deemed by them to be very conservative, was a factor in their decision throughout the proceedings, it was not the only or primary factor. DE:495-1:8; DE:495-2:8-9.

In addition, Doss discussed his understanding of the case assignment procedure in the Northern District at the time *Ladinsky* was dismissed. DE:495-2:9-10. As part of responding to the show-cause order, Doss tested his procedural understanding by reviewing all cases filed in the Northern District for the one-year period preceding the *Ladinsky* dismissal that involved a judicial reassignment. All cases confirmed Doss's understanding of the procedure. *Id.* at 10-11. Doss found no cases, prior to the *Ladinsky* dismissal, where the judge assigned to the first-filed case assigned that case to a judge assigned to a related, later-filed case. *Id.* at 11.

D.  Eagan and Doss's In-Chamber Apologies.

Before conducting the sanctions hearing, the district court held an in-person status conference at which respondents were given the opportunity to speak one-on-one with the court on the record.

20

Eagan expressed that she was "truly sorry if [she] did something that the Court found was wrong or that the Court found somehow impugned [its] dignity or reputation, or that [she] did something that [the Court] felt was wrong or offensive or that bothered [the Court] or that [the Court] felt like was disrespectful." DE:567:56. She explained: "What we did, I thought was allowed by the rules. I did not feel like we were doing anything that we didn't have a right to do. But I am truly sorry that this has ended up into this two-year process or that Your Honor may feel badly—may think badly of me or something that I have done. And I just wanted to say that." *Id*.

Doss told the Court that he has "never wanted to be the attorney that gets right up to the line." *Id*. at 65-66. He said "I would not have agreed to dismiss this case or file our case if I thought that there was even a question. I would not. I truly sincerely believed then that we had a right to do what we had to do. And it was the best decision we could make under the circumstances . . . it was the lesson of sleep on it at the very least. We should have done that . . . I've been in front of Your Honor many times. And I just—I don't want you to think that I did anything that was to disrespect you or violate any rules or do anything like that . . . I

certainly understand how questions could get raised.  And I tried my best to answer them when we went through the panel proceeding." *Id*. at 66-67.

     E.    <u>Motion to Take Judicial Notice</u>.

After the in-chambers conference, Eagan and Doss identified *United States v. Williamson, et. al.*, No. 2:19-cr-466-ACA-JHE (N.D. Ala.), the case over which Judge Axon was presiding when she transferred *Ladinsky*, and asked the Court to take judicial notice of the docket sheet and four docket entries.  DE:571:2.  At the outset of the panel proceeding, respondents were informed that *Ladinsky* had been transferred because Judge Axon "was on day four of what was scheduled to be a two-plus-week criminal trial." *Vague*, DE:75:33.  The *Williamson* docket and referenced entries, however, showed that the jury began deliberating two hours before Judge Axon transferred *Ladinsky* and reached a verdict the following Monday. *See Williamson*, No. 19-cr-466 (N.D. Ala.), DE:601,767,768,769.  Seeking completeness of the record since the panel referenced the status of Judge Axon's trial as grounds for misconduct, Eagan and Doss requested that the district court take judicial notice.

The court denied the two-page motion in a 31-page order, finding

that the motion was brought "in bad faith . . . to spin a false narrative about the status of [the trial case]; to malign the integrity of U.S. District Judges Annemarie Axon, Jeffrey Beaverstock, David Proctor, and Keith Watkins; and to distract the Court from their sanctionable misconduct." DE:707 at 2-3. It accused Eagan and Doss of perpetuating a "misleading narrative" because "jury deliberations about specific items and amounts of forfeiture would be required if the jury returned a verdict of guilty." DE:707:14-15.

F.    The Show-Cause Hearing.

The district court conducted a show-cause hearing spanning three days. Eagan once again apologized:

> I just want to say to you, Judge, that I am truly sorry. I am very sorry. Judge, I am sorry if I said or I did anything that offended Your Honor or that offended any member of this judiciary. And I am very sorry if I did anything that Your Honor or any member thought that was inappropriate or unethical.
>                    . . .
> [I]t was not my intention, Judge, to do anything that could impugn the integrity of the judiciary, this Court, or any other. And I hope that you understand that.
>                    . . .
> I still believe, Judge, that our actions were permissible and what we did was allowed by law,

23

> but I also understand that what we did caused
> Your Honor, and other members of the judiciary to
> question my ethics and to question my integrity.
> And I very, very deeply regret that, Judge.

DE:642:83-84, 88.

Doss too reiterated his sincere apologies and regret:

> Today, I can tell you this: I am sorry. And I do
> apologize. I am sorry I have let you down. I am
> sorry that I've let every judge in this state down.
> There have been many days where I felt like I've let
> even my partners down. And I'm sorry.
>
> I understand that Your Honor and I may have
> different views on what – the legal issues in this
> proceeding. But at the end of the day, that doesn't
> matter to me. What matters to me most is that you
> even have questions, that you even have questions
> about what I did, about the judgments that I made.
>
> But to be clear, I apologize. I have never doubted
> your fairness. And I will admit, two years ago, I
> didn't think Your Honor was the best draw for our
> underlying case, and I was wrong.

*Id*. at 132.

Other *Ladinsky* attorneys—all who were not ultimately

sanctioned—offered apologies not materially different from Eagan or Doss

while maintaining they did nothing wrong. For example, apologies were

offered by two key decision makers from the *Ladinsky* legal team: Jennifer

Levi, the Senior Director of Transgender and Queer Rights at GLAD, and Shannon Minter, the NCLR Legal Director. DE520-1:3; DE520-2:2-3; DE640:179. Ms. Levi testified:

> I do not believe that I engaged in sanctionable conduct. I never intended to break the rules, do something wrong, or to stray from my ethical obligations. I've endeavored to be candid with this Court and commit to doing so today. I believe that I acted in good faith throughout my representation of clients, in both the *Ladinsky* and *Eknes-Tucker* cases. But that's ultimately for this Court to resolve.
> . . .
> I've learned a lot over the two years. And I understand that the actions that I took caused this Court to question my integrity and my commitment to ethical conduct. And while I believe at the time that I made the decisions that they were permissible under the law, and I'm happy to answer any questions relating to that, I regret that they caused this Court to question my ethical conduct and my commitment to the integrity of the judicial system. And I would make a different choice today.

DE640:161-62.

Mr. Minter offered:

> I understand our decision to dismiss one case and file a new one raised a question in your mind. Knowing retrospect after – nearly three years now reflecting on that, I see that. I regret it profoundly. I apologize to you. Knowing what I know now, I would not do that again.

> My hope now is that you have had a chance to hear
> from us.  I hope it's more clear that at the time I
> made the decisions I made I was acting in good
> faith in doing everything I thought I permissibly
> could to protect the interest of my client.

*Id*. at 193-94.

During the hearing, the district court also questioned Eagan about her contention that Rule 41 allows attorneys to dismiss for any reason. The court asked her a series of hypotheticals—none remotely factually analogous to the situation at hand.  Eagan responded by emphasizing her understanding that the plain language of Rule 41 says "you can dismiss for any purpose."  DE:642:122.  "If you can dismiss for any purpose, I'm not sure how there is an improper purpose."  *Id*.

G.    <u>The Sanctions Order.</u>

On February 25, 2025, the court issued a 230-page Order sanctioning Eagan and Doss, pursuant to its inherent authority.  DE:711.  It publicly reprimanded Eagan and Doss for "their intentional bad-faith attempts to manipulate the random case assignment procedures for the Northern and Middle Districts of Alabama", deeming "judge-shopping" through a Rule 41 dismissal to be sanctionable conduct under *In re BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003) (a case that did not involve Rule 41 but instead

26

involved the practice of entering a conflicted attorney's appearance to force a recusal). The court also disqualified Eagan and Doss as counsel in the underlying case; required them to provide a copy of the Order to clients, opposing counsel, and the judge in every pending state or federal case in which they were counsel of record; and referred the matter of their "professional misconduct" to the Alabama Bar.[4] DE:711:4.

As to other *Ladinsky* attorneys who engaged in identical conduct to Eagan and Doss and provided similar justifications for their actions, the district court found that their "heartfelt apology" "obviate[d] the need for further findings." DE:711:121. Yet, for Eagan and Doss, it found their agreement to dismiss *Ladinsky* and file *Eknes-Tucker* to be "textbook bad faith." *Id.* at 134, 141. The court declared Eagan and Doss "not just willing but perhaps likely to engage in similar conduct in the future", based upon their "stubborn insistence" that they did nothing wrong and that Rule 41 should end the inquiry. *Id.* at 135, 141. He found their defense based upon Rule 41 reflected a perceived "'right' to engage in this misconduct"

---

[4] State disciplinary inquiries have been initiated against Eagan and Doss. Moreover, Doss was ordered to show cause why his *pro hac vice* admissions should not be revoked in *Ruff v. Ford Motor Co.*, No.2:22-CV-00064-SCJ (N.D. Ga.), DE:200.

and relied on Eagan's answers to inapplicable hypotheticals in reaching this conclusion.  *Id.* at 147.

