No. 25-10973-G

---

## United States Court of Appeals for the Eleventh Circuit

---

BOE, ET AL. V. MARSHALL, ET AL.,
(IN RE: CARL CHARLES)

---

On Appeal from the United States District Court for the
Middle District of Alabama
(Case No. 2:22-CV-184-LCB-CWB)

---

## <u>BRIEF OF APPELLANT CARL CHARLES</u>

---

Barry A. Ragsdale
Robert S. Vance III
DOMINICK FELD HYDE, P.C.
1130 22nd Street South, Suite 4000
Birmingham, AL 35205
Tel.:  (205) 536-8888
bragsdale@dfhlaw.com
rvance@dfhlaw.com

W. Neil Eggleston
Mark Hochberg
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Tel.: (202) 389-5016
neil.eggleston@kirkland.com
mark.hochberg@kirKland.com

*Counsel for Appellant Carl
Charles*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-3, Appellant Carl Charles states that he is an individual and that the following persons or entities may have an interest in the outcome of this appeal:

Alliance Defending Freedom—Counsel for Defendants

Assaf, Eugene F.—Counsel for Respondent

Austin, Sarah—Counsel for Plaintiff

Badham & Buck LLC—Counsel for Respondent

Bailey, Daryl D.—Defendant

Bainbridge Mims Rogers & Smith LLP—Counsel for Respondent

Balkoski, Katherine—Counsel for Respondent

Barnes, Brian W.—Counsel for Defendants

Beaverstock, Hon. Jeffrey U.—U.S. District Judge

Berg, Rachel—Counsel for Plaintiff

Bowdre, Alexander Barrett—Counsel for Defendants

Brooks, Roger G.—Counsel for Defendants

Bryan, Hon. Chad W.—U.S. Magistrate Judge

Buck, Brannon Jeffrey—Counsel for Respondent

Burke, Hon. Liles C.—U.S. District Judge

Carr, Danny—Defendant

i

Charles, Carl Solomon—Respondent

Cooper & Kirk, PLLC—Counsel for Defendants

Copeland Franco Screws & Gill—Counsel for Respondent

Crocker, Champ—Defendant

Davis, James William—Counsel for Defendants

Dominick Feld Hyde, P.C.—Counsel for Respondent

Doss, Jeffrey P.—Respondent/Appellant

Driver, Christopher B.—Counsel for Respondent

Eagan, Melody H.—Respondent/Appellant

Eggleston, Warren Neil—Counsel for Respondent

Esseks, James D.—Respondent

Farella Braun & Martell LLP—Counsel for Respondent

Faulks, LaTisha Gotell—Respondent

Frampton, Henry W. IV—Counsel for Defendants

Franklin, Samuel H.—Counsel for Respondent

GLBTQ Legal Advocates & Defenders—Counsel for Plaintiffs

Hartnett, Kathleen Roberta—Respondent

Holliday, Shannon Lynn—Counsel for Respondent

Human Rights Campaign Foundation—Counsel for Plaintiffs

Jenner & Block LLP—Counsel for Respondent

King & Spalding—Counsel for Plaintiffs

King, Mark Christian—Counsel for Respondent

Kirkland & Ellis LLP—Counsel for Respondent

LaCour Jr., Edmund Gerard—Counsel for Defendants

Levi, Jennifer L.—Respondent

Lightfoot, Franklin & White LLC—Counsel for Respondent

Marshall, Steve—Defendant

McCoy, Scott D.—Respondent

McKay, Charles A.—Counsel for Defendants

Mills, Christopher Ernest—Counsel for Defendants

Minter, Shannon—Respondent

National Center for Lesbian Rights—Counsel for Plaintiffs

Office of the Alabama Attorney General—Counsel for Defendants

Orr, Asaf—Respondent

Otterberg, April A.—Counsel for Respondent

Pacheco, Byron—Counsel for Respondent

Patterson, Peter A.—Counsel for Defendants

Peterson, Misty L.—Counsel for Plaintiffs

Prater IV, Harlan I.—Counsel for Respondent

Pratt, James Andrew—Counsel for Plaintiffs

Proctor, Hon. R. David—U.S. District Judge

Ragsdale, Barry Alan—Counsel for Respondent

Ramer, John D.—Counsel for Defendants

Reinke, Adam—Counsel for Plaintiffs

Rogers, Bruce Frederick—Counsel for Respondent

Schoenberg, Anthony Paul—Counsel for Respondent

Sechler, Philip A.—Counsel for Defendants

Segall, Robert David—Counsel for Respondent

Seiss, Benjamin Matthew—Counsel for Defendants

Shortnacy, Michael B.—Respondent

Soto, Diego Armando—Counsel for Plaintiffs

Southern Poverty Law Center—Counsel for Plaintiffs

Spero Law LLC—Counsel for Defendants

Stoll, Christopher F.—Counsel for Plaintiffs

Stone, Jessica Lynn—Counsel for Plaintiffs

Tarbox, James H.—Defendant

Terenzi, Elizabeth Nicholson—Counsel for Respondent

Thompson, David H.—Counsel for Defendants

Ugai, John Michael—Counsel for Respondent

Unikowsky, Adam Granich—Counsel for Respondent

Vague, Amie A.—Counsel for Plaintiffs

Vance III, Robert Smith—Counsel for Respondent

Ventiere, Jessica—Defendant

Warbelow, Sarah—Counsel for Plaintiffs

Watkins, Hon. William Keith—U.S. District Judge

Weaver, Cynthia Cheng-Wun—Counsel for Plaintiffs

Whelan, Amy—Counsel for Plaintiffs

Wilson, Thomas Alexander—Counsel for Defendants

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................................................... i

TABLE OF CONTENTS ........................................................................... vi

TABLE OF CITATIONS ........................................................................ viii

STATEMENT REGARDING ORAL ARGUMENT ................................... xi

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................ 2

STATEMENT OF THE CASE .................................................................... 3

    I.    *WALKER* AND *LADINSKY* ARE FILED .......................................... 3

    II.   CHARLES CALLS JUDGE THOMPSON'S CHAMBERS. .......................... 4

    III.   *WALKER* AND *LADINSKY* ARE REASSIGNED AND DISMISSED ......... 5

    IV. THE THREE-JUDGE PANEL'S INQUIRY ............................................. 7

    V.  CHARLES' TESTIMONY BEFORE THE PANEL. ...................................... 8

    VI.  THE PANEL ISSUES ITS FINAL REPORT. .......................................... 9

    VII.  PROCEEDINGS BEFORE THE DISTRICT COURT ............................... 10

    VIII.  RULING APPEALED FROM AND STANDARD OF REVIEW. ............. 13

SUMMARY OF THE ARGUMENT ......................................................... 14

ARGUMENT ............................................................................................. 15

    I.    THE DISTRICT COURT APPLIED THE WRONG LEGAL STANDARD. 20

    II.   THIS APPEAL IS NOT A MERE REVIEW OF CREDIBILITY .................. 26

    III.  THE DISTRICT COURT ABUSED ITS DISCRETION BY SANCTIONING CHARLES WITHOUT EVIDENCE OF SUBJECTIVE BAD FAITH. ................ 30

    IV. THE RESULTS OF THESE PROCEEDINGS ARE UNRELIABLE BECAUSE OF THE DENIAL OF DUE PROCESS AFFORDED TO CHARLES AND THE OTHER RESPONDENTS. ............................................................... 40

        A.   Charles' Due Process Rights Attached at the Commencement of the Panel Proceedings. ...................................................................................... 40

        B.   The Panel's Initial Order Did Not Provide Adequate Notice of the Specific Conduct being Investigated. ................................................................... 42

C.   The Proceedings Before the Panel Violated Charles' and the Other
Respondents' Procedural Due Process Rights. ...................................... 45

D.   Charles' Due Process Objections are not Rendered Moot by the District
Court's Disavowal of the Panel's Findings. ........................................ 52

CONCLUSION ............................................................................................ 53

FRAP 32(g) CERTIFICATE OF COMPLIANCE .................................... 55

CERTIFICATE OF SERVICE.................................................................... 56

# TABLE OF CITATIONS

## Cases

*Abbott Lab'ys v. H&H Wholesale Servs., Inc.*,
  No. 23-446-CV, 2024 WL 4297472 (2d Cir. Sept. 26, 2024) ................................ 16
*Adkins v. Christie*,
  227 F. App'x 804 (11th Cir. 2007) .................................................................... 43, 48
*Arlook v. S. Lichtenberg & Co.*,
  952 F.2d 367 (11th Cir. 1992) ................................................................................ 13
*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ................................................................................................ 29
*Byrne v. Nezhat*,
  261 F.3d 1075 (11th Cir. 2001) .................................................................. 29, 31, 32
*Carlucci v. Piper Aircraft Corp.*,
  775 F.2d 1440 (11th Cir. 1985) .............................................................................. 41
*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ........................................................................................... 13, 16*
*Comm. on Pro. Ethics & Grievances of Virgin Islands Bar Ass'n v. Johnson*,
  447 F.2d 169 (3d Cir. 1971) ................................................................................... 41
*Crowe v. Smith*,
  151 F.3d 217 (5th Cir. 1998) ............................................................................ 20, 24
*DeLauro v. Porto (In re Porto)*,
  645 F.3d 1294 (11th Cir. 2011) .............................................................................. 14
*Donaldson v. Clark*,
  819 F.2d 1551 (11th Cir. 1987) .............................................................................. 21
*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017) ..................................................................... 14, 16, 20, 25*
*Holston v. Mora*,
  No. 22-12808, 2024 WL 3100779 (11th Cir. June 17, 2024) ................................ 26
*Huggins v. Lueder, Larkin & Hunter, LLC*,
  39 F.4th 1342 (11th Cir. 2022) ......................................................................... 32, 33
*Hyde v. Irish*,
  962 F.3d 1306 (11th Cir. 2020) .......................................................................... 1, 5
*In re BellSouth Corp.*,
  334 F.3d 941 (11th Cir. 2003) ................................................................................ 22
*In re Gillespie*,
  No. 23-1819, 2023 WL 7548181 (4th Cir. Nov. 14, 2023) .................................... 43
*In re Paradyne Corp.*,
  803 F.2d 604 (11th Cir. 1986) ................................................................................ 46
*In re Ruffalo*,

390 U.S. 544 (1968) ................................................................ 20, 40, 41*

*J.C. Penney Corp., Inc. v. Oxford Mall, LLC,*
  100 F.4th 1340 (11th Cir. 2024).............................................. 25

*Johnson v. United States,*
  780 F.2d 902 (11th Cir. 1986) ................................................ 49