Despite Eagan and Doss's candor throughout the ordeal and the lack of a scintilla of evidence impeaching their testimony, the court found their stated motivations for supporting the *Ladinsky* dismissal and the filing of *Eknes-Tucker* in the Middle District to be "intentionally dishonest and patently unworthy of belief."  *Id.* at 129, 137.  While their testimony on these critical points was materially identical to every other *Ladinsky* attorney who testified—both at the show cause hearing and when sequestered during the panel proceeding—the court based its bad faith finding on Eagan and Doss's *demeanor* and *manner* of testifying, as well as its view that their explanations "strain credulity."  *Id.* at 129.  As to Eagan, Judge Burke derived sanctionable conduct from his impression of her body language in a highly distressing proceeding, noting she answered "easy questions" "readily and directly" but when confronted with more difficult questions, in his view, her "answers were halting"; "her posture was at times shifty"; and "she struggled to maintain eye contact." DE:711:129-130.  For Doss, he purportedly offered precise explanations when testifying about "legal subtleties . . . often with a slight, sheepish

smile", but when challenged about his personal thoughts or actions, "his answers grew rambling but vague, he began to fidget, and his tone lost its note of confidence." *Id*. at 137-38.

The court also disregarded Eagan and Doss's apologies, both in chambers and during the show-cause hearing. Instead, it speculated that their "greatest regret was that [they had] been publicly embarrassed by the attention" and opined that their apologies demonstrated "no remorse for [their] underlying conduct." *Id*. at 130, 138.

Eagan and Doss filed timely notices of appeal.

## Standards of Review

A district court's interpretation of the Federal Rules of Civil Procedure is reviewed *de novo*. *Sargeant v. Hall*, 951 F.3d 1280 (11th Cir. 2020).

When sanctions are based on "allegedly unethical" conduct (as opposed to that which disrupts ongoing court proceedings such as protective-order violations; false statements to the jury; or calling witnesses who cannot authenticate documents), this Court reviews *de novo*. *Schlumberger Technologies, Inc. v. Wiley*, 113 F.3d 1553, 1557, 1561 (11th Cir. 1997) ("In reviewing a district court's interpretation and

application of the Rules of Professional Conduct, which involve a mixed question of law and fact, we do not defer to the district court's determinations") (discussing attorney disqualification).  This Court has also said that a "district court's sanctions determination is reviewed for abuse of discretion, including for clear error of judgment or application of the wrong legal standard." *Amlong & Amlong*, *P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1237-38 (11th Cir. 2007); *In re Mroz*, 65 F.3d 1567, 1571 (11th Cir. 1995). Where sanctions are reviewed for abuse of discretion, "[a] district court abuses its discretion when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support." *Arlook v. S. Lichtenberg & Co.,* 952 F.2d 367, 374 (11th Cir.1992); *see also Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006).

This appeal raises questions of law that warrant *de novo* review, and mixed questions of law and fact, such as whether Eagan and Doss acted in bad faith, which this Court also reviews *de novo*.  The question whether the sanctions imposed by the district court violated due process is also reviewed *de novo*.  *Id.*

## SUMMARY OF THE ARGUMENT

Sanctions should punish clear violations of rules, not unwritten expectations without notice. The district court disregarded the plain text of Rule 41, imposed unwarranted sanctions for lawful conduct, and conducted proceedings that violated bedrock principles of due process and professional independence. The sanctions order cannot stand.

The district court wrongfully punished lawyers for using a rule as written and as interpreted by the courts. That is not the rule of law. It is precisely what Rule 41, due process, and the adversarial system are designed to prevent. Forum selection by litigants is a fundamental part of our system of civil litigation. It is not a cardinal sin. But it was treated as such—and investigated and punished under a judicial inquiry process that failed to live up to this nation's due process principles.

The sanctions order and the process by which sanctions were imposed warrant reversal because:

- Rule 41(a)(1)(A)(i) provides an unconditional right to dismissal—this clear, untethered right defeats speculative concerns about choice of forum, and sanctions may not be a consequence of a voluntary dismissal;

- Sanctions may not be imposed based on deviation from a judge-made rule created after the conduct at issue had occurred;

- Attorneys were not on notice that the litigation advantages afforded by the rules would become improper if done for certain perceived motives, particularly for constitutionally and legally permissible ones;

- Distinguishing what attorneys are allowed to do based on their internal motivations is an impermissible use of judicial authority;

- The district court sanctioned attorneys for their reasonable interpretation of the law, which was supported by text, precedent, and expert opinion;

- The district court improperly disregarded two facially plausible and uncontradicted reasons for dismissal that were unrelated to the court's own presumptions about motive;

- The district court failed to recognize attorneys' duty of zealous advocacy in compliance with the rules and imposed instead a duty to show specific forms of remorse for that advocacy, which is neither the relevant test for professional responsibility nor a permissible basis for sanctions;

- The district court forced attorneys to make a Hobson's choice between (i) admitting misconduct and waiving any chance at appeal; or (ii) accepting excessively punitive sanctions for fulfilling their professional responsibility to preserve well-founded reasonable positions, including for purposes of later review—the district court therefore imposed punishment in a manner contrary to our constitution's rights-based process;

- Attorneys were wrongly compelled to disclose privileged work product relating to the decision to dismiss and refile—as well as privileged material regarding their defenses in the sanctions proceedings, in the absence of any recognized exception to those doctrines;

- The repeated accusations of deception—to justify the fraud accusations, the inquiry and the sanctions—were erroneous where there was no evidence that Eagan or Doss ever submitted anything to the court, either verbally or in writing, that included any misrepresentation; and

- During the 17-month-long initial investigation, attorneys were sequestered—prohibited from hearing or responding to each other's testimony; prohibited from participating in their own defense; and prohibited from engaging in a joint defense to accusations of misconduct.

For all of these reasons, the sanctions order must be vacated. For years, Eagan and Doss have endured professional devastation, intense scrutiny, and emotional strain—all for employing ordinary litigation tools to honestly pursue the rights of their pro bono clients in accordance with their ethical obligations, and for defending their actions under the law.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. Rule 41 grants plaintiffs an unqualified right to dismiss, regardless of the reasons for doing so.

Eagan and Doss filed a voluntary notice of dismissal before defendants answered or moved for summary judgment. That should have ended the matter. Instead, the district court retroactively created a new, non-textual exception to Rule 41: a prohibition on perceived "judge-shopping." That exception appears nowhere in the Rule, the United States

Code, the Alabama Rules of Professional Responsibility, or the precedents of this Court or the Supreme Court.

The sanctions order, therefore, rests on a flawed assumption: that certain reasons for voluntarily dismissing a case are prohibited. That assumption is at odds with what the Circuit Courts to consider this question have routinely and uniformly held: A party may voluntarily dismiss a case, for any reason, without being sanctioned. *See Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1080 (8th Cir. 2017) ("The reason for the dismissal is irrelevant under Rule 41(a)(1)"); *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 115 (2d. Cir. 2009) (when "the plaintiff has brought himself within the requirements of Rule 41, his reasons for wanting to do so are not for us to judge") (quoting *Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d. Cir. 1979)); *Bechuck v. Home Depot USA, Inc.*, 814 F.3d 287, 290-93 (5th Cir. 2016) (finding that Rule 41(a)(1)(A)(i) *"essentially permits forum-shopping"* and that *it is "not uncommon for plaintiffs to use voluntary dismissal to secure their preferred forum"*) (emphasis added).

Those decisions apply Rule 41 as written, regardless of a plaintiff's motivation. And those decisions are consistent with what this Court has

long recognized: "It is *well-established* that Rule 41(a)(1)(A)(i) grants a plaintiff *an unconditional right* to dismiss his complaint by notice and without an order of the court at any time prior to the defendant's service of an answer or a motion for summary judgment." *Matthews v. Gaither*, 902 F.2d 877,880 (11th Cir. 1990) (emphasis added); *see also ASX Inv. Corp. v. Newton*, 183 F.3d 1265, 1268 (11th Cir. 1999) (describing dismissal as a "unilateral right" and noting that the single-dismissal limitation prevents "unreasonable use"). Rule 41(a)(1)(A)(i) "means precisely what it says." *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258 (11th Cir. 2021) (quoting *Pilot Freight Carriers, Inc. v. Int'l Bhd. Of Teamsters*, 506 F.2d 914, 916 (5th Cir. 1975)).