*Kaplan v. DaimlerChrysler, A.G.,*
  331 F.3d 1251 (11th Cir. 2003) .............................................. 43

*Kleiner v. First Nat. Bank of Atlanta*
  751 F.2d 1193 (11th Cir. 1985) .............................................. 22

*Kornhauser v. Comm'r of Soc. Sec.,*
  685 F.3d 1254 (11th Cir. 2012) ......................................... 16, 43

*LaChance v. Erickson,*
  522 U.S. 262 (1998) ............................................................... 23

*Lennard v. Yeung,*
  No. CV1009322MMMAGRX, 2011 WL 13217925 (C.D. Cal. Aug. 16, 2011) ... 44

*Mackler Prods., Inc. v. Cohen,*
  146 F.3d 126 (2d Cir. 1998) ............................................. 16, 22

*Matter of Calvo,*
  88 F.3d 962 (11th Cir. 1996) ................................................. 23

*MeridianLink, Inc. v. DH Holdings, LLC,*
  No. CV102708ABCJEMX, 2010 WL 11512182 (C.D. Cal. June 16, 2010) ......... 44

*Meunier Carlin & Curfman, LLC v. Scidera, Inc.,*
  813 F. App'x 368 (11th Cir. 2020) ......................................... 28

*Morrissette-Brown v. Mobile Infirmary Med. Ctr.,*
  506 F.3d 1317 (11th Cir. 2007)............................................... 36

*Mut. Serv. Ins. Co. v. Frit Indus., Inc.,*
  358 F.3d 1312 (11th Cir. 2004) .............................................. 13

*Nix v. Whiteside,*
  475 U.S. 157 (1986) ............................................................... 23

*Peer v. Liberty Life Assurance Co. of Bos.,*
  992 F.3d 1258 (11th Cir. 2021)............................................... 26

*People v. Sullivan,*
  142 A.D.2d 695, 531 N.Y.S.2d 295 (1988) ........................... 44

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.,*
  No. 09-CV-00970-PAB-KMT, 2014 WL 4057118 (D. Colo. Aug. 14, 2014)....... 44

*Purchasing Power, LLC v. Bluestem Brands, Inc.,*
  851 F.3d 1218 (11th Cir. 2017)............................................ 13, 16, 28*

*Serra Chevrolet, Inc. v. Gen. Motors Corp.,*
  446 F.3d 1137 (11th Cir. 2006)........................................... 13, 14

*Serra v. U.S. Atty. Gen.,*

ix

60 F.4th 653 (11th Cir. 2023) .................................................................... 28

*Stansell v. Revolutionary Armed Forces of Colombia*,
120 F.4th 754 (11th Cir. 2024) .............................................................. 13

*Tang v. U.S. Atty. Gen.*,
578 F.3d 1270 (11th Cir. 2009) ............................................................. 28

*United States v. Battle*,
No. 24-12046, 2025 WL 1233192 (11th Cir. Apr. 29, 2025) ................ 26

*United States v. Munoz*,
112 F.4th 923 (11th Cir. 2024) ............................................................. 36

*United States v. Scrimgeour*,
636 F.2d 1019 (5th Cir. 1981) ............................................................... 32

*United States v. Shaygan*,
652 F.3d 1297 (11th Cir. 2011) ..................................... 15, 42, 47-49, 51*

*Wiggerfall v. Jones*,
918 F.2d 1544 (11th Cir. 1990) ............................................................. 27

## Statutes

18 U.S.C. § 1623 .................................................................... 23, 24, 32
28 U.S.C. § 1291 ................................................................................ 1
Ala. Code § 26-26-4 .......................................................................... 3

## Rules

Fed. R. Civ. P. 11(c)(2) ..................................................................... 32
Fed. R. Evid. 615 ............................................................................ 8, 49

## STATEMENT REGARDING ORAL ARGUMENT

This appeal arises from an unusual if not unprecedented process of inquiry and sanction of a lawyer by a District Court pursuant to that court's inherent powers. Although the State of Alabama is the putative defendant below, the Attorney General's office has consistently declined to participate in this matter. It is currently unclear, therefore, whether a responsive brief will be filed in this appeal.

Appellant respectfully requests the opportunity to orally argue this appeal.

## <u>JURISDICTIONAL STATEMENT</u>

The District Court's jurisdiction over the underlying disciplinary proceeding arose from its inherent power to impose sanctions. *See Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as the decision from which Appellant appeals is a final judgment as to him and he has no other involvement in the case below, either as counsel or a party, as discussed further in Appellant's jurisdictional statement previously filed with this Court.

The order from which Appellant appeals was entered on February 25, 2025. Dkt. 711. Appellant filed his Notice of Appeal on March 25, 2025 and paid the docket fee on March 28, 2025. Dkt. 726, 752.

On May 1, 2025, the parties in the underlying case, *Boe v. Marshall*, stipulated to the voluntary dismissal of the case. Dkt. 737. On May 29, 2025, Charles filed a protective notice of appeal. Dkt. 750; *see Boe v. Marshall (In re: Carl Charles)*, 25-11847-G.

1

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.      Did the District Court abuse its discretion by applying the incorrect standard of proof?

2.      Did the District Court abuse its discretion by determining that Appellant intentionally lied to the Panel based solely on a finding that he was not a credible witness in subsequent testimony?

3.      Did the District Court abuse its discretion by imposing sanctions under its inherent powers where the record does not support a finding of subjective bad faith?

4.      Did the District Court violate Appellant's right to due process by imposing sanctions based on a disciplinary proceeding that violated Appellant's and other respondent attorneys' due process rights?

## STATEMENT OF THE CASE

This appeal arises out of the District Court's imposition of sanctions under its inherent authority against Appellant, Carl Charles ("Charles"), for testimony given before a three-judge panel's inquiry into potential judge-shopping.

### I.    *WALKER* AND *LADINSKY* ARE FILED.

The underlying facts arose out of an inquiry concerning multiple lawsuits challenging Alabama's Vulnerable Child Compassion and Protection Act ("S.B. 184"), which limits parents' ability to obtain and provide medical care for transgender minors. *See* Ala. Code § 26-26-4. Shortly after S.B. 184 was signed into law, two teams of lawyers—the "*Walker* Team" and the "*Ladinsky* Team"—filed separate cases challenging it: *Walker v. Marshall*, No. 5:22-cv-480-LCB (N.D. Ala.) ("*Walker*") and *Ladinsky v. Ivey*, No. 5:22-cv-447-LCB (N.D. Ala.) ("*Ladinsky*").

Charles was a junior attorney with the *Walker Team* and had no involvement in *Ladinsky* or the subsequently filed case, *Boe v. Marshall*, No. 2:22-cv-184-LCB (M.D. Ala).

The *Ladinsky* Team filed their case on April 8, 2022. *Ladinsky* Dkt. 1.[1] *Ladinsky* was assigned to Judge Anna M. Manasco ("Judge Manasco"), who recused, after

_____

[1] Citations to the docket in the underlying case are styled as "Dkt. __". Citations to the docket in *Ladinsky* and *Walker* are styled as "*Ladinsky* Dkt. __" and "*Walker* Dkt. __," respectively. Citations to the docket in the three-judge panel's inquiry are styled as "*Vague* Dkt. __."

which the case was reassigned to Magistrate Judge Staci G. Cornelius ("Judge Cornelius"). *Ladinsky*, Dkt. 2, 3. The case was subsequently reassigned to Judge Annemarie Carney Axon ("Judge Axon") due to a lack of consent to magistrate jurisdiction. *Ladinsky*, Dkt. 11.

On April 11, 2022, the *Walker* Team filed *Walker*. *Walker*, Dkt. 1. The civil cover sheet attached to the Complaint indicated that *Walker* was related to *Corbitt v. Taylor*, No. 2:18-cv-0091-MHT (M.D. Ala.) ("*Corbitt*"). *Walker* Dkt. 1-1. *Corbitt* concerned a challenge to Alabama's policy of requiring proof of gender reassignment surgery to change gender markers on driver's license, and was presided over by Judge Myron H. Thompson ("Judge Thompson"). Dkt. 711 at 16.

## II.    CHARLES CALLS JUDGE THOMPSON'S CHAMBERS.

On April 12, 2022, the Middle District of Alabama's clerk's office notified the *Walker* Team that the case would be expedited because the complaint requested a temporary restraining order. Dkt. 492 at 22, 61. At the time, the *Walker* Team believed that the related case designation would cause the clerk's office to send *Walker* to Judge Thompson to determine whether it was related to *Corbitt*. *Id.* at 16-17, 58-59. Accordingly, James Esseks, a senior attorney on the *Walker* Team, suggested that a member of the team should call Judge Thompson's chambers to notify him that a motion for temporary restraining order and/or injunction would be filed shortly. *Id.* at 22, 61-62.

Charles volunteered to make the call. *Id.* at 62. Charles spoke with Judge Thompson's law clerk, Ben Gunning ("Gunning"), and told him that the *Walker* Team had filed a complaint that was marked as related to *Corbitt* and would be filing a motion for temporary restraining order and/or injunction that afternoon. *Id.* at 62-63. Gunning told Charles he would pass along the information and took down Charles' name and phone number. *Id.* Charles subsequently reported the contents of the call to the *Walker* Team. *Id.* at 62. Gunning sent Judge Thompson an email summarizing the call, including Charles' name and phone number. Dkt. 437-1.

### III.    *WALKER* AND *LADINSKY* ARE REASSIGNED AND DISMISSED.

At the time Charles made the call, the *Walker* Team's understanding was that *Walker* had already been sent to Judge Thompson by the clerk's office to decide whether the two cases were related, and they did not believe that Charles' call would be the first that Judge Thompson heard of *Walker*. Dkt. 492 at 16-17, 58-59, 132. While the docket did not reflect that *Walker* had been assigned to Judge Thompson (or any judge) or assigned a case number, this was consistent with the *Walker* Team's understanding that the case would be assigned to a judge only after Judge Thompson decided whether to accept *Walker* as a related case. *Id.* at 21-22, 61. However, Kathleen Hartnett, a senior attorney on the *Walker* Team, subsequently reported that the docket sheet indicated that *Walker* had been assigned to Chief Judge Emily C. Marks ("Chief Judge Marks"). *Id.* at 63. The *Walker* Team then learned from the

Middle District clerk's office that the related case designation did not automatically trigger the relatedness assessment and that a motion would be required. *Id.* at 22-24, 62, 65. On the same day, the *Walker* Team filed a motion to reassign the case to Judge Thompson and a motion for temporary restraining order or preliminary injunction. *Walker* Dkt. 8, 9.