Because the right to dismiss under Rule 41 is absolute, the "plaintiff's reason for the dismissal is immaterial." 1 Gensler, Federal Rules of Civil Procedure, Rules & Commentary, Rule 41 (Feb. 2023). As Judge Posner has noted, "[o]ne doesn't need a good reason, or even a sane reason, to dismiss a suit voluntarily." *Marques v. Fed. Reserve Bank of Chi.*, 286 F.3d 1014, 1017 (7th Cir. 2002) (citations omitted).

Eagan and Doss complied with Rule 41, as written and construed by this Court and others. They dismissed after obtaining their clients'

consent—zealously advocating for those clients in a manner contemplated by applicable law.  This was not sanctionable conduct.

**First,** Rule 41's meaning has been fixed and ascertainable for decades: "[T]he plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  Fed. R. Civ. P. 41(a)(1)(A)(i).  Rule 41 limits only when—not why—that right may be exercised.  *See, e.g.*, *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 397 (1990) (Rule 41(a)(1) "was designed to limit a plaintiff's ability to dismiss an action" during "the brief period before the defendant had made a significant commitment of time and money"); *Absolute Dismissal under Federal Rule 41(a): The Disappearing Right of Voluntary Nonsuit*, 63 Yale L.J. 738, 738 (1954) (noting that, at common law, "a plaintiff had an absolute right to dismiss his suit without prejudice at any time before verdict or judgment," but that Rule 41(a) "limits absolute dismissal to an earlier point").

Rule 41's unconditional right to dismiss is subject to only three limitations, all of which are contained in the Rule:

- Timing: Once the defendant serves an answer or a summary judgment motion, the plaintiff's right to voluntarily dismiss is

extinguished. Rule 41(a)(1)(A)(i).

- <u>Repeat Use</u>: Rule 41(a)(1)(A)(i) can be invoked only once, as the second invocation is with prejudice. Fed. R. Civ. P. 41(a)(1)(B).

- <u>Cost-shifting</u>. In its discretion, the court "may order the plaintiff to pay all or part of the costs of the previous action" if "a plaintiff . . . previously dismissed an action" and then "files an action based on or including the same claim against the same defendant." Fed. R. Civ. P. 41(d)(1).

In A*SX Investment Corp. v. Newton*, 183 F.3d 1265, 1267 (11th Cir. 1999), the Court emphasized that these few limitations on Rule 41 "should not be construed too broadly" because they represent exceptions to the general principle "that a voluntary dismissal of an action does not bar a new suit based upon the same claim." None of these limitations apply here. Eagan and Doss dismissed a case before any responsive pleading, did so only once, and did not file *Eknes-Tucker* with the same plaintiffs as *Ladinsky*. The district court created a new, non-textual limitation: that dismissing a case to avoid a particular judge is sanctionable. But nothing in the Rule provides a basis for that limitation.

Courts apply the law—including rules of procedure—as written, not

37

as preferred. *See, e.g.*, *Smith v. Williams*, 67 F.4th 1139, 1141 (11th Cir. 2023) ("But 'courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns.'") (quoting *Jones v. Bock*, 549 U.S. 199, 212 (2007)); *Ruiz v. Wing*, 991 F.3d 1130, 1138 (11th Cir. 2021) ("We construe rules of procedure like any other statutory scheme, i.e., by determining the rule's plain meaning.") (citing *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995)). The sanctions order departs from that principle; it imposes a new judicial limitation that appears nowhere in the text.

**Second,** binding precedent confirms that Rule 41 means what it says, and that a plaintiff's right to dismiss is unconditional and absolute. In *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), the Supreme Court held that sanctions may not be "a consequence of a voluntary dismissal" or a "term or condition" attached to it. *Id.* at 396-97. Yet that is precisely what occurred here: the sanctions were triggered only by the dismissal and functioned as a punishment for exercising a right that Rule 41 unambiguously grants.

*Pilot Freight Carriers v. Int'l Bhd. of Teamsters*, 506 F.2d 914 (5th Cir. 1975), a controlling decision from the former Fifth Circuit, squarely

38

forecloses the district court's approach. There, the plaintiff dismissed after losing a motion for injunctive relief—allowing dismissal in such circumstances, the defendants argued, could permit judge-shopping. The Court rejected that argument, reaffirming that (1) Rule 41 "means precisely what it says" and (2) the right to dismiss is not subject to judicial scrutiny of motive. *Id.* at 915–17. *Pilot Freight* cannot be reconciled with the district court's decision. Nor can the district court's order be squared with the former Fifth Circuit's instruction that Rule 41 "may not be extinguished or circumscribed by the adversary or the court." *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963).

The trial court found that Eagan and Doss's reliance on *Pilot Freight* was "fanciful," and stated that "the holding in *Pilot* suggests that Rule 41(a)(1) does not permit judge-shopping precisely because judge-shopping is prohibited by other means." DE:711:193. *Pilot Freight* said nothing about prohibiting judge-shopping by other means—it expressly rejected an invitation to rewrite Rule 41 to prevent perceived abuse. Reliance on *Pilot Freight* was not just reasonable—it controls.

As the Fifth Circuit explained in *Bechuck v. Home Depot USA, Inc.*, 814 F.3d 287 (5th Cir. 2016), Rule 41 "essentially permits forum

shopping." It is "not uncommon for plaintiffs to use voluntary dismissal to secure their preferred forum," and courts may not impose terms or sanctions to deter it. *Id.* at 292–93 (citing and discussing *Cooter & Gell*, 496 U.S. 384). *Bechuck* reversed an order requiring a dismissed plaintiff to refile in the same court, explaining that such a limitation violated the unconditional nature of Rule 41 and the rule that sanctions may be neither a consequence of a dismissal, nor a term or condition placed on a dismissal. *Id.*

**Third**, the cases on which the trial court based its decision do not change the analysis. The court relied on out-of-circuit precedent: a decision from the Ninth Circuit and a decision from the District of Puerto Rico. But those cases only underscore the error.

In *Hernandez v. City of El Monte*, 138 F.3d 393 (9th Cir. 1998), Judge Pregerson, writing for the Ninth Circuit, reversed the district court's dismissal of a refiled complaint even where local rules explicitly prohibited judge-shopping. The court found there had been no prejudice to the defendants, nor did public policy favor dismissal of the second case. *Id.* at 399-400. Considering the balance of factors, the Ninth Circuit held that the district court abused its discretion in dismissing the case. *Id.* at 400.

Notably, in that case, the Ninth Circuit was not confronted with whether attorney sanctions for purported judge-shopping were appropriate. But, two years later, in *Fields v. Gates*, 233 F.3d 1174 (9th Cir. 2000), the Ninth Circuit was squarely confronted with that issue and reversed an inherent power sanction against an attorney for alleged judge-shopping via a Rule 41(a)(1)(A) dismissal.

Judge Burke also relied on *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 341 F. Supp. 2d 69 (D.P.R. 2004), a non-binding and inapposite case that contradicts *Pilot Freight*. There, the same plaintiffs refiled the exact same case the same day, just changing the order of names. But even if the facts were analogous, the court's reasoning—which is inconsistent with Rule 41's text—cannot override binding Eleventh Circuit and Supreme Court precedent in *Pilot Freight*, 506 F.2d 914, and *Cooter & Gell*, 496 U.S. 384.

**Fourth**, every Circuit Court to have considered this issue has reached a conclusion contrary to that reached by the district court:

- Eighth Circuit.  When deciding whether a lawyer could be sanctioned for voluntarily dismissing a case due in part to concerns with a judge, the Eighth Circuit reversed that sanction.  *Adams v. USAA Cas.*

*Ins. Co.*, 863 F.3d 1069, 1080-81 (8th Cir. 2017) ("Therefore, we hold that the district court erred in concluding that counsel engaged in sanctionable conduct by stipulating to a dismissal under Rule 41(a)(1) for the purpose of forum shopping and avoiding an adverse result."). In *Adams*, the district court found that the attorneys had voluntarily dismissed one case and then "[r]efil[ed] in a more favorable forum [to] avoid[] an adverse decision" of the district court. *Id.* at 1074. The district court sanctioned the attorneys. *Id.* at 1075. The Eighth Circuit reversed. "The reason for the dismissal is irrelevant under Rule 41(a)(1). Therefore, we hold that the district court erred in concluding that counsel engaged in sanctionable conduct by stipulating to a dismissal under Rule 41(a)(1) for the purpose of forum shopping and avoiding an adverse result." *Id.* at 1080-81; *see also id.* at 1083 (finding that the district court abused its discretion in determining that counsel had "abused the judicial process by stipulating to the dismissal of the federal action for the purpose of seeking a more favorable forum and avoiding an adverse decision").