On Friday, April 13, 2022, Chief Judge Marks issued an order to show cause "why [*Walker*] should not be transferred to the Northern District of Alabama, where the first-filed action [*Ladinsky*] is pending." *Walker* Dkt. 3. The *Walker* Team did not oppose the transfer, and *Walker* was transferred on April 15, 2022. *Walker*, Dkt. 16, 18, 21. However, rather than being transferred to Judge Axon, the judge presiding over *Ladinsky*, the first-filed case, *Walker* was assigned to Judge Liles C. Burke ("Judge Burke"), confusing the *Walker* Team. Dkt. 492 at 20-21, 71-72. That afternoon, Judge Burke set an in-person status conference for 10:00 a.m. on Monday, following the weekend of both Easter and Passover. *Walker* Dkt. 22. Shortly after, Judge Axon transferred *Ladinsky* to Judge Burke. *Ladinsky* Dkt. 14. *Walker* was assigned directly to Judge Burke, rather than being sent back to the clerk's office for reassignment, as with the transfer of *Ladinsky* from Judge Manasco to Judge Cornelius and from Judge Cornelius to Judge Axon. *Ladinsky* Dkt. 2-3; Dkt. 492 at 40-41, 78-79.

Neither the *Walker* Team nor the *Ladinsky* Team understood the process by which the transfer had been made. Dkt. 521 at 31, 642 at 82; *Vague* Dkt. 80-2 at 7.

6

Some members of the *Walker* Team were also concerned about their ability to travel to the in-person hearing. Dkt. 521 at 30-31. Accordingly, on the same day, both teams voluntarily dismissed their cases. *Walker* Dkt. 23; *Ladinsky* Dkt. 15. The *Ladinsky* Team would subsequently file a new case challenging S.B. 184, *Boe v. Marshall*, Case No.: 2:22-cv-184-LCB ("*Boe*") (N.D. Ala.). Dkt. 1. The *Walker* Team, including Charles, did not file or join in any subsequent challenge to S.B. 184.

## IV.    THE THREE-JUDGE PANEL'S INQUIRY.

On April 18, 2022, Judge Burke entered an order observing that "Plaintiffs' course of conduct could give the appearance of judge shopping" and directing that the order be served on the Chief Judges of each District in Alabama. *Walker* Dkt. 24 at 3-4.

On May 10, 2022, a specially convened three-judge panel (the "Panel") summoned thirty-nine attorneys to appear in Montgomery, Alabama for an inquiry into "the issues raised by counsel's actions," *In re Vague*, Case No.: 2:22-mc-3977-WKW ("*Vague*"). *Vague* Dkt. 1.

The Panel conducted five days of closed hearings in which the respondent attorneys were questioned under oath, culminating on November 4, 2022. These hearings were unusual and unprecedented. Seventeen of the respondent attorneys were segregated from the other respondents and questioned under oath by Special Master Bernard Harwood while being denied access to their counsel, despite counsels'

requests to be present. May 20, 2022 Hr'g Tr. at 12, 74-76, 78-84. The Panel excluded all respondents from the courtroom while they were not testifying, invoking a "modified" version of Federal Rule of Evidence 615. *Id.* at 74. Although the Panel assured the respondents that they would have the opportunity to review the transcripts of these *in camera* questioning, *see id.* at 83, these transcripts were not produced until *after* the Panel concluded its inquiry and issued its final report.

## V.    CHARLES' TESTIMONY BEFORE THE PANEL.

The sanctions imposed on Charles are based on his testimony before Judge W. Keith Watkins ("Judge Watkins"), Judge R. David Proctor ("Judge Proctor"), and Judge Jeffrey U. Beaverstock ("Judge Beaverstock") on May 20, 2022. Prior to this hearing, Charles did not anticipate that he would be called to testify, based on the lack of notice in the Panel's initial order (including the lack of any reference to the call to Judge Thompson's chambers) and the advice of his counsel that he did not anticipate that junior attorneys such as Charles would be individually questioned. Dkt. 492 at 81-82. Thus, Charles did not perform a detailed review of his notes, emails, and phone calls from the relevant period, and he was not able to meet with his counsel to prepare individually at the hearing after learning he would be questioned, as there were a total of twenty-one attorneys on the *Walker* Team present at the hearing. *Id.* at 82-83. Charles' testimony before the Panel was only the third time he had ever spoken on the record in any federal court. *Id.* at 53. He wore a mask during his testimony due to

8

COVID-19, as he and his spouse are caregivers for his severely immunocompromised parents-in-law. *Id.* at 83.

Charles was initially asked if he had "any contact with the clerk's office about who the case was being assigned to" and "whether he called any judge's chambers about the assignment of the case," which he truthfully answered no. May 20, 2022 Hr'g Tr. at 178-179.[2] Charles was then asked if he called "any judge's chambers." *Id.* at 179. Charles did not recall his call to Judge Thompson's chambers, and so denied doing so, even after the Panel returned to the question several times. *Id.* at 179, 184-185, 187, 190-191; Dkt. 492 at 84-89. Judge Proctor then read Charles' phone number and asked if it was his, which jogged Charles' memory. May 20, 2022 Hr'g Tr. at 191; Dkt. 492 at 89. Almost immediately thereafter, while he was still on the stand, Charles corrected his erroneous testimony and apologized to the Panel. May 20, 2022 Hr'g Tr. at 192-193.

## VI.   THE PANEL ISSUES ITS FINAL REPORT.

At the conclusion of the last hearing before the Panel, the Panel directed the respondent attorneys to file written submissions, contingent upon the Panel providing transcripts of the attorneys' testimony. Dkt. 493 at 2. The transcripts were not provided by the Panel, so no briefs were submitted. *Id.* Instead, eleven months later, on October

---

[2] References to hearing transcripts cite the page numbers assigned by the court reporter.

3, 2023, the Panel issued a "Final Report of Inquiry" (the "Report") finding misconduct by eleven respondent attorneys and served a copy on the District Court to "proceed as appropriate." *Vague* Dkt. 70. With respect to Charles' testimony, the Panel concluded that Charles deliberately mislead the Panel regarding the phone call to Judge Thompson's chambers. *Vague* Dkt. 70 at 20.

Charles and other respondent attorneys appealed the Report to the Eleventh Circuit. *Vague* Dkt. 86, 87, 92. In response to discussions with the District Court, following a hearing, the Panel entered an order *ex mero motu* on November 3, 2023 reopening the case and stating that the Report is not a "final decision" and "require[d] further proceedings" before the District Court. *Vague* Dkt. 99. The Panel's order transferred *Vague* to the District Court for "further proceedings" including, but not limited to, "accepting, rejecting, or modifying in whole or in part the Panel's findings and making additional findings of fact as necessary." *Id.* Accordingly, the appeals were dismissed. *Vague* Dkt. 101-103.

## VII.    PROCEEDINGS BEFORE THE DISTRICT COURT.

On February 21, 2024, the District Court entered an Order to Show Cause requiring the eleven remaining respondent attorneys to show cause why they should not be sanctioned based on the Panel's findings. Dkt. 406. All respondent attorneys objected on due process grounds. Dkt. 423, 425, 432, 441, 444, 447. Following a hearing on March 19, 2024, the District Court entered an order on April 5, 2024

10

indicating that it would issue individualized show-cause orders for each respondent, Dkt. 466, which it did on May 1, 2024. Dkt. 481.

Additionally, on May 17, 2024, the District Court ordered the *Walker* Team to show cause why they should not be sanctioned for violating a July 8, 2022 order of the Panel by failing to produce a "Q&A Document" to the Panel. Dkt. 527. The Panel's order required the respondents to submit declarations regarding the Q&A Document, which was created to assist their counsel. *Vague* Dkt. 22 at 3. One respondent, Milo Inglehart ("Inglehart") was ordered to attach a copy of the Q&A Document to his declaration. *Id.* at 2 n.1. The *Walker* Team moved for an order preventing the disclosure of privileged information, including the Q&A Document. *Vague* Dkt. 34 at 1. On July 25, 2022, the Panel denied the *Walker* Team's motion, but clarified that it "is not seeking the disclosure of privileged *communications*." *Vague* Dkt. 41 at 4 (emphasis original). Accordingly, Inglehart expressly withheld the Q&A Document as a privileged communication with counsel. *Vague* Dkt. 80-15 at 10. The Panel did not subsequently question or disagree with Inglehart's assertion of privilege. Instead, on September 23, 2022, the Panel terminated Inglehart as a respondent and released him "from any obligation" under the July 8, 2022 Order. *Vague* Dkt. 59. Judge Proctor subsequently stated that the Panel had not made the *Walker* Team produce the Q&A Document. Nov. 3 2022 Hr'g Tr. at 5.

11

Despite this, the District Court required the *Walker* Team to produce the Q&A Document or face sanctions, applying the crime-fraud exception on the grounds that Charles had allegedly lied to the panel "and perhaps committed perjury, which is a federal crime," and because the District Court suspected the *Walker* Team had "committed fraud on the court by coordinating testimony to mislead the Panel." Dkt. 573 at 25. After initially resisting the District Court's attempts, the *Walker* Team complied and produced the Q&A Document. Dkt. 574. The Q&A Document did not contain whatever incriminating details the District Court believed it might find—to the contrary, the District Court expressly stated that it had not considered the Q&A Document for any purpose in entering its sanctions. Dkt. 711 at 103.

The District Court held three hearings on the show cause orders between June 24, 2024 and June 28, 2024. On February 25, 2025, the District Court entered an order imposing sanctions on Charles and two other respondent attorneys. Dkt. 711 at 90. The District Court "found by clear and convincing evidence that [] Charles intentionally and in bad faith misrepresented or otherwise failed to disclose key facts to the Panel by testifying falsely about his call to Judge Thompson's chambers" and that Charles' "bad-faith misrepresentations were flagrant, intentional, and calculated to mislead." Dkt. 711 at 222. The District Court publicly reprimanded Charles, fined him $5,000, referred Charles to the U.S. Attorney for the Middle District of Alabama "to investigate whether [] Charles has engaged in any criminal conduct," referred Charles

12

to the relevant bar associations "for further investigation and, if necessary, disciplinary action," and required Charles to provide the order to his clients, opposing counsel, and the judge in all cases in which he was counsel of record. *Id.* at 229-230.

## VIII.    RULING APPEALED FROM AND STANDARD OF REVIEW.

Charles appeals from the District Court's sanctions order, Dkt. 711. A district court's imposition of sanctions is reviewed for abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991); *Stansell v. Revolutionary Armed Forces of Colombia*, 120 F.4th 754, 761 (11th Cir. 2024). This discretion "is not unbridled," *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1151 (11th Cir. 2006), and "does not mean, … that [this Court] will rubber-stamp the [sanctions] decisions of the district court." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1326 (11th Cir. 2004).