• <u>Fifth Circuit</u>. The Fifth Circuit acknowledged that certain types of "judge shopping" are permissible because various rules authorize it, including Rule 41. *See, e.g., Bechuck v. Home Depot U.S.A., Inc.*, 814

F.3d 287, 290 (5th Cir. 2016). The *Bechuck* plaintiff voluntarily dismissed

under Rule 41(a)(1)(A)(i) after the district court entered adverse rulings

against him. *Id.* After he filed his dismissal notice, the district court

entered an order requiring the plaintiff, "[i]f [he] sues [the defendants]

again for the same cause of action, [to] do so before this court." *Id.* at 290-

91. But the Fifth Circuit reversed:

> *Although forum-shopping is not a trivial concern, Rule 41(a)(1) essentially permits forum-shopping.* It is not uncommon for plaintiffs to use voluntary dismissal to secure their preferred forum, such as when they seek to undo removal and return to state court. While this may seem distasteful to opposing parties, we have consistently held that Rule 41(a)(1) means what it says and defendants who desire to prevent plaintiffs from invoking their unfettered right to dismiss actions under Rule 41(a)(1) may do so by taking the simple step of filing an answer.
>
> The effect of a Rule 41(a)(1) dismissal is to put the plaintiff in a legal position as if he had never brought the first suit. *Therefore, the plaintiff is free to return to the dismissing court or other courts at a later date with the same claim. By placing him back into the situation as though he had never brought suit, Rule 41(a)(1)(A)(i) necessarily allows him to choose his forum anew.*

814 F.3d at 293 (cleaned up) (emphasis added).

  •  <u>Second Circuit</u>. When confronted with whether an attorney

could be sanctioned for voluntarily dismissing a case due to concerns with

a judge, the Second Circuit reversed the sanction. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 115 (2d Cir. 2009) ("[The attorney] was entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the fact that it did so to flee the jurisdiction of the judge does not make the filing sanctionable."). In *Wolters Kluwer*, the attorneys filed a lawsuit in the Southern District of New York, voluntarily dismissed the case and re-filed the same lawsuit in the District of Massachusetts. *Id*. at 110. The Southern District of New York found that the attorneys' "main purpose in filing a Rule 41 voluntary dismissal … was to judge-shop in order to conceal from [their] client 'deficiencies in counsel's advocacy.'" *Id*. at 114. To the district court, "this sort of judge-shopping was an improper purpose and was accordingly sanctionable." *Id*. The Second Circuit, however, reversed. "[The lawyers were] entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the fact that [they] did so to flee the jurisdiction or the judge does not make the filing sanctionable." *Id*. at 115. Because the attorneys were "entitled by law to dismiss the case," there was no basis to sanction them. *Id*.

Each court reached the same result, consistent with *Cooter & Gell*: sanctions may not be "a consequence of a voluntary dismissal" or a "term

or condition" attached to it. 496 U.S. at 396–97.  Rule 41 is not subject to a "bad motives" restriction.  The sanctions order should be reversed.

## II.  Eagan and Doss had a good-faith, objectively reasonable belief their conduct was permissible and were not on notice that Rule 41 was substantially narrowed by a subsequently announced, policy-based judicial limitation.

Even if the Court concludes that plaintiffs do not have an "absolute" and "unconditional" right to dismiss under Rule 41 and refile with a different plaintiff in a different jurisdiction, sanctions were still improper because there was no rule that existed at the time that prohibited the conduct engaged in here.  As a matter of due process, sanctions should be imposed only when lawyers are on clear notice of a rule so that they may appropriately conform their conduct. *See* Fed. R. Civ. P. 83(b) ("No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, the federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.").  The lawyers here acted in good faith and without reason to believe that their conduct violated any rule.

Nothing in Rule 41—or in any controlling case interpreting it—warns lawyers that a voluntary dismissal could trigger sanctions. No reasonable

attorney would have foreseen that Rule 41 contains an unwritten forum-shopping limitation. Eagan and Doss offered multiple, well-supported, and corroborated reasons for dismissing *Ladinsky*. The district court did not credit their explanations. Instead, it imputed bad motive to everything Eagan and Doss did: calling their legal arguments "fanciful," their reasoning "magical thinking," and their factual explanations "misleading narrative[s]." DE:711:193, 184, 84. It criticized Eagan for her posture, Doss for his tone. *Id.* at 130, 138. These characterizations do not establish the subjective bad faith required to impose inherent-power sanctions.

More troubling still, the court sanctioned Eagan and Doss for the very act of defending their conduct. Doss was expressly punished for "refus[ing] to acknowledge" wrongdoing—when the conduct he defended was authorized by Rule 41. Eagan and Doss were punished while other lawyers who participated in the same conduct were not.

That is not how our system is supposed to work. It is error—and a dangerous precedent—to punish attorneys for making lawful, strategic decisions on behalf of their clients and then defending those decisions when challenged. This kind of after-the-fact scrutiny chills zealous advocacy and undermines due process. The sanctions order cannot stand.

A.   <u>There must be subjective bad faith to sanction</u>.

Courts' "inherent power should be exercised with caution." *Kornhauser v. Comm'r of Social Sec.*, 685 F.3d 1254, 1257 (11th Cir. 2012) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)). "A court may exercise this power 'to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013)). When considering sanctions, courts must resolve all doubts in favor of the attorney and never scrutinize with hindsight. *Gust Inc. v. Alphcap Ventures, LLC*, 905 F.3d 1321, 1327 (Fed. Cir. 2018).

Subjective bad faith—the basis for these sanctions—is a demanding standard. It requires a showing greater than action based on an unreasonable belief, *Rowe v. Gary*, 773 Fed. App'x 500, 504 (11th Cir. 2019), and must exceed "simply bad judgment," "negligence," or even "simple recklessness." *United States v. Shaygan*, 652 F.3d 1297, 1312 (11th Cir. 2011); *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, NO. 19-560, 2021 WL 3421394, at *2 (N.D. Ala. Aug. 5, 2021) (quoting *Purchasing*

*Power, LLC*, 851 F.3d at 1224). Bad faith requires "the conscious doing of a wrong because of dishonest purpose or moral obliquity"; it contemplates "a state of mind affirmatively operating with furtive design or ill will." *Fletcher v. Ben Crump Law, PLLC*, No. 21-1433, 2023 WL 3095571, at *4 (N.D. Ala. Apr. 26, 2023) (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999)). The burden of proof required to impose inherent-power sanctions is clear-and-convincing evidence. *Tarasewicz v. Royal Carribbean Cruises Ltd.*, No. 14-60885, 2016 WL 3944178, at *2 (S.D. Fla. Mar. 17, 2016); *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, NO. 19-560, 2022 WL 2374369, at *3 (N.D. Ala. June 30, 2022) (applying same standard).

This Court, in *In re Finkelstein*, 901 F.2d 1560 (11th Cir. 1990), made clear that if attorneys are to be sanctioned for certain conduct, they must be on notice *at the time they engage in the conduct* that it would be condemned by the courts. In *Finkelstein*, plaintiff's counsel (Finkelstein) wrote a letter to the general counsel for defendants suggesting further actions should be taken to prevent similar lawsuits. *Id*. at 1562. Defendants sent the letter to the district court, which issued an order requiring Finkelstein to show cause why he should not be disbarred. *Id*.

48

After a hearing, the court sanctioned *Finkelstein*, finding that his direct communication to defendants' general counsel was improper, as the court believed Finkelstein had mischaracterized the issue of attorney's fees, and that the suggested reasons for settlement could only be read as threats "which were an attempt to remove the resolution of disputes from the constitutionally established courts of the United States." *Id.* at 1563.

This Court reversed. It found that the district court "disclaimed reliance upon a written canon of ethics, a code provision, or a case which proscribed the conduct which it found reprehensible but depended entirely upon 'a code by which an attorney practices which transcends any written code of professional conduct.'" *Id.* at 1565. As this Court stated: "The fatal flaw with this transcendental code of conduct is that *it existed only in the subjective opinion of the court, of which the appellant had no notice, and was the sole basis of the sanction administered <u>after</u> the conduct had occurred.*" *Id.* (emphasis added).

B. <u>Eagan and Doss had no notice at the time of dismissal that their conduct could trigger sanctions</u>.

If a forum-selection limitation is to be imposed on Rule 41, attorneys must have proper notice of it before they can be subjected to sanctions. The

district court's rule was created after the conduct occurred, which is a violation of due process. As the First Circuit observed, it is "unfair for the court to use the case [in which the sanction is imposed] as the first step in adopting a new rule." *United States v. 789 Cases of Latex Surgeon Gloves*, 13 F.3d 12, 15 (1st Cir. 1993). 'The law forbids the imposition of a new rule without prior notice." *Id.* (quoting *Boettcher v. Hartford Ins. Grp.*, 927 F.2d 23, 26 (1st Cir. 1991)); *see also In re Richardson*, 793 F.2d 37, 41 (1st Cir. 1986) (reversing sanction premised on violation of an "unwritten rule").