A district court abuses its discretion when it applies an incorrect legal standard, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous. *Id*. Further, "[a] district court abuses its discretion when it misconstrues its proper role, ignores or misunderstands the relevant evidence, and bases its decision upon considerations having little factual support." *Arlook v. S. Lichtenberg & Co.,* 952 F.2d 367, 374 (11th Cir. 1992).

A district court may not impose sanctions under its inherent power without a showing of bad faith. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d

1218, 1223 (11th Cir. 2017). A finding of bad faith is reviewed for clear error. *DeLauro v. Porto (In re Porto)*, 645 F.3d 1294, 1304 (11th Cir. 2011).

While the standard of proof for most sanctions proceedings under a court's inherent authority is "clear and convincing" evidence, when the sanctions involve behavior that could lead to disbarment or criminal penalties and are punitive in nature, courts should apply the criminal standard of proof "beyond a reasonable doubt." *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).

This Court reviews *de novo* the argument that the sanctions imposed by the district court violated due process. *Serra Chevrolet*, 446 F.3d at 1147 (11th Cir. 2006).

## SUMMARY OF THE ARGUMENT

Charles has never denied that he testified inaccurately (but not intentionally so) when he initially told the Panel that he had not called Judge Thompson's chambers. However, Charles corrected his previous testimony only minutes later while still under questioning from the Panel. May 20, 2022 Hr'g Tr. at 192-193. Rather than write off that brief lapse to a nervous lawyer under intense pressure making a blunder, the District Court declared that Charles "intentionally misrepresented or otherwise failed to disclose key facts to the Panel by testifying falsely about his call to Judge Thompson's chambers." Dkt. 711 at 112. The District Court's conclusion defies logic, is unsupported by the record, is clearly erroneous, and is an abuse of the court's discretion.

14

The District Court also abused its discretion by applying the wrong legal standard of proof to its allegations against Charles and basing its conclusion on clearly erroneous factual findings. Because the charges against Charles could subject him to disbarment or criminal censure, the standard should have been proof beyond a reasonable doubt.

Additionally, the process and procedures employed in this matter were so extraordinary as to approach unprecedented: the Panel's inquiry quickly spread far beyond the subjects in the notice provided, the respondents were denied the opportunity to hear the evidence being gathered against them, some respondents were forced to testify without counsel, transcripts of the proceedings were restricted and withheld, and the respondents were denied a promised opportunity to file post-hearing briefs. These due process violations make any findings by the District Court unreliable and unworthy of deference. *See United States v. Shaygan*, 652 F.3d 1297, 1319 (11th Cir. 2011) ("The record before us is unreliable because it was developed, after all, without affording [the sanctioned lawyers] due process.").

## ARGUMENT

Although these highly unusual proceedings began as an inquiry into alleged "judge-shopping" by two separate (and independent) teams of lawyers, neither Charles nor any of the other twenty-three members of the *Walker* Team who were questioned by the Panel and the District Court were ultimately found to have engaged in any

improper conduct regarding any allegation of judge shopping.

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 n.5 (2017); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing" sanctions. *Chambers,* 501 U.S. at 50; *see also Kornhauser v. Comm'r of Soc. Sec.*, 685 F.3d 1254, 1257 (11th Cir. 2012).

Further, an appellate court's review of inherent-power sanctions is "more exacting than under the ordinary abuse-of-discretion standard" because the district court "is accuser, fact finder and sentencing judge all in one." *Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, No. 23-446-CV, 2024 WL 4297472, at *2 (2d Cir. Sept. 26, 2024). As the Second Circuit has held:

> A troublesome aspect of a trial court's power to impose sanctions, either as a result of a finding of contempt, pursuant to the court's inherent power, or under a variety of rules such as Fed.R.Civ.P. 11 and 37, is that the trial court may act as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed. The absence of limitations and procedures can lead to unfairness or abuse.

*Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998).

## INTRODUCTION

This case involves sanctions imposed on a lawyer for a momentary lapse of memory about a minor detail that he corrected minutes later and for which he has repeatedly apologized. Turning that brief mistake into a potentially career-ending event is an abuse of the District Court's discretion and warrants reversal.

The relevant testimony of Charles took place during the first day of the proceedings before the Panel. Charles was first asked whether he had "any contact with the clerk's office about who the case was being assigned to? Did you receive a call or did you make a call?" Charles answered truthfully that he neither made nor received any call from the clerk's office. May 20, 2022 Hr'g Tr. at 178. Shortly after that, the Panel asked Charles whether he had called "anyone's chambers about the assignment of the case?" and Charles again answered that he had not, and repeated that answer when he was asked simply whether he had called "any judge's chambers" without any reference to "the assignment of the case." *Id.* at 179. The Panel then moved on other lines of questioning before returning to the subject:

> JUDGE WATKINS: . . . So I've asked you the question. I'm going to ask you point blank: Are you telling us that you did not speak to any law clerk of any judge in the Middle District of Alabama concerning the Walker case and the assignment of the case to that judge?
>
> CHARLES: That is correct, Your Honor. I did not.

*Id.* at 184-85. The Panel again moved on to other subjects before returning to the call:

17

> JUDGE PROCTOR: All right. Speaking of good faith, I want you to think very carefully about this next question and answer you're about to give. Are you telling us that you did not call a judge's chambers and speak to a law clerk about the potential for a TRO in the Walker case?

*Id.* at 187. After Charles requested clarification, the Panel restated the question:

> JUDGE PROCTOR: About the potential filing of a TRO or intent to file a TRO or the handling of a TRO. You're saying that you have never had a communication with a judge's law clerk allowing for—discussing the filing of Walker and the potential for a TRO being filed in Walker?
>
> CHARLES: No, Your Honor.

*Id.* After the Panel again moved on to other topics, the judges returned once more to

the call:

> JUDGE PROCTOR: And I don't want to turn this into a deposition, but I want to return to one thing. If you did make a call to a judge's chambers and talk to a law clerk about the Walker case, you would remember that?
>
> CHARLES: I am incredibly certain I would, Your Honor.
>
> JUDGE PROCTOR: All right. What's your phone number? Is it (770) 309-1733?
>
> CHARLES: Yes, Your Honor.

*Id.* at 190–191. The Panel briefly moved on to another topic before Charles interrupted

the Panel's questioning and asked:

> CHARLES: I'm sorry, Your Honor. I am—may I return to some previous questions that you asked me and amend my testimony?
>
> JUDGE PROCTOR: You may.
>
> CHARLES: Okay. I did call Judge Thompson's clerk. I am now remembering. I want to apologize for any impression I gave that

18

I was trying to obfuscate that fact. That was not my intention. And in candor, I am very nervous, and I am trying to be as forthright with Your Honors as possible. So I want to—

JUDGE PROCTOR: Now you are. Let's be fair. Now you are.

CHARLES: Yes, Your Honor.

JUDGE PROCTOR: You're coming clean.

CHARLES: Well, if I may, Your Honor, those moments of pause were really me trying to contemplate and remember. And not by way of excuse, but by way of explanations, Your Honor, things were moving extremely quickly over those three days, and it was a very high stress situation. Again, not an excuse, but there were many things that happened which I have in preparation for this hearing endeavored to recollect and write down. And I do sincerely apologize.

JUDGE PROCTOR: It's better you did it now than us having to do it for you later.

CHARLES: Yes, Your Honor. Thank you.

JUDGE PROCTOR: But let me ask you this: Why were you hesitant to tell us that?

CHARLES: Oh, Your Honor, I was not hesitant at all. I genuinely couldn't recall the conversation. And then—

JUDGE PROCTOR: What sparked your recollection? The phone number?

CHARLES: My phone number. Yes, Your Honor. And so I thought— I was replaying—

JUDGE PROCTOR: It seems to me—I'm going to be unfair with you. I'm just telling you what I'm thinking here. This is not—this is Proctor being cards up. The phone number doesn't spark a recollection. The phone number sparks a realization that I have some information that you didn't think I had.

CHARLES: Your Honor, I did find it unusual that you had that. But then I tried to think about what we had to submit to this Court and had I listed that on other filings. And while you were asking—while Your Honors were asking me other questions, I was trying to think in my mind about the events of those two

19

days.

*Id.* at 192–193.

## I.   THE DISTRICT COURT APPLIED THE WRONG LEGAL STANDARD.

The District Court applied the "clear and convincing" standard of proof. Dkt. 711 at 109. However, because the charges against Charles involved alleged behavior that could result in disbarment or criminal censure and because the sanctions imposed are punitive in nature, including a public reprimand for criminal misconduct and a referral to criminal authorities, the District Court should have employed the "beyond a reasonable doubt" standard applicable in criminal proceedings. *See Goodyear*, 581 at 108; *In re Ruffalo*, 390 U.S. 544, 551 (1968) (Disbarment involves "adversary proceedings of a quasi-criminal nature.").

Courts have long struggled to articulate a bright line for the application of criminal protections to attorney sanctions and disciplinary protections. *See Crowe v. Smith*, 151 F.3d 217, 231 (5th Cir. 1998) ("[J]ust which 'basic procedural safeguards' will be generally implicated by imposition of the 'quasi-criminal' sanction of disbarment is a close and vexatious question."). Charles does not argue that all criminal protections are required in all sanctions proceedings, but rather, that this case fits squarely within the narrow slice of such proceedings that require a heightened burden of proof applicable to criminal cases.

The full protections afforded in criminal contempt proceedings are generally not

20

required when a district court imposes monetary sanctions under Rule 11. *See Donaldson v. Clark*, 819 F.2d 1551, 1559 (11th Cir. 1987) ("It is not necessary to follow the procedures required in criminal contempt proceedings **in every case** to insure that the imposition of a monetary sanction is justified . . . .") (emphasis added). This Court noted, however, that "[i]t may be that the monetary sanction being considered in a specific case is so severe in amount or so arguably unrelated to the misconduct that due process will require extensive due process safeguards as prerequisites to its imposition." *Id.* at n.10.[3] At least as regards monetary sanctions under the rules of civil procedure, therefore, criminal protections are generally not required, but there are certain cases and circumstances where those enhanced protections are necessary. "**[W]hen a court is asked to resolve an issue of credibility** or to determine whether a good faith argument can be made for the legal position taken, the risk of an erroneous imposition of sanctions under limited procedures and the probable value of additional hearing are likely to be greater. . . ." *Donaldson*, 819 F.2d at 1561 (emphasis added).