*Finkelstein* instructs that any bad-faith conduct must relate to attorneys' knowledge at the time of sanctionable conduct—here, dismissal and refiling—that they did something wrong. Eagan and Doss had no such knowledge. For the reasons discussed in Part. I, *supra*, a reasonable lawyer would have understood Rule 41 to grant a broad right to dismissal "even if the prime purpose of doing so was to avoid adjudication" by a certain judge. DE:496-1:5 (Joseph Decl.).

Eagan and Doss were sanctioned pursuant to a "transcendental code of conduct"—an expansive, rule-defeating concept of forum-shopping—that "existed only in the subjective opinion of the court" and the three-judge

panel. *Finkelstein*, 901 F.2d at 1565. They had "no notice" of this unwritten "rule", and it was "the sole basis of the sanction" administered after the conduct had occurred. *Id*. They were sanctioned for their "tactics" and "tone" in sanctions proceedings. *Id*. at 1562-63. And no attorney is on notice that they may be sanctioned for defending their litigation decisions based on reasonable interpretation of the law.

The district court dismissed Eagan and Doss's reliance on *Finkelstein* as "magical thinking." DE:711:184. It claimed that *Finkelstein* imposed a higher notice requirement only because the conduct there did not "threaten the orderly administration of justice," citing *Schlumberger Technologies, Inc. v. Wiley*, 113 F.3d 1553 (11th Cir. 1997). But the court's effort to distinguish *Finkelstein* does not hold up; the claimed distinction is flawed.

*Schlumberger* did not create a two-tiered notice standard. It addressed appellate standards of review for attorney disqualification decisions. The Eleventh Circuit explained that when in-court conduct threatens courtroom disruption or deliberately challenges a court order, appellate courts defer heavily to the trial court. But where the conduct is merely "allegedly unethical," courts require a specific rule violation—not

vague, judge-made norms. *Id*. at 1561.

In fact, *Schlumberger* reversed the district court for "incorrectly construing the scope of its discretion"—just as the district court did here. And the conduct in this case bears no resemblance to the disruptive, contemptuous conduct in the cases *Schlumberger* placed under the "orderly administration of justice" category. This Court cited several examples that fall into that category:

- *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976) (en banc): defense counsel accused a federal agent of extortion during opening statement without any evidentiary basis.

- *The Nationalist Movement v. City of Cumming*, 913 F.2d 885, 893 (11th Cir. 1990): counsel knowingly called an unqualified witness to authenticate records, made frivolous privilege objections that concealed his own interest, and asked questions intended to embarrass opposing witnesses.

- *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1207 (11th Cir. 1985): counsel deliberately advised his client to violate a court-issued protective order.

Nothing like that occurred here. There was no courtroom misconduct, no disregard for a court order, and no disruption of proceedings. The court's suggestion that Eagan and Doss's conduct "threatened the orderly administration of justice" misapplies *Schlumberger*. This case, like *Finkelstein*, falls within the "allegedly unethical" category—where the

52

court must point to a specific, clearly established rule of conduct. *Id*. at 1561.[5] There is no such rule here.

### C. BellSouth did not put Eagan and Doss on notice that the conduct was prohibited.

At some level, and despite efforts to distinguish *Finkelstein*, the district court agreed that pre-act notice is required. The court located that notice in *In re BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003), which it suggested should have placed Eagan and Doss on notice that voluntarily dismissing a case could expose counsel to sanctions. DE:711 at 200.[6] But *BellSouth* involved neither a Rule 41 dismissal nor sanctions.

Instead, the case addressed a "matter of concern that parties in the Northern District of Alabama might be taking strategic advantage of the recusal statute to, in effect, 'judge-shop' away from Chief Judge U.W.

---

[5] A revealing example of the court's strained effort to reconcile its reasoning appears on page 186 of the sanctions order. There, the court dismisses the applicability of *Finkelstein* by claiming it involved a "line of attorney disqualification cases"—yet *BellSouth* (discussed below), the very case the court relies on to justify sanctions, is an attorney disqualification case.

[6] Notably, the district court's dismissal order in *Walker* did not cite *Bellsouth*, and the panel's order commencing its proceedings merely cited *Bellsouth* in a footnote.

Clemon by retaining his nephew's law firm despite a Standing Order governing the appearance of counsel that raised a conflict with the assigned judge." *BellSouth*, 334 F.3d at 944-46. The standing order put parties on notice that retaining a relative's law firm to force a judicial conflict was improper and would be strictly scrutinized. The *BellSouth* district court held an evidentiary hearing and found that the "long history of forced recusal of Judge Clemon in this District" reflected deliberate, systemic "manipulation of the random assignment of judges system." *Id*. at 948. On mandamus review, this Court concluded that BellSouth's right to counsel of choice was overridden when that choice had the "sole or primary purpose of causing the recusal of the judge." *Id*. at 956.

*BellSouth* provides no guidance for lawyers, like Eagan and Doss, when confronted with (1) whether to voluntarily dismiss a case pursuant to Rule 41(a)(1), and (2) whether to file a new case, with new plaintiffs, in one district or another. The *BellSouth* Court reached neither issue. At most, the Court noted that "a contrivance to interfere with the judicial assignment process constitutes a threat to the orderly administration of justice." *Id*. at 959. The Court, however, made that finding because the relevant standard—whether to disqualify counsel—expressly required it.

*Id.* at 948 (describing one of the *Robinson* factors as "possible manipulation and impropriety"). That stray statement did not create a general rule prohibiting Rule 41 dismissals that are in any way influenced by forum. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008) (citation omitted) ("There is a difference between the holding in a case and the reasoning that supports that holding."). Courts "are bound only by the holding of [a prior decision], not the reasoning behind the holding." *United States v. Murphy*, 306 F.3d 1087, 1090 (11th Cir. 2002).

In any event, a decision like *BellSouth* does not accurately predict how a court would evaluate voluntary dismissals. The Second, Fifth, and Eighth Circuits have criticized "judge shopping" yet reversed efforts by district courts to sanction based on Rule 41 dismissals. *Compare Ouachita Nat'l Bank v. Tosco Corp.*, 686 F.2d 1291, 1300 (8th Cir. 1982) (noting that "judge shopping" is "a practice which has been for the most part condemned"), *with Adams*, 863 F.3d at 1080-81 (8th Cir. 2017) (reversing sanctions based on Rule 41 dismissal); *compare In re FCC*, 208 F.3d 137, 139 (2d Cir. 2000) (same result as in *BellSouth*), *with Wolters Kluwer Fin. Servs., Inc.*, 564 F.3d at 115 (reversing sanctions based on Rule 41 dismissal); *compare McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, (5th

Cir. 1983) ("[C]ounsel may not be chosen solely or primarily for the purpose of disqualifying the judge."), *with Bechuck*, 814 F.3d 287, 290 (5th Cir. 2016) ("Rule 41(a)(1) essentially permits forum-shopping.").

When Eagan and Doss agreed to dismiss *Ladinsky* and file *Eknes-Tucker*, no precedent from this Court placed them on notice that doing so would be sanctionable. *BellSouth*—the only decision from this Court identified by the district court—did not.

D.     Litigation decisions supported by reasonable interpretations of the law do not form a basis for sanctions.

Eagan and Doss made the same legal arguments about Rule 41 as every other respondent in the sanctions proceeding. Yet the district court found Eagan and Doss's arguments so preposterous as to warrant sanctions. The imposition of sanctions for a supposed frivolous legal argument exists only when a party advances "a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law." *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (citation omitted).  In sanctioning Eagan and Doss under its inherent power, and not pursuant to Rule 11, the court created an impermissible workaround: it attempted to dilute the Rule 11 standard by

asserting that Eagan and Doss could not have claimed reliance on that reasonable Rule 41 interpretation, and thus their doing so was bad faith.

This undermined case law establishing that sanctions can be imposed only for advancing a legal theory that "cannot be advanced as a reasonable argument." The trial court erred by repackaging Eagan and Doss's Rule 41 legal arguments into a bad-faith analysis when sanctions were otherwise unavailable because the legal positions were supported by applicable law. Maintaining innocence based on applicable law is not bad faith.

For example, the court sanctioned Eagan for her testimony that the only limitations on Rule 41(a)(1)(A)(i) dismissals are those in the rule itself. Eagan cited the two-dismissal rule as one such controlling limitation. When asked hypotheticals by Judge Burke, "Eagan acknowledged that the two-dismissal rule does not apply to a suit refiled with new plaintiffs like *Eknes-Tucker*." According to Judge Burke, this meant "Eagan understood that the construction of Rule 41 she urged the Court to adopt is at odds with her understanding of the rule, and the Court concludes that she urged her preferred construction to mask her misconduct." DE:711:132. This is not a contradiction. Eagan is correct

that the only limitations to Rule 41 are contained in the rule itself and that one of them is the two-dismissal rule. This is an objectively reasonable position—not a sanctionable interpretation of the law.