This Court's decision in *Donaldson* was grounded on the holding in *Kleiner v. First Nat. Bank of Atlanta*:

A trial judge possesses the inherent power to discipline counsel for

---

[3] *See also* 819 F.2d at 1562–63 (Johnson, C.J., concurring specially) ("[U]nder certain circumstances, courts may have to follow the procedures set forth in Fed.R.Crim.P. 42(b) when imposing sanctions under Rule 11.") (citations omitted).

misconduct, **short of behavior giving rise to disbarment or criminal censure**, without resort to the powers of civil or criminal contempt.

751 F.2d 1193, 1209-10 (11th Cir. 1985) (cleaned up) (emphasis added); *see also In re BellSouth Corp.*, 334 F.3d 941, 959 (11th Cir. 2003). *Donaldson* and *Kleiner* made it clear that criminal protections could still be required in sanctions proceedings if the lawyer's conduct involved behavior "giving rise to disbarment or criminal censure."

The alleged conduct for which Charles was sanctioned is behavior potentially "giving rise to disbarment or criminal censure" and falls squarely within this exception. Because of the serious nature and implications of the District Court's charges against Charles, he was entitled to the heightened criminal protection of proof beyond a reasonable doubt.

In *Mackler Productions, Inc. v. Cohen,* 146 F.3d 126 (2d Cir. 1998), the court held that the enhanced protections afforded in criminal cases applied to proceedings in which sanctions were imposed on a lawyer for his client's perjury. In *Mackler*, the district court imposed a $10,000.00 punitive sanction and $45,000.00 compensatory sanction on a lawyer after referring the lawyer's client to the U.S. Attorney for perjury. *Id.* at 128. The court observed that, "in certain sanctions proceedings, the person facing imposition of sanctions should have the benefit of the procedural protections available to a person charged with a crime . . . [including] the requirement of proof beyond a reasonable doubt." *Id.* (citations omitted).

22

Allegations that a lawyer intentionally lied to a federal court can obviously lead to disbarment. *See* American Bar Association, Standards for Imposing Lawyer Sanctions, Standard 2.2; *see also Nix v. Whiteside*, 475 U.S. 157, 173 (1986); *Matter of Calvo*, 88 F.3d 962, 967 (11th Cir. 1996). The District Court's sanctions include a requirement that the court's order and reprimand be served on the bar for every jurisdiction in which Charles is admitted. Dkt. 711 at 230. Any of those jurisdictions could decide that the District Court's findings justify Charles' disbarment.

Additionally, intentionally lying while under oath obviously exposes a witness to potential criminal censure. *See* 18 U.S.C. § 1623; *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). The District Court's criminal referral enhances the risk that Charles will face criminal censure.

Unlike *Kleiner*, *Donaldson*, or *BellSouth*, these proceedings against Charles have had criminal implications from the very moment that Charles first testified incorrectly to the Panel. The District Court's Supplemental Order to Show Cause quoted and relied on the Federal perjury statute (18 U.S.C. § 1623) and, under the heading **"Perjury in Judicial Proceedings**," ordered Charles to show cause "why he should not be sanctioned for willfully and contrary to his oath stating material matters which he did not believe to be true in violation of 18 U.S.C. § 1623 and the rules of

professional conduct[.]"[4] Dkt. 481 at 15.

In declaring Charles guilty of intentionally testifying falsely to the Panel, the District Court observed: "The difference between intentionally misleading a tribunal and willfully testifying to falsehoods is subtle but grave, and while the Court has made no findings of perjury, **the criminal penalties it carries illustrate the enormity of knowingly false testimony**." Dkt. 711 at 224 (emphasis added). The District Court explicitly indicated that its severe sanctions against Charles were to "deter him and others from intentionally misleading courts in the future." *Id.* at 223. Further, the order referred Charles to the U.S. Attorney for the Middle District of Alabama "to investigate whether [] Charles has engaged in any criminal conduct." *Id.* at 230.

Finally, the District Court's sanctions are punitive in nature. The $5,000.00 fine was paid to the District Court rather than to any party and was not tied to any compensatory claim. *Id.* at 230. The District Court also imposed a widespread publication requirement designed, in part, to further punish Charles financially "by increasing the costs of Charles' misconduct, without seriously impairing his ability to earn a living." *Id.* at 224. Combined with the District Court's referral of Charles for criminal prosecution, the District Court publicly censured Charles for allegedly

---

[4] The District Court abandoned § 1623 as a ground for sanctioning Charles. Dkt. 711 at 225 n.45. It did not address Charles' argument that the applicable standard was proof beyond a reasonable doubt. *See* Dkt. 517 at 8.

criminal conduct. A district court's public censure of a lawyer for committing a criminal act should only come after that lawyer has been afforded the procedural protections required for the imposition of criminal penalties.

In *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), the Supreme Court addressed a federal court's inherent authority to sanction litigants by ordering the payment of legal fees:

> This Court has made clear that such a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature. In other words, the fee award may go no further than to redress the wronged party "for losses sustained"; it may not impose an additional amount as punishment for the sanctioned party's misbehavior. **To level that kind of separate penalty, a court would need to provide procedural guarantees applicable in criminal cases, such as a "beyond a reasonable doubt" standard of proof.**

581 U.S. at 108 (emphasis added) (citations omitted); *see also J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340, 1347 (11th Cir. 2024).

Because of the nature of the charge against Charles, the District Court's initial invocation and reliance on the federal perjury statute, as well as the District Court's recognition that the charge against Charles implicated "criminal penalties," the District Court should have utilized the "beyond a reasonable doubt" standard of proof.

In the unique circumstances of this case, this Court should recognize that when a court seeks to sanction a lawyer for alleged conduct that has indisputable criminal implications and results in a referral for potential criminal prosecution, the court must

25

afford that lawyer the protection of a standard of proof of beyond a reasonable doubt. That is particularly true here, where the District Court's sanction order repeatedly accuses Charles of criminal conduct and invoked a criminal statute in the court's show cause order.[5]

A district court's application of the incorrect legal standard constitutes a reversible abuse of discretion. *See, e.g., Holston v. Mora*, No. 22-12808, 2024 WL 3100779, at *2 (11th Cir. June 17, 2024); *see also Peer v. Liberty Life Assurance Co. of Bos.*, 992 F.3d 1258, 1265 (11th Cir. 2021) ("When attorney sanctions are appropriate, as they may be in this case, it is important that a district court apply the right test and follow the proper procedures.").

## II.    THIS APPEAL IS NOT A MERE REVIEW OF CREDIBILITY.

Charles recognizes the traditional deference afforded by this Court to a trial court's credibility determinations.[6] This appeal, however, involves much more than a simple determination of credibility by the District Court.

First, the alleged misrepresentation that Charles is being sanctioned for was not made to the District Court, but to the Panel. *See* Dkt. 711 at 4. The District Court did

---

[5] It is significant that Charles was not sanctioned for his conduct or candor as a lawyer in litigation before the District Court, but rather as a witness under oath testifying about what he did as a lawyer prior to the case being assigned to the District Court.

[6] *See, e.g.*, *United States v. Battle*, No. 24-12046, 2025 WL 1233192, at *1 (11th Cir. Apr. 29, 2025).

not observe Charles' testimony or demeanor before the Panel and Charles was not sanctioned for any conduct before the District Court.

Second, the District Court made it clear that it was not relying on and was giving **zero deference** to the Panel's findings and conclusions. *See, e.g.,* Dkt. 711 at 102 ("[T]he Court reviewed the record *de novo*, 'mak[ing] a judgment independent of the [Panel's], without deference to that court's analysis and conclusions.'"); *id.* at 153 ("[T]he Court has neither relied on, incorporated, nor deferred to the Panel's findings or conclusions for any sanctions it has imposed. While the Court's findings partly rely on evidence the Panel gathered during its inquiry, those findings rest on the written and testimonial evidence itself—not the Panel's findings.").

That absence of deference would necessarily include any findings or conclusions (or accusations) that the Panel may have offered regarding Charles' testimony, credibility, or the potential reasons for his timely correction of his testimony. Instead, the District Court claims that it determined that Charles lied to the Panel solely on a review of the transcript of Charles' testimony and his subsequent demeanor before the District Court. Dkt. 711 at 113-115.

This Court need afford no deference to the District Court's characterization or conclusions regarding Charles' testimony before the Panel because this Court is in as good a position as the District Court was to read the transcript. *See Wiggerfall v. Jones*, 918 F.2d 1544, 1550 (11th Cir. 1990) ("The trial transcript is a part of the record on

appeal, and no further factual development can take place on this issue. Therefore, we are in as good a position as the district court to make this determination."). This is particularly true regarding the pivotal issue of whether Charles' timely correction of his previous testimony just minutes later was a gotcha moment by the Panel or merely the result of a jogged memory.

Charles recognizes that the District Court found that he was not a credible witness in his testimony before the District Court. Dkt. 711 at 113-115. The District Court's credibility analysis, however, is based on speculation and conjecture, is contrary to undisputed evidence, and improperly relies on unsupported accusations made by the Panel. In another context, this Court has held that it will reverse a credibility determination that is based solely on speculation or conjecture. *See, e.g.*, *Tang v. U.S. Atty. Gen.*, 578 F.3d 1270, 1278 (11th Cir. 2009); *Serra v. U.S. Atty. Gen.*, 60 F.4th 653, 660 (11th Cir. 2023).

Charles cannot be sanctioned under the District Court's inherent powers without a finding of subjective bad faith. *See Purchasing Power*, 851 F.3d at 1223. A party or lawyer's "false statements alone do not indicate bad faith. Nor do merely reckless misstatements, standing alone, satisfy the inherent powers standard; there must be more. Following these principles, [this Court] ha[s] overturned sanctions where the record does not yield the inference that the sanctioned party knew her claim was frivolous or that she sought to harass' the other party." *Meunier Carlin & Curfman,*

*LLC v. Scidera, Inc.*, 813 F. App'x 368, 375–76 (11th Cir. 2020) (cleaned up). As this

Court has held:

> [F]alse statements alone do not indicate bad faith. Without a "smoking gun" statement from the plaintiff, i.e., "I know my claim is frivolous and I am pursuing this claim to harass the defendants," a district court makes a determination of bad faith by drawing inferences from the conduct before it. Standing alone, a false or inconsistent statement in a deposition does not compel the conclusion of bad faith. **A false statement can be evidence of bad faith, if, for instance, there is other evidence in the record indicating that the statement was made for a harassing or frivolous purpose.**

*Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001) (emphasis added), *abrogated*

*on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

The District Court had before it insufficient evidence—under either the

reasonable doubt or the clear and convincing standard—to find that Charles acted in

bad faith to intentionally deceive and mislead the Panel. The District Court's finding

to the contrary is clearly erroneous and an abuse of discretion.