E. Uncontradicted testimony favoring Eagan and Doss left no basis for a finding of bad faith.

The inference that Eagan and Doss acted in bad faith cannot survive clear and convincing scrutiny. That finding is flatly contradicted by sworn, consistent testimony from multiple lawyers that the decision to dismiss was based on several legitimate factors—only one of which involved concern about Judge Burke. There was no extrinsic evidence to the contrary. To accept the district court's theory, one would have to believe that (1) a large group of sequestered lawyers coordinated a false narrative and then uniformly lied under oath despite explicit warnings and (2) the court chose not to sanction everyone else who falsely testified the same way that Eagan and Doss did. That is not just unsupported.  It is implausible.

1. *Testimony regarding the unusual transfer provided a facially valid basis for attorneys' conduct.*

Eagan and Doss testified that concerns about *judicial* variance from the random case assignment procedures fueled the dismissal. As they both

58

testified, in their experience, cases are not *sua sponte* reassigned in the Northern District. Nor does the judge with the first-filed case reassign that case to the judge with the second-filed case, especially when there has been no motion to consolidate. *Forrester v. MidFirst Bank*, No. 2:18-mc-1392, 2019 WL 13217066, *2 (N.D. Ala. Feb. 8, 2019) ("As a matter of settled practice, when parties ask to consolidate related cases in this district, the cases are typically consolidated by and before the judge presiding over the first-filed case.").  The record was undisputed on this point: that, in their experience, the reassignment of *Ladinsky* from Judge Axon to Judge Burke was unusual.

The district court found that the attorneys "offered no reason why this Court could not then properly receive *Ladinsky* on a transfer." DE:711:131.  But that is not the point. Eagan and Doss never said Judge Burke, as a matter of judicial power, could not receive the transfer. They said in their experience it was contrary to standard practice.

The court attempted to dispose of the first-filed rule by suggesting that it is only an inter-district rule and not an intra-district rule.  That does not refute Eagan and Doss's subjective understanding of the practice at the time they dismissed the case.  The undisputed record was that, in

the year before the *Ladinsky* dismissal, there had been no *sua sponte* reassignments like the one that occurred in *Ladinsky*. The court cannot simply disagree with Eagan and Doss's statements about their own practical experience as a basis for finding bad-faith misconduct.

Nevertheless, the court found their testimony that they panicked about the nature of the transfer to be "unworthy of belief." It based this on the testimony of another attorney on the *Ladinsky* team, Scott McCoy, who in testimony before the panel was asked about a reverse (and hypothetical) scenario: a transfer to Judge Axon if she originally had the second-filed case. The court did not cite the full testimony, but rather focused only on a speculative observation that scenario would be a "bank error" in the plaintiffs' favor. The full testimony was:

> MCCOY: "[I]t's hard to know without being in that circumstance. But, I mean, that seems like a bank error in your favor, and . . . the circumstances are different. It's hard to know in the moment what would have been going on."

> CHIEF JUDGE PROCTOR: "I'm putting you in the moment. Are you dismissing then?"

> MCCOY: "I honestly don't know. And, one, it's not up to me. And I don't know what my decision on that would be."

*Vague,* DE:79:214.

McCoy further testified that his understanding of the law was "the lawyer is not barred . . . from bringing a claim for another plaintiff who has a claim." *Id.* And he testified that the team found the transfer order "very suspicious." *Vague*, DE:80-6 at 28. He was not sanctioned.

The court seized on the bank-error language but ignored testimony helpful to Eagan and Doss. DE:711:133 (elicited in sequestered testimony to the panel).[7] How another person answers a hypothetical scenario says nothing about what Eagan and Doss subjectively believed. What is more, McCoy's testimony corroborated Eagan and Doss. The trial court found: "Eagan could not bring herself to testify that she would have tolerated a perceived irregularity (assuming she perceived such an irregularity at all) as long as it landed her case with a judge she deemed favorable." He further found, "[t]he real reason *Ladinsky*'s transfer to this Court led Eagan to panic was she presumed this Court would rule against her

_____

[7] DE 497:2 (Eagan and Doss asserting in district court that "although the Court may consider Ms. Eagan's testimony against Ms. Eagan or Mr. Doss's testimony against Mr. Doss, these Respondents object to the Court's reliance on the testimony of others, obtained through the panel's inquiry, against them for purposes of supporting any sanction levied.")

clients." DE711:133. For Doss, he found: "he admitted that if the case had been reassigned to Judge Thompson instead of Judge Burke, he probably would not have dismissed." DE:711:140.

None of that is bad faith. This is truthful testimony about strategic decisions. Attorneys have no duty to object to court errors (or to unusual case-assignment procedures) that they view as strategically beneficial to their clients. Lawyers are entitled to have views about judges, and the court has cited nothing for the proposition that an attorney's assessment of a judge – when the attorney has been compelled to provide it to that judge – signifies bad faith.

2.  *The testimony regarding concerns about losing first-filed status was objectively reasonable.*

As to Eagan and Doss's explanation regarding concerns about losing advantages associated with first-filed status, the court found that "literally unbelievable," on the theory that their plan to agree to consolidate *Walker* reflects a "concession that the *Ladinsky* team would not have unilateral control over a standalone lawsuit." DE:711:132, 139 ("in real time then, Eagan [and Doss] did not consider first-filed status a big deal"). This misconstrues the testimony of the *Ladinsky* lawyers.

Even if a case is consolidated, there are strategic advantages of being the first-filed case (and presumably lead counsel). Such strategic advantages were not merely theoretical: *Walker*, at the time, seemed to be moving on a faster track—unlike *Ladinsky*, a temporary restraining order motion was already filed in that case, and a status conference scheduled. The risk of losing a second race to the courthouse does not undermine Eagan or Doss's testimony because without dismissal, the race was over—they lost. Filing again gave them 50/50 odds of regaining the lead. Other *Ladinsky* attorneys—including Shannon Minter and Jennifer Levi, who were the lead decision makers in the case—corroborated this explanation and were not sanctioned. DE:640:166-167, 170-171, 179, 191-193. An unrebutted explanation, which is reasonable and truthful, is not subjective bad faith.

> 3. *The other factual findings were unrelated to the decision to dismiss (the basis for the inquiry) and were not evidence of bad faith.*

The sanctions order relied on other factual findings, none of which supported a finding of subjective bad faith. Instead, it demonstrated the extent to which the sanctions proceeding was unmoored from the conduct under inquiry. None of these factual findings allow the imposition of

sanctions. They demonstrate the extent to which Eagan and Doss were punished for every good-faith effort they made to defend themselves.

**First,** Eagan and Doss were accused of creating a "misleading narrative" because they filed a motion to take judicial notice of Judge Axon's criminal trial. DE:711:84. It is incomprehensible how a citation to a docket embraced by the panel is misleading. The criminal trial became relevant only because the panel volunteered that Judge Axon transferred *Ladinsky* because she "was on day four of what was scheduled to be a two-plus-week criminal trial, an eighteen-defendant case with four defendants at trial, and quite a lot of moving parts" and then relied upon that explanation when finding misconduct. *Vague*, DE:75:33-34; *Vague*, DE:70:8.

The panel did not disclose the case name or number, but Eagan and Doss eventually located the *Williamson* docket. The trial began on April 11, 2022, and the government rested on April 14, 2022. On April 15, 2022, one of the four defendants presented one witness, and the other three defendants rested without any case. The jury began deliberating that afternoon. Given the panel's citing this trial in *Vague*, Eagan and Doss offered evidence as to the status of that trial, which established that the

jury in Judge Axon's case (1) had begun deliberating two hours before she transferred *Ladinsky* to Judge Burke, and (2) had reached a verdict the following Monday. The district court found bad faith on their basis of filing this motion, claiming it "spun a false narrative" because the Indictment included forfeiture allegations.[8] DE:711:139.

Going into the sanctions proceeding, Eagan and Doss did not know what the district court intended to discuss. If it chose to discuss—like the three-judge panel—Judge Axon's criminal trial, then they asked that he take judicial notice of the *Williamson* docket. DE:571. Nothing more. Eagan and Doss's motion was approximately two pages and said nothing—let alone a "false narrative"—other than if the court were inclined to consider Judge Axon's criminal trial (as the panel did), it should take judicial notice of the actual court records. *Id.*

**Second,** Eagan was sanctioned because, "when a colleague's friend

---

[8] A forfeiture proceeding is not part of the criminal jury trial in-and-of-itself. It is a modified sentencing procedure that is extremely limited—so much that this Circuit does not even have a pattern instruction on forfeiture. In any event, ensuring a complete record—accounting for the actual state of the trial that the panel deemed significant enough to introduce repeatedly—is not bad faith.

offered to serve as local counsel in the Middle District, Eagan declined his help in part because she 'did not want to run any risk of Judge Huffaker, whom [she] viewed as potentially a favorable draw for the plaintiffs, recusing from the case." DE:711:132 (citing *Vague*, DE:80-1:14). A lawyer cannot be sanctioned for declining to force a conflict; indeed, Eagan's *declining* to force a conflict embraces, rather than manipulates, random case assignment procedures. Decisions not to associate counsel are not a basis for sanctions.