The District Court's finding that Charles intentionally lied to the Panel is based

solely on (1) the court's reading of the written transcript of Charles' testimony before

the Panel; and (2) the District Court's determination that Charles was not a credible

witness when he later testified that his incorrect testimony was the result of a memory

lapse. On the other hand, Charles' claim that his misstatements were not intentional

lies is supported by substantial and, in most cases, undisputed evidence. The record

evidence establishes that (1) Charles has no prior disciplinary or sanctions history and

29

has a good reputation for honesty and integrity; (2) Charles quickly corrected his testimony only moments later; (3) Charles had not anticipated that he would testify that day and had not reviewed documents that would have reminded him of the phone call; (4) the phone call was not extraordinary or so important that Charles could not have forgotten it; (5) Charles left a conspicuous document trail of his call, including providing his contact information to Judge Thompson's law clerk, making it unlikely he would try to lie about it; and (6) neither Charles nor anyone else (including the District Court) thought there was anything improper about the phone call, so there was no reason to try to cover it up.

While the District Court attempted to undermine some of that exculpatory evidence, the District Court made clear that it was relying solely on the written transcript and the court's observation of Charles' demeanor when he testified before the District Court. The District Court's finding that Charles intentionally lied to the Panel is clearly erroneous and is so contrary to the record evidence that this Court should not defer to the District's Court's credibility determination.

### III. THE DISTRICT COURT ABUSED ITS DISCRETION BY SANCTIONING CHARLES WITHOUT EVIDENCE OF SUBJECTIVE BAD FAITH.

The District Court failed to identify any evidence—and certainly not proof beyond a reasonable doubt—that Charles engaged in intentional deceit, rather than a momentary lapse in memory, other than the District Court's credibility determination.

Instead, the District Court asserted that Charles' "innocuous explanations of his testimony strain credulity beyond the point of belief." Dkt. 711 at 113. The District Court failed to identify any affirmative evidence that Charles acted in subjective bad faith by intentionally lying to the Panel. Charles supported his defense with substantial evidence, most of which was not disputed by the District Court.

### 1.    Charles Has No Prior Disciplinary or Sanctions History and Has a Good Reputation for Honesty and Integrity

This is Charles' first encounter with disciplinary proceedings or the imposition of sanctions. Dkt. 464 at 6-11, 492 at 53. The District Court admitted the declaration of one of Charles' supervising attorneys, who stated that Charles is honest and has a reputation for acting with integrity. Dkt. 464 at 6-11. Lying to federal judges would be out of character for Charles. *Id.*

### 2.    Charles Timely Corrected His Inaccurate Testimony

Charles swiftly and timely corrected his testimony to the Panel. Within a few minutes of telling the Panel that he had not called Judge Thompson's chambers, Charles asked for and was granted permission to "amend" his previous testimony. May 20, 2022 Hr'g Tr. at 192. Charles apologized for previously forgetting about the call and giving incorrect answers to the Panel's previous questions. *Id.* Charles then testified that he now remembered the call and agreed that the Panel's reading of his cell phone number had sparked his recollection. *Id.* The time between Charles' incorrect testimony and his correction of that testimony is a matter of mere minutes

and five pages in the transcript.[7] *Id.* at 187-192.

Were this a prosecution for perjury—as the District Court's show-cause order intimated—Charles could assert a defense based on recantation under 18 U.S.C. § 1623(d), which bars prosecution of witnesses who timely recant their testimony. *See United States v. Scrimgeour*, 636 F.2d 1019 (5th Cir. 1981).

Similarly, were these Rule 11 sanctions, Charles would have been afforded an opportunity to correct any false or incorrect statements within the rule's 21-day safe harbor without risk of being sanctioned. *See* Fed. R. Civ. P. 11(c)(2); *Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1346 (11th Cir. 2022).

The District Court completely discounts Charles' retraction and correction of his testimony because Charles did not correct his testimony until after the Panel revealed they had "proof of [the] call." Dkt. 711 at 118. This finding is made solely on a review of the transcript of Charles' testimony, however, and is due no deference by this Court. The District Court was not present when Charles testified before the Panel and did not observe Charles when he corrected his testimony. There is no evidence that Charles changed his testimony because he thought that the Panel had

---

[7] The Panel already knew that Charles had called Judge Thompson's chambers before Charles began testifying. The Panel had a copy of an email memorializing the call that Judge Thompson's law clerk sent to the judge. *See* Dkt. 437-1. The email reflected that Charles had given the law clerk both his name and phone number and Charles was aware that the law clerk had taken down that information. *Id.*

caught him in a lie, nor is this evidence that Charles intended to deceive the Panel. Instead, Charles testified that the Panel's reading of his cell phone number "sparked his recollection" of the call. May 20, 2022 Hr'g Tr. at 193. While the District Court imagines a more sinister interpretation, which the Panel itself candidly labeled as "unfair," *id.*, the District Court failed to point to any real evidence that Charles acted in subjective bad faith when he corrected his testimony.

Instead of evidence, the District Court's conclusion depends on speculation and hindsight to discredit the most logical explanation for what happened: that Charles forgot about the phone call until the Panel's questioning jogged his memory a few minutes later. The District Court speculated that the Panel's reading of Charles' cell phone number caused Charles to realize that "he's been caught," Dkt. 711 at 119-120, but there is no independent evidence that the reading of the phone number did anything other than refresh Charles' recollection.

Further, in order for the District Court's theory to be true, one must believe that Charles secretly remembered calling Judge Thompson's chambers but had forgotten that he gave the law clerk his name and cell phone number. If Charles knew that he had given Judge Thompson's law clerk his cell number, he would hardly have been surprised that Judge Thompson's fellow judges had that information. Further, the District Court also must speculate that merely reading his cell number was enough to let Charles know that he was caught in a lie. At no time prior to Charles' correction of

33

his testimony did the Panel ever reveal that they had the law clerk's email or any other "proof" of Charles' call to chambers.

The timing of Charles' correction of his testimony does not provide affirmative evidence that he acted in subjective bad faith and intentionally lied to the Panel. Certainly, a review of the transcript of Charles' testimony does not yield proof beyond a reasonable doubt (or even clear and convincing evidence) that Charles intentionally lied.

### 3. Charles Had Not Anticipated Testifying and Did Not Review Documents That Would Have Reminded Him of the Call.

There is no dispute that Charles was caught off guard when he was one of the first witnesses that the Panel placed under oath and starting questioning. Dkt. 492 at 81-82. Nor is there any dispute that Charles could have, but did not, prepare for the hearing by reviewing emails and other documents that would have refreshed his recollection of the pertinent events, including the call. *Id.* at 82-83.

This certainly supports Charles' explanation that his initial testimony was a temporary memory lapse rather than an intentional effort to deceive the federal judges.

### 4. The Phone Call Was Not Extraordinary or So Important That Charles Could Not Have Forgotten It.

The nature, purpose, and content of Charles' brief phone call to Judge Thompson's chambers are not at issue. All witnesses testified that Charles was tasked with calling chambers to make the court aware that *Walker* had been marked as related

to another case handled by Judge Thompson and that a motion for a temporary restraining order would be filed shortly.[8] That type of phone call concerning procedural matters is neither unusual nor remarkable.

Although the District Court declared Charles' call with Judge Thompson's chambers to be a "memorable call," the District Court offers no explanation or evidence that the routine and unremarkable five-minute call should have been so "memorable." Indeed, the evidence in the record suggests the contrary, rendering the District Court's finding clearly erroneous:

- It was not a high-level task. Charles volunteered to make it after a senior member of the *Walker* Team asked a team member to do so and Charles "did not have a current and time-sensitive task" and "wanted to be helpful to the team." Dkt. 492 at 23, 61-62.

- The Panel's initial order did not mention or identify the phone call as one of the Panel's concerns. *Vague* Dkt. 1;

- The Q&A document that the *Walker* Team used to prepare counsel for the May 2022 hearing does not mention the phone call, as reflected by the fact that the District Court did not consider the Q&A Document in entering sanctions against Charles. Dkt. 711 at 103; *see* Dkt. 527, 574;[9]

- No *Walker* Respondent testified that the phone call was significant or material. Kathleen Hartnett, a senior member of the *Walker* Team, testified that it was

---

[8] At the time, Charles and his fellow *Walker* lawyers incorrectly believed that marking the case as related would initially bring it before Judge Thompson. Dkt. 492 at 16-17, 58-59.

[9] While the District Court criticizes Charles and his counsel for initially opposing the production of the Q&A document, the court fails to acknowledge that the document supports Charles' contention that the phone call was so routine that it is not even mentioned among the many topics and anticipated questions in the document.

"just a kind of part of the normal business of the morning." May 20, 2022 Hr'g Tr. at 31; *see also* Dkt. 492 at 23;

- No sanctions of any kind were imposed as the result of the phone call. Dkt. 711 at 160 n.37.

It is hardly "inconceivable" that Charles would have forgotten about this matter of procedural minutiae that took place during a hectic day. The only thing that makes this brief telephone call "memorable" is the District Court's reliance on it to sanction Charles. Further, the only "evidence" cited by the District Court is its assertion that it did not find Charles credible when he testified that he had forgotten the call. Dkt. 711 at 118. Notably, however, the District Court did not make any such credibility findings about Charles' co-counsel who confirmed and corroborated Charles' testimony that the phone call was not a significant or memorable event.

A review of the record establishes that this finding by the District Court is clearly erroneous. "A factual finding is clearly erroneous when the record does not support it or when [this Court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Munoz*, 112 F.4th 923, 932 (11th Cir. 2024) (quoting *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007)).

### 5. Charles Left a Conspicuous Documentary Trail of the Call When It Was Made.

When Charles called Judge Thompson's chambers, he provided his name and phone number to the law clerk, who confirmed them with Charles during the call and

36

included them in his email to Judge Thompson. Dkt. 473-1, 492 at 92-93. Charles also contemporaneously documented the call in an email sent to dozens of his *Walker* co-counsel. Dkt. 492 at 62. This thorough documentation of the phone call makes it unlikely that Charles would try to lie about it. In addition, the documentation supports Charles' claim that the call was routine and not improper.

The District Court did not address these undisputed facts, but instead rejected any inference that Charles' behavior means that he would be unlikely to lie about the call. According to the District Court, Charles lied because he was afraid that the Panel thought that he had "done something wrong." *Boe* Dkt 711 at 119. Even if the District Court's observation was not speculation, it is not affirmative proof of Charles' subjective bad faith.