**Third,** the court emphasized the press statement by Eagan, following the dismissal (i.e., that they planned to refile imminently). Regardless of what one might think about the policy debate surrounding the Alabama law, there was substantial public interest and emotional investment in the outcome. An attorney publicly assuaging concerns of those whose interests she represents does not warrant sanctions. It demonstrates good faith: If Eagan thought her conduct was in any way untoward, she would not have advertised it in the press.

****

The bad-faith findings were based on personal perceptions of the credibility of Eagan and Doss's unrebutted statements about their own

memory and motivations, as well as their body language, demeanor, and tone. The court attempted to explain why it did not find Eagan and Doss's explanations legitimate, but its attempt to litigate the reasons for dismissal was improper.

Ultimately, the sanctions order punished legal arguments with which the court disagreed, in an attempt to cleanse the system of any strategic conduct that could be perceived as judge-shopping. That is insufficient to establish bad faith—and it is also unrealistic. The existence of choices in a multijurisdictional system "not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause." *McGuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir. 1983). And attorneys do it every day: by filing (or choosing not to file) removal notices, declinations of magistrate judge jurisdiction, motions to remand, motions to transfer, motions to disqualify, motions to consolidate, voluntary dismissals, and amendments to thwart federal jurisdiction.[9] "The motive of the suitor in

_____

[9] The panel and the district court suggested that these maneuvers were concerns about the forum, not the judge. But, until this inquiry, there has been no reported decision where a lawyer in federal court in Alabama (or the Eleventh Circuit) has been questioned about whether his or her

67

making this choice is ordinarily of no moment: a court may be selected because . . . the judge who presides in that forum is thought more likely to rule in the litigant's favor." *Id*. at 1261-62. "Even in a particular forum, other tactical measures are available to determine who will be the trier of fact." *Id*. at 1262. "Even when legal rules are identical, justice can be obtained only through human beings, and neither judges nor jurors are fungible.  In recognition of both this and the nature of the adversary, client-serving process, we tolerate a certain amount of manipulation without inquiry into motive." *Id*.  The "inquiry into motive" that occurred here was unprecedented and improper.

The district court erred in applying the legal standard, and in making findings of fact, because it viewed the evidence in the light *least* favorable to Eagan and Doss.  *Cf. Gust Inc.*, 905 F.3d at 1327 (doubts must be resolved in favor of the attorneys).  The court gave no credibility to Eagan and Doss's reasonable and legitimate alternative explanations for the dismissal, even when those reasons were consistent with the testimony

procedural decision was because of a judge. Although the decision could be motivated by the forum, it might not be. Embracing the district court's rule would empower the judiciary to scrutinize every decision by every attorney that has an effect on judicial assignments.

of every knowledgeable and sequestered *Ladinsky* lawyer, none of whom were sanctioned. Inherent power sanctions, as the Supreme Court has emphasized, should be applied with caution. Presumptive disbelief, especially when the evidentiary record was uncontradicted, is anathema to caution.

Eagan and Doss's arguments were legally and factually sound—they were not fanciful. The sanctions order rested on a faulty notion that by threatening the careers of attorneys who act well within the bounds of the law, and who defend their conduct under the law, the system may be scrubbed of forum-shopping. And this was all done to protect against conduct that courts have repeatedly recognized our system tolerates.

Sanctions cannot stand on guesswork. Nothing in Rule 41, or any binding precedent, remotely suggests that a lawyer may be punished for exercising a voluntary dismissal based on a court's speculation about motive. Eagan and Doss acted within their clients' rights, gave valid, well-supported reasons, and followed the Rule exactly as written. Punishing them anyway—under a forum-shopping limitation that no court in this Circuit had ever announced—is not just legally wrong. It's unfair, unforeseeable, and impermissible.

## III.  The sanctions proceedings violated due process.

The process by which sanctions were imposed did not comport with due process and invaded the attorney-work-product privilege. Disciplinary proceedings are "of a quasi-criminal nature," and the process must reflect that. *In re Ruffalo*, 390 U.S. 544, 551 (1968).

The district court was the victim, the accuser, the prosecutor, the fact-finder, the judge, and the sentencer.  It also was presiding over the underlying case.  Attorneys were questioned about strategic decisions made on behalf of clients and were compelled to divulge to the sitting judge privileged conversations relating to case strategy in an ongoing matter.  Testimony was first elicited in a closed-door proceeding in which the fact-finders were also the cross-examiners, and those under investigation were prohibited from hearing evidence.  Those who the district court believed sufficiently apologized were spared.  Eagan and Doss—who engaged in identical conduct and who also apologized and maintained their innocence—were punished based on the court's perception that the apologies were not sincere. This standardless process was not authorized under the court's rules.

Jurisdictional wrangling between courts and litigators is an inherent

part of our court system. Unfettered interrogation under the threat of harsh sanctions is not. If the process applied here is used elsewhere—to challenge anything from strategic decisions made by lawyers who sue to block unconstitutional firearms regulations to strategic choices regarding where to seek injunctive relief in response to an executive order—it will threaten the core of our multijurisdictional adversarial system and harm the individuals who seek relief through the courts.

A.    <u>Eagan and Doss were deprived of a meaningful defense</u>.

Consistent with this Court's precedent, Eagan and Doss offered evidence to corroborate their good faith belief that they had a right to dismiss *Ladinsky* for any reason. They presented a declaration from Gregory P. Joseph, author of *Sanctions: The Federal Law of Litigation Abuse* (6th ed. 2020), which has been described as "[t]he leading authority on sanctions law," *Nat'l Bank v. Jones Day*, 800 F.3d 936, 944 (8th Cir. 2015), and an editor of the Rule 41 Chapter of Moore's Federal Practice (3d ed.). DE:496-1:1-2.

Based on his detailed review (and accepting the panel's findings of fact as true), Mr. Joseph was prepared to offer several opinions:

(1)    "a reasonable lawyer in Ms. Eagan's and Mr. Doss's shoes in

April 2022 would understand that Rule 41(a)(1)(A)(i) conferred on them an absolute right to dismiss *Ladinsky*;"

(2) "reasonable lawyers in Ms. Eagan's and Mr. Doss's position would understand that they had this absolute right to dismiss *Ladinsky* under Rule 41(a)(1) even if the prime purpose of doing so was to avoid adjudication by [a particular judge]—in other words, judge-shopping—and would further understand that this was not sanctionable;"

(3) "a reasonable lawyer in Ms. Eagan's and Mr. Doss's shoes would not have understood that the absolute right to dismiss under Rule 41(a)(1)—even for purposes of judge-shopping—was affected by the Eleventh Circuit's decision in *In re BellSouth Corp.*, 334 F.3d 941 … (11th Cir. 2003);"

(4) "a reasonable lawyer in Ms. Eagan's and Mr. Doss's position would know that the judges of the Alabama District Courts had not promulgated a local rule forbidding them from using . . . Rule 41(a)(1) for purposes of judge-shopping…;"

(5) "a reasonable lawyer filing a Rule 41(a)(1) notice of dismissal for purposes of judge-shopping . . . would not think that he or she was doing so for an 'improper purpose' within Rule 11(b)(1) or in bad faith."

DE:496-1 at 4-10.

The court declined to consider this evidence, finding Mr. Joseph's opinions to be "legal conclusions" that "would not *help* the Court at all.". DE:449:3 (emphasis in original). But precluding the evidence is inconsistent with this Court's precedent and denied Eagan and Doss a meaningful defense.

In *Finkelstein*, described above, this Court found that the attorney's conduct may have been offensive to the court and displayed "unlawyerlike rudeness," but concluded that the attorney was not on notice that the conduct would lead to sanctions, as evidenced by the affidavits of four licensed attorneys, who testified that in their opinion, they could find no ethical violations or unprofessional conduct with the letter. 901 F.2d at 1565. Based on this evidence, this Court reversed the district court's sanctions order, noting that an attorney cannot be "deprive[d] … of the opportunity to practice his profession on the basis of a determination after the fact that conduct is unethical *if responsible attorneys would differ in appraising the propriety of that conduct.*" *Id.* (internal quotation marks and citation omitted) (emphasis added).