### 6.    The Call Was Not Improper and Charles Had No Motive to Cover It Up.

According to the District Court's theory, because the Panel repeatedly asked Charles questions about phone calls, first to the District Clerk's office and later to judges' chambers, about "the assignment of the *Walker* case," Charles became "alarmed that he thought the Panel thought he had done something wrong" and decided to lie about the phone call. Dkt. 711 at 119. The District Court's speculation assumes (without evidence) that Charles thought there was something wrong about the phone call that he needed to cover up. To the contrary, all evidence points to the fact that

Charles and all his fellow *Walker* lawyers viewed the call as routine and proper. The District Court ultimately agreed and declined to sanction Charles or any other lawyer for making the call. Dkt. 711 at 160 n.37.

This finding by this District Court is clearly erroneous and does not support a finding that Charles intentionally lied to the Panel or otherwise acted in subjective bad faith.

**B.    The District Court Subsequent Credibility Determination is Not Sufficient to Establish Charles' Subjective Bad Faith.**

Against the backdrop of the evidence offered by Charles, the District Court falls back on the appellate deference generally afforded to credibility determinations. Dkt. 711 at 115-120. In doing so, the District Court attempts to bootstrap the Panel's findings while simultaneously disclaiming any reliance on them. The District Court's finding is simply that it did not believe Charles when he denied that he had intentionally lied to the Panel. In doing so, the District Court must assume that Charles had in fact lied to the Panel so that his subsequent denial of having intentionally lied was deemed by the District Court to itself be a lie.

Despite expressly and repeatedly disclaiming any reliance on the Panel's findings and conclusions, the District Court essentially adopted the Panel's hypothesis that Charles only corrected his testimony when he realized he was caught—a hypothesis that the Panel itself characterized as being "**unfair**" to Charles. Dkt. 711 at

118; May 20, 2022 Hr'g Tr. at 193 (emphasis added). The District Court made no independent factual finding regarding whether Charles intentionally lied to the Panel or the reason for his correction of his testimony. Instead, the District Court assumed the Panel's "unfair" speculation was correct and that any denials by Charles were not credible and served as further proof that he had lied to the Panel.

Further, the District Court's observation that Charles "paused" before answering the District Court's questions about the critical issues of whether he intentionally lied to the Panel but did not "pause" when answering questions about other topics is hardly surprising. By the time that Charles testified to the District Court, he had already been accused by the Panel of having testified falsely. It is only reasonable that that he was more cautious and deliberate about answering the District Court's questions about that alleged misconduct than about other, more benign topics. To summarily conclude that these "pauses" are evidence of subjective bad faith strains the limits of a court's credibility determination and deference.

Essentially, the District Court's finding of subjective bad faith is nothing more than an observation that the District Court did not believe Charles' testimony that he had not intended to mislead or deceive the Panel and instead had momentarily forgotten about the phone call. The District Court relies exclusively on this determination to find that Charles must have lied to the Panel. The District Court's credibility determination, by itself, cannot provide proof beyond a reasonable doubt

that Charles acted with subjective bad faith by intentionally lying to the Panel. As a consequence, the District Court's finding of bad faith and the imposition of sanctions on Charles should be reversed.

## IV. THE RESULTS OF THESE PROCEEDINGS ARE UNRELIABLE BECAUSE OF THE DENIAL OF DUE PROCESS AFFORDED TO CHARLES AND THE OTHER RESPONDENTS.

The District Court's Supplemental Orders to Show Cause arrived near the end of this process instead of at its outset. The requirements of due process attached at the beginning of these proceedings before the Panel in May of 2022, not two years later when the District Court issued its show cause orders. The notice provided by the District Court in its show cause orders came too late in these proceedings to satisfy the requirements of due process.

### A. Charles' Due Process Rights Attached at the Commencement of the Panel Proceedings.

In addressing the Respondent attorneys' due process objections, the District Court held that Charles and the other attorneys were not entitled to due process during the proceedings because the Panel never issued a show cause order. Dkt. 158-159. This legal conclusion is contrary to established law.

The requirements of due process attached as soon as the Panel compelled thirty-nine respondent attorneys to appear and testify at the May 20, 2022, hearing. *See In re Ruffalo*, 390 U.S. 554 (1968). The Supreme Court has held:

> The charge must be known **before the proceedings commence**. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused.

*Id.* at 551 (emphasis added). In other words, the requirement of due process and adequate notice did not just begin when the federal courts formally considered sanctions, but instead attached at the commencement of the previous state court proceedings on which the federal courts relied and incorporated by reference.

This Court has held that "[t]he fair notice requirement of *Ruffalo* applies, of course, to **each of the district court's prior inquiries from which resulted the findings of bad faith conduct**." *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1452 (11th Cir. 1985) (emphasis added). It is not enough that the District Court belatedly attempted to cure the notice and other due process deficiencies by issuing the Supplemental Orders to Show Cause if those due process protections were not previously provided by the Panel before the inquiry and compelled testimony began. *See Comm. on Pro. Ethics & Grievances of Virgin Islands Bar Ass'n v. Johnson*, 447 F.2d 169, 173 (3d Cir. 1971) ("Due process contemplates notice which gives a party adequate opportunity to prepare his case. In these circumstances, respondent was entitled to know the exact nature of the charges against him **before the commencement of proceedings**.") (emphasis added).

The Panel's inquiry and the District Court's Supplemental Orders to Show Cause are parts of the same proceeding. Any notice contained in the District Court's

show cause orders does not cure any prior due process deficiencies with the notice provided by the Panel before the proceedings commenced. *See Shaygan*, 652 F.3d at 1318.

**B.    The Panel's Initial Order Did Not Provide Adequate Notice of the Specific Conduct being Investigated.**

The Panel initiated this disciplinary investigation with an Order for thirty-nine lawyers to appear in Montgomery "to allow the panel to inquire about the issues raised by counsel's actions." *Vague* Dkt. 1 at 5. The actions of counsel described in the Order were identified by reference to the District Court's April 18, 2022, Order in *Walker*, *Walker* Dkt. 24, and were said to be (1) the voluntary dismissals of *Walker* and *Ladinsky*, (2) the media statements promising refiling, and (3) the filing of *Eknes-Tucker* (later retitled *Boe*). *Vague* Dkt. 1 at 5. There is no mention in the District Court's April 18 Order of any concerns about the related case designation or the phone call. *Walker* Dkt. 24. Similarly, the Panel's May 10 Order mentions the filing and withdrawal of the motion to reassign in *Walker* but does not identify the related case designation or the phone call as conduct that would be the subject of inquiry or potential sanction. *Vague* Dkt. 1.

Neither the District Court's April 18 Order nor the Panel's May 10 Order identified the related case designation or the telephone call as actions about which the Panel had concerns or about which counsel could expect to be interrogated. Nothing

in either order gave Charles or the other Respondents adequate notice that this conduct could subject them to sanctions.

In *In re Gillespie*, No. 23-1819, 2023 WL 7548181 (4th Cir. Nov. 14, 2023), the court applied *Ruffalo* to a situation comparable to the present proceedings. In *Gillespie*, the district court adopted a disciplinary panel's recommendation that an attorney be suspended from practicing in the district for various violations, including the failure to adequately communicate with his clients and to keep them reasonably informed about their case. *Id.* at *1. The attorney appealed, arguing that he was not given notice prior to the commencement of the proceedings that the adequacy of his communication with his client could subject him to discipline. The Fourth Circuit agreed with the attorney's due process claim and vacated the suspension. *Id.* at *2; *see also Kornhauser*, 685 F.3d at 1258 (vacating sanctions for failing to "comply with the mandates of due process"); *Adkins v. Christie*, 227 F. App'x 804, 806 (11th Cir. 2007); *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1257 (11th Cir. 2003).

As in *Ruffalo*, Charles and the other Respondent attorneys had no advance notice that the related case designation or the telephone call to chambers were conduct about which the Panel had concerns or about which counsel could expect to be interrogated and potentially sanctioned or disciplined. Instead, Charles and the other Respondents were compelled to testify at length before learning that the Panel was considering these other actions as "misconduct" and the basis for further disciplinary

proceedings.[10]

The District Court suggests that Charles and the other Respondent attorneys had ample advance notice that the Panel was investigating "judge shopping" and that this was sufficient notice for purposes of due process. Dkt. 711 at 154-155. The problem with the District Court's notice analysis, however, is that there is no federal law prohibiting judge shopping. Instead, there is a patchwork of local and federal rules and court decisions that restrict or prohibit **particular conduct** that can be rightfully characterized as "judge shopping." In reality, the term "judge shopping" has no established or universally recognized definition.[11] Merely giving notice that the Panel was investigating "judge shopping," without identifying the particular conduct involved, is no notice at all. *See MeridianLink, Inc. v. DH Holdings, LLC*, No. CV102708ABCJEMX, 2010 WL 11512182, at *3 (C.D. Cal. June 16, 2010); *People*

---

[10] Charles and the other Respondent attorneys became aware of many of the Panel's concerns only after the proceedings had commenced and testimony was under way. Other concerns were not disclosed until the Panel issued its Report a year and a half later. *See, e.g.,* Dkt. 492 at 26. Still others, such as obtaining client consent prior to dismissal, were not included as a potential charge until the District Court issued its Order to Show Cause.

[11] Black's Law Dictionary defines the term narrowly as "[t]he practice of filing several lawsuits asserting the same claims—in a court or a district with multiple judges—with the hope of having one of the lawsuits assigned to a favorable judge and of nonsuiting or voluntarily dismissing the others." **JUDGE-SHOPPING**, Black's Law Dictionary (11th ed. 2019); *see also Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-CV-00970-PAB-KMT, 2014 WL 4057118, at *2 (D. Colo. Aug. 14, 2014) (quoting Black's definition); *Lennard v. Yeung*, No. CV1009322MMMAGRX, 2011 WL 13217925, at *7 (C.D. Cal. Aug. 16, 2011) (same).

*v. Sullivan*, 142 A.D.2d 695, 696, 531 N.Y.S.2d 295, 296 (1988).

The failure to provide Charles with advance notice that the related case designation and the telephone call to Judge Thompson's chambers were to be the subject of the Panel's inquiry and subsequent findings of "misconduct" violated Charles' due process rights and calls into question the reliability of the Panel's findings. *See Shaygan*, 652 F.3d at 1319 ("The record before us is unreliable because it was developed, after all, without affording either of them due process.").