Following *Finkelstein*, this Court has reiterated the importance of submitting evidence to establish the reasonableness of counsel's conduct. For example, in *Thomas v. Tenneco Packaging Co. Inc.*, 293 F.3d 1306, 1323 n.27 (11th Cir. 2002) (emphasis added), this Court distinguished *Finkelstein*, in part, because "unlike in *Finkelstein*, [the attorney] has failed to come forward with any evidence, affidavits or otherwise, in response to the Show Cause Order to demonstrate that a reasonable

73

attorney would approve of her behavior towards opposing counsel."

Here, the district court found bad faith because, in its view, no reasonable lawyer would believe the legal positions advanced by Eagan and Doss. Mr. Joseph's testimony—which would have established that "responsible attorneys would differ in appraising the propriety of that conduct" and that "a reasonable attorney would approve of [their] behavior"—would have directly contradicted the court's ultimate conclusions regarding Eagan and Doss's purported bad faith. By refusing to consider this evidence, which *Finkelstein* and *Thomas* acknowledge is relevant, the court deprived Eagan and Doss of an opportunity to fully defend themselves.

B.    The closed-door sequestered sanctions proceedings violated due process.

The panel proceedings in *In re Vague* constituted an unprecedented inquisition that was not contemplated by rule or procedure. The proceedings were conducted in an adversarial and *ex parte* manner, without any meaningful protection for the accused. All attorneys were sequestered; they were not permitted to hear each other's testimony and therefore unable to assist in their own defense—they could not help guide

their attorneys in objecting to or cross-examining such testimony. DE:75:74. Junior attorneys were questioned without an opportunity to have counsel present. *Id*. at 74, 78. Testimony was compelled, and judicial participation resembled rigorous cross-examination by an adversary. Respondents were denied the opportunity to respond to the evidence before the panel issued its report.

**First**, whether the district court relied on the panel's findings, the panel inflicted a cognizable injury. The adversarial proceeding resulted in a finding of misconduct (a finding that has never been vacated). Courts have generally agreed that misconduct findings, even without sanctions, are cognizable injuries subject to redress. *See, e.g.*, *Walker v. City of Mesquite, Tex.*, 129 F.3d 831, 832 (5th Cir. 1997) (reviewing finding of "blatant misconduct," despite no sanctions, because "one's professional reputation is a lawyer's most important and valuable asset"); *Martinez v. City of Chi.*, 823 F.3d 1050, 1053 (7th Cir. 2016); *Adams v. Ford Motor Co.*, 653 F.3d 299, 1317-18 (3d Cir. 2011); *Keach v. Cnty. of Scenectady*, 593 F.3d 218, 225 (2d Cir. 2010).

**Second**, notice was insufficient, and the inquiry unlimited. "The charge must be known before the proceedings commence. They become a

trap when, after they are underway, the charges are amended on the basis of testimony of the accused." *In re Ruffalo*, 390 U.S. 554 (1968). Throughout the proceedings, charges were amended due to testimony of the accused. When the proceedings were turned over to the district court, Eagan and Doss were forced to show cause why they should not be sanctioned for testimony they gave before the panel and then sanctioned for consistent testimony before the district court.

*United States v. Shaygan*, 652 F.3d 1297 (11th Cir. 2011), demonstrates the impropriety of the procedure here. In *Shaygan*, this Court found that a district court abused its discretion in imposing sanctions against the United States "for a prosecution that was objectively reasonable," and that the district court "violated the constitutional right to due process of the two lead prosecutors . . . when it denied them notice of any charges of misconduct and an opportunity to be heard." *Id.* at 1301-02. In *Shaygan*, this Court found: (1) the prosecutors were not on notice that the court was considering a public reprimand; (2) the court had *sua sponte* sequestered them as witnesses; and (3) one prosecutor's testimony at the sanction's proceeding did not constitute "an opportunity to be heard in the Anglo-American tradition", *id.* 1318, and the other prosecutor was

never called.

The district court found that "[t]he [p]anel's proceedings could only have run afoul of *Shaygan* if the [p]anel had imposed sanctions." DE711:162.   That is too narrow a reading of the record and of *Shaygan*:

- Securing testimony through sequestration does not comport with due process. No precedent from this Court permits that procedure, and Rule 615 expressly counsels against sequestration of parties. Fed. R. Evid. 615(a) (allowing exclusion of witnesses, not parties); *id.* advisory committee note ("Exclusion of persons who are parties would raise serious problems of confrontation and due process.").

- The due process violation here was not limited to the panel. The show-cause orders entered by the district court did not provide meaningful notice of specific charges; rather, they demonstrated the far-reaching nature of the inquiry and the attempt to search for sanctionable conduct rather than to investigate a specific incident. The constitutional flaw runs even deeper. As the *Shaygan* court explained, due process requires that the "charge" be known before any inquiry

begins—including the precise rule allegedly violated and how it was disobeyed. *Finkelstein* likewise holds that, to satisfy due process, the prohibited conduct must be ascertainable before it occurs. 901 F.2d at 1565. Yet the court identified no statute, rule, or standard that was clearly violated. Instead, it cited *BellSouth,* claiming that it provided "controlling case law" and adequate notice, but that case involved attorney disqualification—not sanctions for Rule 41 dismissals—and says nothing about supposed manipulation through voluntary dismissal. That is not notice. It is retroactive reasoning. Due process requires the rule to come first, not after the punishment. *Shaygan*, 652 F.3d at 1319 ("An attorney charged with misconduct is entitled to notice of the charge: that is, the attorney is entitled to know the precise rule, standard, or law that he or she is alleged to have violated and how he or she allegedly violated it.").

**<u>Third,</u>** the district court attempted to disclaim reliance on the panel. It denied as moot process objections, reasoning that he had "neither relied on, incorporated, nor deferred to the panel's findings or conclusions for any

sanctions it has imposed." But the court relied on panel testimony throughout the process, including the court's invocation of the crime-fraud exception and its findings of bad faith.

**Fourth,** the district court deemed process objections forfeited because "[t]he Lightfoot Respondents waited until June 17, 2022, to object that the Panel's investigation of their conduct violated due process." DE:711:154. The panel began proceedings in May 2022. It stretches the limits of record preservation to suggest that this was insufficient, given the unclear nature of the proceedings in which they were participating and the extent to which they were thrust into it without knowing what it would entail. The panel and the district court had ample opportunity at that point "to take corrective action." *S.E.C. v. Diversified Corp. Consulting Grp.*, 378 F.3d 1219, 1226 (11th Cir. 2004).

Separately, under *Ruffalo*, the district court found that Eagan and Doss received constitutionally adequate notice of the charges investigated by the panel, due to an order informing respondents that the panel would "inquire about the issues raised by counsel's actions." *Vague*, DE:1. This order was far too vague and standardless to provide adequate notice—it resembles the problematic order in *Shaygan*. The proceedings that

followed were not targeted to a specific violation of a rule—the notice offered none—but represented a fishing expedition into counsel's strategic decisions and motives.

The proceedings before the three-judge panel, and the subsequent sanctions proceedings in the district court, denied the respondents due process.

\* \* \*

## CONCLUSION

The district court's sanctions order disqualified Eagan and Doss, publicly reprimanded them, and required them to notify all their clients, opposing counsel, and courts in which they had pending cases of the order. It referred them for disciplinary proceedings to their respective state bars, which have since opened inquiries. These sanctions have been professionally devastating—and the proceedings occupied years of their life and involved repeated inquisitorial hearings. None of this was warranted. The conduct at issue was permitted by applicable law and they always acted in good faith. The sanctions order should be reversed and vacated.

Respectfully submitted,

Richard Klugh
Jenny Wilson
KLUGH WILSON
40 NW Third Street, PH 1
Miami, Florida 33128
Tel: (305) 536-1191
rklugh@klughwilson.com
jenny@klughwilson.com

Robert B. Remar
SMITH GAMBRELL &
RUSSELL, LLP
1105 West Peachtree Street NE
Suite 1000
Atlanta, Georgia 30309
Tel: (404) 815-3568
rremar@sgrlaw.com
Ga. Bar No. 600575

David Oscar Markus*
MARKUS/MOSS PLLC
40 NW Third Street, PH 1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By:    /s/ David Oscar Markus
       David Oscar Markus
       Florida Bar No. 119318
       dmarkus@markuslaw.com

*Counsel of record for Appellants
Eagan and Doss

## CERTIFICATE OF COMPLIANCE

According to the WordPerfect program on which it is written, the numbered pages of this brief contain 16,106 words. We previously filed a motion for extra words, asking for up to 20,000. This motion is still pending. We have worked hard to cut the brief for these two appellants as much as possible and to file one joint brief for them. We respectfully request that the Court grant the pending motion and accept this Brief.

By:    /s/ David Oscar Markus
       David Oscar Markus

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed on this 28th day of July, and served on that date by ECF filing upon all counsel of record.

By:  /s/ David Oscar Markus
David Oscar Markus