## C.    The Proceedings Before the Panel Violated Charles' and the Other Respondents' Procedural Due Process Rights.

The District Court's order attempts to distinguish this Court's decision in *United States v. Shaygan*, 652 F.3d 1297 (11th Cir. 2011), by suggesting that *Shaygan* didn't apply because the Panel didn't impose any sanctions. Dkt. 711 at 57. Again, the District Court's finding is based on the incorrect legal conclusion that due process protections didn't apply to the Panel proceedings and only attached after the District Court issued its show cause orders.

### 1.    The Panel Questioned Lawyers Without Counsel Present and Without Affording an Opportunity for Cross Examination.

At the initial May 20, 2022, hearing before the Panel, seventeen (17) of the lawyers compelled to attend were segregated from the other respondents and denied access to their counsel while being questioned under oath by Special Master Bernard Harwood. May 20, 2022 Hr'g Tr. at 12, 74-76. This procedure was extraordinary and

unprecedented.[12]

Despite the fact that each of these 17 respondent lawyers was represented by counsel at the hearing, the Panel refused to permit their counsel to accompany them while they were being questioned *in camera* by the Special Master. At least two requests that their counsel be permitted to attend and participate in the questioning of their clients were denied by the Panel.[13] *Id.* at 78-84. These 17 Respondents were then questioned under oath by the Special Master without their counsel present and without Charles' or any Respondents' counsel having the opportunity to observe their testimony or cross-examine them.

Even though Charles was not interrogated without counsel present, the denial of those 17 Respondents' right to be represented by counsel undermines the reliability of these proceedings and constitutes a substantial denial of Charles' due process and Sixth Amendment rights. Further, the exclusion of the other Respondents and their

---

[12] *See In re Paradyne Corp.*, 803 F.2d 604, 608 (11th Cir. 1986) ("In our view, this unprecedented program of *in camera, ex parte* inquisitions is so clearly at odds with the principles of the open, adversarial system of justice guaranteed by our Constitution that the district court's contemplated actions without question endanger the defendants' rights.").

[13] The District Court erroneously found that Charles and the other Respondent attorneys failed to object to this unprecedented denial of the right to counsel and the right of confrontation, but Charles' counsel and others contemporaneously objected to the highly unusual process and the Panel's denial of  counsel's request to accompany their clients during questioning. Dkt. 711 at 166.

counsel from the proceedings before the Special Master undermines the reliability of those proceedings and constitutes a substantial denial of these Respondent Attorneys' due process rights as well as their rights to confront witnesses. *See Shaygan*, 652 F.3d at 1319.

Compounding this problem, prior to the *in camera* questioning by the Special Master, the Panel assured counsel that they would have an opportunity to review and redact the transcript of their clients' and other lawyers' testimony. May 20, 2022 Hr'g Tr. at 83. Despite this assurance, the Panel repeatedly declined to release the transcript of the *in camera* questioning by the Special Master to Charles. Counsel for Charles and the other Respondents made numerous requests to access this transcript, which were consistently denied or disregarded by the Panel. *See, e.g., Vague* Dkt. 22, 37, 69, 72. In fact, counsel for Charles was not permitted to review the transcript of the *in camera* May 20, 2022, proceedings before the Special Master until **after** the Panel had issued its Report on October 3, 2023.

The Panel's continued refusal to allow counsel for Charles and the other Respondent attorneys to review the transcript of the May 20 *in camera* proceedings before the Special Master is particularly troubling given the Panel's instructions at the conclusion of the last evidentiary hearing on November 4, 2023, in which the Panel requested written submissions from Charles and the Respondents tied to the release of the remaining hearing transcripts. Nov. 4, 2022, Hr'g Tr. at 86-87. This was to be

Charles' and the other Respondent attorneys' only opportunity to respond to the Panel's allegations with the now completed testimony. The Panel promised that it was "going to make all transcripts and all declarations available to every lawyer." *Id.* at 86. Despite repeated motions and informal requests, the Panel did not release the Special Master transcript for **more than a year** after promising to do so, and only **after** the Panel had issued its Final Report.

Because Charles and the other Respondent attorneys were denied the opportunity to observe the testimony presented before the Special Master or to cross-examine those witnesses and were then denied access to the transcript of that testimony, Charles and the other Respondents did not have a meaningful opportunity to address or respond to the testimony of these witnesses before the Panel issued its Report. *See Shaygan*, 652 F.3d at 1319; *Adkins*, 227 F. App'x at 806 (vacating sanctions, in part, because attorneys were unable to cross-examine witnesses).

The Panel's denial of the right to counsel and the opportunity to cross-examine witnesses that testified *in camera* to the Special Master, followed by the lengthy denial of access to the transcript of that testimony, violated Charles' and the other Respondent attorneys' due process rights.

### 2. The Panel's Exclusion of Charles and the Other Respondents from the Evidentiary Hearings Violated Due Process.

At the commencement of the May 20, 2022, hearing, the Panel announced that it would exclude Charles and all Respondent attorneys from the courtroom while not testifying and would not allow any of them to observe the testimony of other Respondent attorneys. May 20, 2022 Hr'g Tr. at 74. The unprecedented exclusion of Charles and the other Respondent attorneys from the courtroom violated their rights to due process and their right to confront witnesses. *See Shaygan*, 652 F.3d at 1318.

Although Fed. R. Evid. 615 allows a court to exclude witnesses, it does not authorize the exclusion of parties. Fed. R. Evid. 615(a)(1) ("[T]his rule does not authorize excluding: (1) a party who is a natural person"). "Exclusion of persons who are parties would raise serious problems of confrontation and due process. Under accepted practice they are not subject to exclusion." Advisory Committee Notes to Fed. R. Evid. 615; *see Johnson v. United States*, 780 F.2d 902, 909 (11th Cir. 1986).

The Panel did not have good cause to exclude Charles and the other Respondent attorneys from their own disciplinary proceedings. The Panel's expressed concern that the Respondent attorneys might alter their testimony if they were allowed to hear the testimony of the other attorneys is without any factual or legal basis and does not justify the denial of these attorneys' due process and confrontation rights. The unfounded presumption that these respected attorneys would alter their truthful

testimony if they were allowed to hear other lawyers testify is unjustified and contrary to the traditional respect and deference afforded to attorneys.

### 3.    The Panel's Refusal to Permit Promised Post-hearing Briefing Violated Due Process.

At the conclusion of the last day of evidentiary hearings, the Panel announced that in lieu of closing arguments, the Panel instead wanted to hear from Respondents "in written submissions." Nov. 4, 2022 Hr'g Tr. at 72.[14]  The Panel then outlined in some detail what those written submissions should address and requested a proposed briefing schedule from the Respondents. *Id.* at 82-85, 87. In response to the Panel's instructions to file written submissions, counsel inquired once again about access to the transcripts and declarations which had still not been provided to counsel. *Id.* at 74. The Panel stated that it was "going to make all transcripts and all declarations available to every lawyer" and that the proposed briefing schedule should be "triggered for when [counsel] have the transcripts and declarations available to us and a reasonable time for [counsel] to review and assess those and take proper positions based upon those" transcripts and declarations. *Id.* at 86, 87.

A few days later, on November 8, 2022, counsel for Charles and the other Respondents submitted a proposed briefing schedule that was tied to counsel's receipt

---

[14] The Panel had previously disallowed opening statements that would involve any reference to the facts or positions of the respondents. May 20, 2022 Hr'g Tr. at 21-22.

of the Special Master transcript, the transcript from the final two days of the evidentiary hearing, and the other respondents' declarations. *Vague* Dkt. 69. However, the Panel never entered a briefing schedule and never communicated further with Charles' counsel until **eleven months later**, when it released its Report on October 3, 2023, without affording Charles and the other Respondents the promised opportunity to file written submissions. No explanation was ever provided why the Panel apparently elected to forego written submissions after expressly asking to receive them.

Instead of utilizing the disciplinary procedures already available under local rules, this matter was addressed using an unprecedented process with extraordinary and unique rules that evolved over the course of the proceedings.[15] The process utilized by the Panel denied Charles and the other Respondent attorneys basic due process and other constitutional protections required by established law. As a consequence, the Panel's findings are unreliable and should not be adopted by this Court. *See Shaygan*, 652 F.3d at 1319.

---

[15] The District Court noted that there has never been "a three-judge panel in the history of this circuit on an issue like this." Nov. 2, 2023 Hr'g Tr. at 22.

### D. Charles' Due Process Objections are not Rendered Moot by the District Court's Disavowal of the Panel's Findings.

The District Court's order attempts to wash away the Panel's due process violations by claiming that it did not rely on or give any deference to the Panel's findings. Dkt. 711 at 153. In so doing, the District Court has painted itself into a very narrow corner in an effort to insulate its extraordinary findings from appellate review.

There is no dispute that the District Court—despite repeated disclaimers to the contrary—relied on evidence that was gathered by the Panel in proceedings that did not afford Charles and the other Respondent attorneys the requisite due process protections. For example, while the District Court claims to give no deference to the Panel's credibility evaluation of Charles' testimony before the Panel, the District Court's findings and sanctions against Charles are based on the assumption that Charles intentionally lied to the Panel and that he must also have lied to the District Court when he denied having previously lied to the Panel.

Finally, the absence of proper notice of the scope of the conduct being investigated by the Panel had a direct and material effect on Charles because it failed to put him on notice that his call to Judge Thompson's chambers was a matter of concern to the Panel. Had the notice included that information, there is no doubt that Charles would have been prepared to answer questions about the call and would undoubtably have reviewed the emails and other information related to that call.

## <u>CONCLUSION</u>

The District Court abused its discretion in imposing sanctions on Charles. Accordingly, this Court should reverse the District Court's order as to Charles.

Respectfully submitted,

*/s/ Barry A. Ragsdale*
Barry A. Ragsdale
Robert S. Vance (VAN069)
Dominick Feld Hyde, PC
1130 22nd Street South, Suite 400
Birmingham, AL 35205
Tel.: (205) 536-8888
bragsdale@dfhlaw.com
rvance@dfhlaw.com

*/s/ W. Neil Eggleston*
W. Neil Eggleston
Mark Hochberg
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 389-5016
neil.eggleston@kirkland.com
mark.hochberg@kirkland.com

## <u>FRAP 32(g) CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g), I hereby certify that the foregoing motion contains 12,907 words, excluding those parts exempted by Fed. R. App. P. 32(f).  It further complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6), as it has been prepared in a proportionally-based typeface using Times New Roman 14-point font.

*/s/ Barry A. Ragsdale*
Barry A. Ragsdale

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on July 28, 2025, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system and that notice of such filing was made through the CM/ECF system or by U.S. mail, postage prepaid, to all counsel of record.

*/s/ Barry A. Ragsdale*
Barry A. Ragsdale

56