No. 25-10973-G

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

BOE, *et al.* v. MARSHALL, *et al.*,
(IN RE: MELODY H. EAGAN & JEFFREY P. DOSS)

———————

On Appeal from the United States District Court
for the Middle District of Alabama
(Case No. 2:22-CV-184-LCB-CWB)

———————

**BRIEF OF AMICI CURIAE LAW PROFESSORS
IN SUPPORT OF PLAINTIFFS-APPELLANTS**

———————

Michael L. Eber
T. Brandon Waddell
Ashley C. Brown
**CAPLAN COBB LLC**
75 Fourteenth Street NE
Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600

John H. Fleming
Georgia Bar No. 263250
**EVERSHEDS SUTHERLAND LLP**
999 Peachtree Street NE
Atlanta, Georgia 30309
Tel: (404) 853-8065

*Counsel for Amici Curiae Law Professors*

*Boe, et al. v. Marshall, et al.*; No. 25-10973-G

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-3, the undersigned counsel of record certifies that the following persons or entities may have an interest in the outcome of this appeal:

- Alliance Defending Freedom – Counsel for Defendants

- Assaf, Eugene F. – Counsel for Respondent

- Austin, Sarah – Counsel for Plaintiff

- Badham & Buck LLC – Counsel for Respondent

- Bailey, Daryl D. – Defendant

- Bainbridge Mims Rogers & Smith LLP – Counsel for Respondent

- Balkoski, Katherine – Counsel for Respondent

- Barnes, Brian W. – Counsel for Defendants

- Beaverstock, Hon. Jeffrey U. – United States District Judge

- Berg, Rachel – Counsel for Plaintiff

- Bowdre, Alexander Barrett – Counsel for Defendants

- Brooks, Roger G. – Counsel for Defendants

- Brown, Ashley C. – Counsel for *Amici Curiae* Law Professors

- Bryan, Hon. Chad W. – U.S. Magistrate Judge

- Buck, Brannon Jeffrey – Counsel for Respondent

*Boe, et al. v. Marshall, et al.*; No. 25-10973-G

- Burke, Hon. Liles C. – United States District Judge

- Caplan Cobb LLC – Counsel for *Amici Curiae* Law Professors

- Carr, Danny – Defendant

- Charles, Carl Solomon – Respondent

- Cooper & Kirk, PLLC – Counsel for Defendants

- Copeland Franco Screws & Gill – Counsel for Respondent

- Crocker, Champ – Defendant

- Davis, James William – Counsel for Defendants

- Dominick Feld Hyde, P.C. – Counsel for Respondent

- Doss, Jeffrey P. – Respondent / Appellant

- Driver, Christopher B. – Counsel for Respondent

- Eagan, Melody H. – Respondent / Appellant

- Eber, Michael L. – Counsel for *Amici Curiae* Law Professors

- Eggleston, Warren Neil – Counsel for Respondent

- Esseks, James D. – Respondent

- Eversheds Sutherland LLP – Counsel for *Amici Curiae* Law Professors

- Farella Braun & Martell LLP – Counsel for Respondent

- Faulks, LaTisha Gotell – Respondent

*Boe, et al. v. Marshall, et al.*; No. 25-10973-G

- Fleming, John H. – Counsel for *Amici Curiae* Law Professors

- Frampton, Henry W. IV – Counsel for Defendants

- Franklin, Samuel H. – Counsel for Respondent

- GLBTQ Legal Advocates & Defenders – Counsel for Plaintiffs

- Hartnett, Kathleen Roberta – Respondent

- Holliday, Shannon Lynn – Counsel for Respondent

- Human Rights Campaign Foundation – Counsel for Plaintiffs

- Jenner & Block LLP – Counsel for Respondent

- King & Spalding – Counsel for Plaintiffs

- King, Mark Christian – Counsel for Respondent

- Kirkland & Ellis LLP – Counsel for Respondent

- Klugh, Richard C. – Counsel for Appellants

- LaCour Jr., Edmund Gerard – Counsel for Defendants

- Levi, Jennifer L. – Respondent

- Lightfoot, Franklin & White LLC – Counsel for Respondent

- Markus, David Oscar – Counsel for Appellants

- Marshall, Steve – Defendant

- McCoy, Scott D. – Respondent

*Boe, et al. v. Marshall, et al.*; No. 25-10973-G

- McKay, Charles A.  – Counsel for Defendants

- Mills, Christopher Ernest – Counsel for Defendants

- Minter, Shannon – Respondent

- National Center for Lesbian Rights – Counsel for Plaintiffs

- Office of the Alabama Attorney General – Counsel for Defendants

- Orr, Asaf – Respondent

- Otterberg, April A. – Counsel for Respondent

- Pacheco, Byron – Counsel for Respondent

- Patterson, Peter A.  – Counsel for Defendants

- Peterson, Misty L. – Counsel for Plaintiffs

- Prater IV, Harlan I. – Counsel for Respondent

- Pratt, James Andrew – Counsel for Plaintiffs

- Proctor, Hon. R. David – United States District Judge

- Ragsdale, Barry Alan – Counsel for Respondent

- Ramer, John D.  – Counsel for Defendants

- Reinke, Adam – Counsel for Plaintiffs

- Remar, Robert – Counsel for Appellants

- Rogers, Bruce Frederick – Counsel for Respondent

*Boe, et al. v. Marshall, et al.*; No. 25-10973-G

- Schoenberg, Anthony Paul – Counsel for Respondent

- Sechler, Philip A. – Counsel for Defendants

- Segall, Robert David – Counsel for Respondent

- Seiss, Benjamin Matthew – Counsel for Defendants

- Shortnacy, Michael B. – Respondent

- Soto, Diego Armando – Counsel for Plaintiffs

- Southern Poverty Law Center – Counsel for Plaintiffs

- Spero Law LLC – Counsel for Defendants

- Stoll, Christopher F. – Counsel for Plaintiffs

- Stone, Jessica Lynn – Counsel for Plaintiffs

- Tarbox, James H. – Defendant

- Terenzi, Elizabeth Nicholson – Counsel for Respondent

- Thompson, David H. – Counsel for Defendants

- Ugai, John Michael – Counsel for Respondent

- Unikowsky, Adam Granich – Counsel for Respondent

- Vague, Amie A. – Counsel for Plaintiffs

- Vance III, Robert Smith – Counsel for Respondent

- Ventiere, Jessica – Defendant

*Boe, et al. v. Marshall, et al.*; No. 25-10973-G

- Waddell, Timothy Brandon – Counsel for *Amici Curiae* Law Professors

- Warbelow, Sarah – Counsel for Plaintiffs

- Watkins, Hon. William Keith – United States District Judge

- Weaver, Cynthia Cheng-Wun – Counsel for Plaintiffs

- Whelan, Amy  – Counsel for Plaintiffs

- Wilson, Jenny – Counsel for Appellants

- Wilson, Thomas Alexander – Counsel for Defendants

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

This 4th day of August, 2025.

> */s/ Michael L. Eber*
> Michael L. Eber
> Georgia Bar No. 859338
> **CAPLAN COBB LLC**
> 75 Fourteenth Street NE, Suite 2700
> Atlanta, Georgia 30309
> Tel: (404) 596-5600
> Fax: (404) 596-5604
> *meber@caplancobb.com*
>
> *Counsel for Amici Curiae Law Professors*

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

TABLE OF AUTHORITIES ...................................................................... ii

INTEREST OF AMICI CURIAE ..............................................................1

STATEMENT OF THE ISSUES ...............................................................2

SUMMARY OF THE ARGUMENT ..........................................................2

ARGUMENT AND CITATION OF AUTHORITY .....................................4

I.    An Improperly-Designated Northern District of Alabama Judge Cannot
      Sanction Counsel in a Middle District of Alabama Case ..............................4

II.   The Sanctions Order Violated Federal Rules of Civil Procedure 41(a)
      and 83(b). .........................................................................................8

      A.    The Northern and Middle Districts of Alabama Have No Formal
            Procedure Governing Post-Dismissal Refiling ....................................8

      B.    The Sanctions Order Violated Federal Rule of Civil Procedure
            41(a) by Adding Conditions to its Voluntary Dismissal Provisions....14

      C.    The Sanctions Order Violated Federal Rule of Civil Procedure
            83(b)'s Notice Requirement. ...........................................................16

III.  Federal Law Permits Judge-Shopping and Other Forms of Nonrandom
      Case Assignment .............................................................................18

      A.    Exceptions to Random Case Assignment Are Commonplace in
            the Federal Courts. .......................................................................18

      B.    No Federal Statute or Federal Rule Prohibits Judge-Shopping ..........20

      C.    Imposing Sanctions for Alleged Judge-Shopping Creates
            Inconsistent Outcomes Across the Federal District Courts.................22

CONCLUSION .....................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amnesty Am. v. Town of W. Hartford*,
  288 F.3d 467 (2d Cir. 2002) ...............................................................17

*Brown v. Crawford Cnty., Ga.*,
  960 F.2d 1002 (11th Cir. 1992) ..........................................................14

*Burlington N. R.R. Co. v. Woods*,
  480 U.S. 1 (1987) ..................................................................................8

*Frad v. Kelly*,
  302 U.S. 312 (1937) ..............................................................................7

*Hvass v. Graven*,
  257 F.2d 1 (8th Cir. 1958)......................................................................7

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
  711 F.3d 1050 (9th Cir. 2013) ...............................................................6

*Utah v. Walsh*,
  No. 2:23-CV-016-Z, 2023 WL 2663256 (N.D. Tex. Mar. 28, 2023)...................23

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
  564 F.3d 110 (2d Cir. 2009) ................................................................15

*Wrenn v. D.C.*,
  808 F.3d 81 (D.C. Cir. 2015) ................................................................7

**RULES**

Fed. R. Civ. P. 41 ................................................................................15

Fed. R. Civ. P. 83 ..........................................................................9, 16, 17

M.D. Ala. Loc. R. 40.1 ........................................................................12

N.D. Ala. Loc. R. 72.1 .........................................................................11

## STATUTES

28 U.S.C. § 137 ...............................................................................9, 18

28 U.S.C. § 292 ....................................................................................5

28 U.S.C. § 295 .................................................................................5, 6

28 U.S.C. § 296 ....................................................................................6

28 U.S.C. § 2072 ..................................................................................9

28 U.S.C. § 2073 ................................................................................21

28 U.S.C. § 2255 ................................................................................19

## OTHER AUTHORITIES

Advisory Committee on Civil Rules, Agenda Book
(April 9, 2024) .............................................................................22

Amended Order Assigning the Business of the Court
(W.D. Tex. May 31, 2024).............................................................23

General Order No. 03-3156, In re: Assignment of "Regular Civil Cases" to United
States Magistrate Judges (M.D. Ala. Aug. 23, 2007). .........................................13

General Order No. 3156, In re: Assignment of "Regular Civil Cases" to United
States Magistrate Judges (M.D. Ala. Aug. 29, 2003) .........................................13

*In re: General Order for Referral of Civil Matters to the United States Magistrate
Judges of the Northern District of Alabama* (N.D. Ala. Jan. 2, 2015). ...............11

J. Jonas Anderson & Paul R. Gugliuzza,
*Federal Judge Seeks Patent Cases*, 71 DUKE L.J. 419 (2021) ...........................22

Katherine A. Macfarlane, *A New Approach to Local Rules*,
11 STAN. J. CIV. RTS. & CIV. LIBERTIES 121 (2015)............................................22

Katherine A. Macfarlane, *Constitutional Case Assignment*,
102 N.C. L. REV. 977, 1024 (2024) .............................................................14, 23

Letter from Charles E. Schumer, U.S. Senator, to the Honorable David C.
Godbey, Chief Judge (March 21, 2024) ...............................................21

Letter from David C. Godbey, Chief Judge, to the Honorable Charles E.
Schumer (March 29, 2024)...................................................................21

Mem. from Gregory F. Van Tatenhove, Chair, Committee on Court
Administration and Case Management, to Judges, United States
District Courts, District Court Executives, and Clerks, United States
District Courts (March 15, 2024) .........................................................20

Order Assigning the Business of the Court as It Relates to Patent Cases
(W.D. Tex. July 25, 2022).....................................................................23

Plan A (Amended), Amended Plan for Random and Direct Assignment
of Cases in Multi-Judge Divisions, (W.D. Tex. May 28, 2003) ..........19

S.D.N.Y. Rules for the Division of Business Among District Judges, Rule 11.......18

S.D.N.Y. Rules for the Division of Business Among District Judges, Rule 12 ......18

## INTEREST OF AMICI CURIAE[1]

Amici are seven members of United States law school faculties who teach and write in the fields of Civil Procedure and Federal Courts. We have no personal interest in the outcome of this case, but a professional interest in ensuring the fair application of the Federal Rules of Civil Procedure in all district courts. A complete list of Amici's names, titles, and affiliations is set forth in the appendix to this brief.

The Middle District of Alabama's February 25, 2025 Sanctions Order and the potentially chilling effect the order will have on counsel, especially those involved in *pro bono* representation, compels Amici to offer their perspective as to why this Court should find that (1) the presiding district judge was improperly designated as a Middle District of Alabama judge and could not enter a sanctions order in the Middle District, creating a non-waivable jurisdictional error that renders the Order void; (2) the Sanctions Order violated the Federal Rules of Civil Procedure by creating extra-textual, sanctionable exceptions to Rule 41 without

---

[1]    No counsel for a party authored this brief in whole or in part, and no counsel for a party made a monetary contribution intended to fund the preparation of this brief. No person other than the Amici Curiae or their counsel made a monetary contribution to the preparation or submission of this brief. Plaintiffs-Appellants have consented, by and through their counsel, to the filing of this brief.

1

any notice that such exceptions applied; and (3) federal law does not prohibit judge-shopping.

## STATEMENT OF THE ISSUES

1.   Whether a Northern District of Alabama judge who was not properly designated to sit in the Middle District of Alabama had jurisdiction to issue the Sanctions Order in a matter pending in the Middle District.

2.   Whether the Sanctions Order violated Federal Rule of Civil Procedure 41(a) by creating extra-textual conditions to the rule's voluntary dismissal procedures, and Federal Rule of Civil Procedure 83(b) by sanctioning counsel for failure to comply with local procedure of which they had no notice.

3.   Whether judge-shopping, which does not violate federal law, is grounds for sanctions.

## SUMMARY OF THE ARGUMENT

The Sanctions Order at issue in this case should be vacated for three independent reasons. First, the Sanctions Order was entered in a Middle District of Alabama case by an improperly-designated Northern District of Alabama judge. Congress has determined the conditions that must be met to permit a district judge to sit by designation in a court other than the one to which the judge was nominated and confirmed. When those conditions are not met, as they were not here, an improperly-designated judge lacks the power to preside over matters in

any court that is not their assigned judicial home. That error is jurisdictional and non-waivable.

Second, the Sanctions Order created an extra-textual exception to Federal Rule of Civil Procedure 41(a)'s voluntary dismissal standards, and, without providing prior notice of the exception's application, sanctioned attorneys for failure to comply with the exception. As a result, the Sanctions Order created local procedure that conflicted with, and therefore violated, Federal Rule of Civil Procedure 41(a). The failure to provide any notice of the possibility of sanctions for failure to comply with the newly-created local procedure additionally violated Federal Rule of Civil Procedure 83(b).

Third, the Sanctions Order is based in part on the notion that judge-shopping offends federal law's commitment to random case assignment. But federal law permits numerous forms of nonrandom case assignment. Though judge-shopping has garnered significant national attention in recent years, it is not prohibited by federal statutes or the Federal Rules of Civil Procedure. Congress and the Judicial Conference have the power to ban the practice, but have not done so.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

**I.    An Improperly-Designated Northern District of Alabama Judge Cannot Sanction Counsel in a Middle District of Alabama Case.**

The sanctions order that is the subject of this appeal was entered in *Boe v. Marshall*, a case pending in the Middle District of Alabama, by United States District Judge Liles C. Burke. *Boe v. Marshall*, Case No. 2:22-cv-184-LCB (M.D. Ala.), Doc. 711 ("Sanctions Order"). *See* DE711. Judge Burke was nominated by President Donald Trump, and confirmed by the U.S. Senate, to serve as a United States District Judge for the Northern District of Alabama and has served as such since 2018. *See* U.S. Dist. Ct. N. Dist. of Ala., Judge's Info, District Judges, Judge Liles C. Burke, available at https://www.alnd.uscourts.gov/content/judge-liles-c-burke.

*Boe v. Marshall*, originally styled *Eknes-Tucker v. Ivey*, was filed in the Middle District on April 19, 2022, and randomly assigned to Middle District Judge R. Austin Huffaker, Jr. *See* DE711:38. On April 20, 2022, Judge Huffaker reassigned the case to Judge Burke, explaining that:

> The Honorable Liles C. Burke, United States District Judge for the Northern District of Alabama, was previously assigned two cases substantially similar to the above-captioned case, both of which were voluntarily dismissed on April 15, 2022. By order of the Chief Judge of the United States Court of Appeals for the Eleventh Circuit, all United States District Judges in the State of Alabama may preside over cases in any of the State's three federal judicial districts. In accordance with that order, and by the authority of the Court to

4

manage the district court docket, promote the orderly and expeditious
disposition of cases, and reassign a case to a judge who presided over
a prior-related case, this case is REASSIGNED to Judge Burke. Judge
Burke shall sit by designation and preside over the case in the United
States District Court for the Middle District of Alabama.

DE3:1.

Federal statutes govern the limited circumstances in which a district judge

may sit by designation in a district court within the same circuit. *See* 28 U.S.C.

§ 292(b) ("The chief judge of a circuit may, in the public interest, designate and

assign temporarily any district judge of the circuit to hold a district court in any

district within the circuit."); *id.* at § 295 ("No designation and assignment of a . . .

district judge in active service shall be made without the consent of the chief judge

or judicial council of the circuit from which the judge is to be designated and

assigned."). Judge Huffaker's attempt to assign Judge Burke to the Middle District

violated controlling law.

First, Judge Huffaker could not, through his own individual order, designate

Judge Burke, a Northern District of Alabama Judge, to sit by designation in the

Middle District of Alabama. Second, the undersigned are not aware of any order by

which Chief Judge William H. Pryor, Jr., or the Eleventh Circuit Judicial Council,

designated and assigned Judge Burke, a Northern District of Alabama judge, to sit

by designation in the Middle District of Alabama.

Though Judge Huffaker's April 20, 2022 Order references an "order of the Chief Judge of the United States Court of Appeals for the Eleventh Circuit" through which "all United States District Judges in the State of Alabama may preside over cases in any of the State's three federal judicial districts," no such order is available on the Eleventh Circuit's website, the Middle or Northern Districts' websites, or the *Boe v. Marshall* docket. *See* 28 U.S.C. § 295. ("All designations and assignments of justices and judges shall be filed with the clerks and entered on the minutes of the courts from and to which made."). Moreover, section 292(b) describes a process through which a particular judge, rather than all federal district judges in the State of Alabama, are designated and temporarily assigned to a specific district that is not their own. *Cf. In re Motor Fuel Temperature Sales Pracs. Litig.*, 711 F.3d 1050, 1054 (9th Cir. 2013) (describing intercircuit assignment procedures, and stating that "I'm aware of no authority empowering the chief judge of the circuit to re-assign cases pending before other judges, or to remove cases from the district's assignment wheel" unless "the presiding judge is recused or unable to serve, and the local district is unable to reassign the case according to its local procedures").

A district judge who has not been properly designated lacks power to preside over matters in a district that is not his own. 28 U.S.C. § 296 (stating that a district judge sitting by designation only has the power to discharge judicial duties "for

6

which he is designated and assigned"). Indeed, the Supreme Court has characterized cases decided by an out-of-district judge who lacks authority to sit by designation as jurisdictionally defective. *See Frad v. Kelly*, 302 U.S. 312, 318 (1937). So too have the Eighth and D.C. Circuits. *Hvass v. Graven*, 257 F.2d 1, 5 (8th Cir. 1958) (stating that a visiting judge whose period of designation has ended lacks the power to exercise jurisdiction over a case in a district in which the judge was previously assigned, "except as to matters submitted to him while he was so assigned"); *Wrenn v. D.C.*, 808 F.3d 81, 84 (D.C. Cir. 2015) (stating that "a judge acting beyond his designation acts without jurisdiction").

Further, a judgment entered by a district judge without jurisdiction is null and must be vacated, even if the error was not challenged below. *Wrenn*, 808 F.3d at 84. In *Wrenn*, the challenged order was issued by a Northern District of New York Judge in a case pending in the District of Columbia. *Id*. at 83. Like intra-circuit assignments of district court judges, assignments of a district judge to a district outside of the judge's home circuit are controlled by statute. *Id*. (citing 28 U.S.C. § 294(c)–(d)). The improper assignment in *Wrenn* occurred when a calendar committee "assigned the matter to [a Northern District of New York Judge] because it deemed the case to be related to another case over which [the judge] presided." *Id*. However, the Northern District of New York Judge's original designation was limited to "specific and enumerated cases," including the earlier-

filed case—but not the litigation on appeal. *Id*. The failure to comply with statutory

designation conditions was not a technical error cured by the *de facto* officer

doctrine. *Id*. It was a jurisdictional defect that invalidates the judge's orders. *Id*. at

84. The Sanctions Order issued by Judge Burke is similarly defective and should

be vacated.

    As Judge Burke emphasized, the report issued by the three-judge panel

convened to investigate the Appellants' conduct was "properly docketed" in *Boe v.*

*Marshall*, a Middle District case, "because it was this case in which the remaining

attorneys had committed [alleged] misconduct." DE711:67. Likewise, the sanctions

proceedings had to happen in the Middle District. But Judge Burke had no

jurisdiction to preside over matters in the Middle District, let alone issue sanctions

in that court. But even if Judge Burke may have had authority to sanction the

Appellants in the Northern District of Alabama, that fact does not legitimize the

Sanctions Order entered in the Middle District.

## II.   The Sanctions Order Violated Federal Rules of Civil Procedure 41(a) and 83(b).

### A.   The Northern and Middle Districts of Alabama Have No Formal Procedure Governing Post-Dismissal Refiling.

    The constitutional authority to regulate federal court procedure rests with

Congress. *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 5 n.3 (1987) ("Article III

of the Constitution, augmented by the Necessary and Proper Clause of Article I, §

8, cl. 18, empowers Congress to establish a system of federal district and appellate courts and, impliedly, to establish procedural Rules governing litigation in these courts"). Congress has delegated some of that power to the Supreme Court through the Rules Enabling Act. 28 U.S.C. § 2072. Federal Rule of Civil Procedure 83 further delegates procedural rulemaking authority to the district courts by permitting the adoption and amendment of local rules. Fed. R. Civ. P. 83(a)(1) (requiring that local rules be adopted by a majority of a district's judges following a period of public notice and comment, and that the rules "be consistent with—but not duplicate—federal statutes" and federal rules adopted pursuant to the Rules Enabling Act). Congress has also delegated some of its procedural authority to the federal courts across a series of federal statutes. *See, e.g.*, 28 U.S.C. § 291 (describing the procedure courts must follow for designating visiting circuit judges); *id.* § 137(a) (permitting district courts to control how they divide the court's business through local rules and general orders).

The Sanctions Order makes multiple references to the Middle and Northern Districts' case assignment procedures and the Appellants' alleged attempts to circumvent them. *See, e.g.*, DE711:2 (stating that "one team . . . regrouped, mustered new plaintiffs, and filed suit in another federal district court for the express purposes of manipulating the courts' random case-assignment procedures"); DE711:3 ("[T]he plaintiffs' filings in *Walker* and *Ladinsky* sparked

9

concern among the federal bench that counsel had tried either to manipulate or circumvent the random case-assignment procedures for the Northern and Middle Districts of Alabama"); DE711:41 (stating that "the Chief Judges decided to empanel three judges—one from each federal district court in Alabama—to investigate whether counsel intentionally tried to subvert the random case-assignment procedures for the Northern and Middle Districts of Alabama"); DE711:134 (stating that "the Court finds by clear and convincing evidence that Eagan acted in bad faith when she dismissed *Ladinsky* and filed the materially similar *Eknes-Tucker* with new plaintiffs in another federal district court for the express and nefarious purpose of interfering with the random case-assignment procedures for the Northern and Middle Districts of Alabama"); *id*. at 171 (addressing "whether sanctions should issue for their bad-faith attempts to manipulate the court's random case-assignment procedures and avoid their properly assigned judge"). However, the Middle and Northern Districts of Alabama have no local rules or general orders controlling cases that are refiled following a Federal Rule of Civil Procedure 41(a) voluntary dismissal. In both districts, only a handful of rules and orders address case assignment at all. None contemplate an examination of counsel's subjective intent regarding the interplay between case assignment and dismissal strategy.

In the Northern District of Alabama, local rules reference the "[p]rocedures outlining the assignment and reassignment of civil matters," noting that they are contained in "the General and Standing Orders of the Court." N.D. Ala. Loc. R. 72.1(b). One general order provides that "[t]he Clerk shall assign ordinary civil cases blindly and at random by means of an automated system approved by the judges of the Court." *In re: General Order for Referral of Civil Matters to the United States Magistrate Judges of the Northern District of Alabama* (N.D. Ala. Jan. 2, 2015).

Appellants filed *Ladinsky v. Ivey*, Case. No. 5:22-cv-00447 (N.D. Ala. 2022), in the Northern District. DE711:13. Before its dismissal, *Ladinsky* was randomly assigned three times. First, the case was randomly assigned to Judge Anna M. Manasco. DE711:14. Next, it was randomly reassigned to Magistrate Judge Staci G. Cornelius. *Id*. Then, it was randomly reassigned to Judge Annemarie Carney Axon. DE711:15. Appellants did not challenge or in any way interfere with these assignments.

Next, *Ladinsky* was nonrandomly assigned to Judge Burke by way of a docket entry that read "[i]n the interest of efficiency and judicial economy, this case is hereby transferred to Judge Liles C. Burke." *Ladinsky v. Ivey*, No. 5:22-cv-

11

447-LCB, Doc. No. 14 (N.D. Ala. Apr. 15, 2022).[2] There are no local rules or

general orders in the Northern District regarding the proper course of conduct

following a nonrandom transfer made "in the interest of efficiency and judicial

economy."

In the Middle District of Alabama, Local Rule 40.1 governs the "Calendar of

Cases" and provides that:

> Civil cases shall be divided among the judges of this Court through a
> computerized random selection process (e.g., a judge could be
> assigned a certain number of cases more than another judge, that
> judge then could be assigned a number fewer than the first judge, and
> the third judge could be assigned a number of cases more than both of
> these judges, with the number of cases assigned to the respective
> judges equalizing themselves at the end of the year). The Clerk of the
> Court shall then prepare such trial calendars as are needed for the
> cases so assigned.

M.D. Ala. Loc. R. 40.1.

---

[2]    At the time, no additional information was provided to Appellants regarding
the decision to transfer *Ladinsky* to a fourth judge. However, the three-judge panel
assigned to investigate this matter later explained that at the time of the transfer,
"Judge Axon was presiding over day four of a criminal trial with multiple
defendants, which at the time of trial was anticipated to last for more than two
weeks" and "considering the pending motion for a preliminary injunction in *Walker*
and the pressing claims for injunctive relief in the *Ladinsky* complaint, Judge Axon
transferred *Ladinsky* to Judge Burke." Final Report of Inquiry, *In re Vague*, No.
2:22-mc-3977-WKW, Doc. No. 70 (M.D., N.D., and S.D. Ala. Oct. 3, 2023). The
Sanctions Order explains that "*Walker* was randomly assigned to [Judge Burke],
and *Ladinsky* was transferred [to Judge Burke] as a related case." DE711:131.

An August 28, 2003 General Order creates specific procedures for direct assignment of certain civil cases to Middle District magistrate judges. General Order No. 3156, *In re: Assignment of "Regular Civil Cases" to United States Magistrate Judges* (M.D. Ala. Aug. 29, 2003) (assigning 40% of "regular civil cases," defined to exclude *pro se* and bankruptcy matters, for primary assignment to magistrate judges). The order also provides for the creation of a system that assigns a district judge to all magistrate judges to whom a primary case assignment is made; the identity of the assigned district judge is available only to court staff and the district judge in question. *Id*. at 2. The order further provides that "a District Judge may exercise the right to remove a case from primary assignment to a Magistrate Judge." *Id*. The August 29, 2003 general order was subsequently amended in 2007; instead of identifying 40% of "regular civil cases" for primary assignment to a magistrate judge, only 30% would be so assigned. General Order No. 03-3156, In re: Assignment of "Regular Civil Cases" to United States Magistrate Judges (M.D. Ala. Aug. 23, 2007).[3]

As a result of these rules and orders, in the Middle District, formal case assignment procedures create a presumptive system of random case assignment.

---

[3]     An additional order regarding Assignment of Regular Civil Cases to Magistrate Judges was entered in 2024, after the events underlying this appeal occurred.

That default rule is subject to several exceptions, including those pertaining to the primary assignment of a certain percentage of the "regular" civil case docket to magistrate judges, an assignment which a district judge can unilaterally overrule. There are no rules or orders in the Middle District that control the refiling of a recently-dismissed case.

Appellants filed the case that is now styled *Boe v. Marshall* in the Middle District on April 19, 2022. DE711:38. The case was randomly assigned to Judge Huffaker. *Id*. Appellants did not challenge the random assignment. Judge Huffaker then reassigned the case to Judge Burke directly on April 20, 2022. *Id.* Appellants did not challenge the reassignment.

> **B.** **The Sanctions Order Violated Federal Rule of Civil Procedure 41(a) by Adding Conditions to its Voluntary Dismissal Provisions.**

The Constitution grants Congress the power to create procedural law, and district courts may only create procedure when they act within the bounds of the authority Congress has delegated to them. Katherine A. Macfarlane, *Constitutional Case Assignment*, 102 N.C. L. REV. 977, 1024 (2024). As this Court has explained, "[d]istrict courts are not required to adopt local rules, but they *must not* circumvent the Federal Rules of Civil Procedure by implementing local rules or 'procedures' which do not afford parties rights that they are accorded under the Federal Rules." *Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002, 1008 (11th Cir. 1992).

In *Brown*, the Middle District of Georgia contravened Federal Rule of Civil Procedure 56 by requiring parties to "advise the court and opposing counsel in person . . . or by letter" of their desire to file a summary judgment motion and the "factual and legal reasons, *succinctly stated,* for believing [they would] prevail on the motion." *Id*. at 1007. The procedure precluded parties from filing summary judgment motions, as the clerk's office would not accept such motions if they had not been pre-approved by a judge. *Id*. at 1008. But "Federal Rule of Civil Procedure 56 makes no allowance for a preliminary 'procedure' by the district court for reviewing, with the potential of denying, a party's prospective summary judgment motion." *Id*. at 1009. As a result, this Court held that the local procedure denied "litigating parties' procedural and substantive rights under Rule 56" and was therefore "invalid." *Id*.

*Ladinsky* was dismissed pursuant to Federal Rule 41(a)(1)(A)(i). DE711:2. Rule 41(a)'s voluntary dismissal procedures are unqualified: a plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment. Fed. R. Civ. P. 41(a)(1)(A)(i); *see also Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 115 (2d Cir. 2009) ("[Plaintiff] was entitled to file a valid Rule 41 notice of voluntary dismissal for any reason, and the fact that it did so to flee the jurisdiction or the judge does not make the filing sanctionable."). *Ladinsky* was

dismissed in accordance with Rule 41(a) because neither an answer nor a motion for summary judgment had been filed.

The Sanctions Order adds a caveat to Rule 41(a)'s dismissal procedures: if the lead attorneys in a matter dismissed pursuant to Rule 41(a)(1)(A)(i) "fil[e] anew with different plaintiffs in a neighboring federal district court," they may be subject to a lengthy investigation by a three-judge panel to determine if they engaged in "judge-shopping," and thereafter sanctioned by a judge from a different district they purportedly attempted to avoid. *See* DE711:1. Yet, as in *Brown*, the governing federal rule makes no allowance for additional procedure that would alter the right created by the rule. The three-judge panel's inquiry, and the Sanctions Order that followed, denied counsel and their clients the right to voluntary dismissal they were entitled to under Rule 41(a).

### C. The Sanctions Order Violated Federal Rule of Civil Procedure 83(b)'s Notice Requirement.

The Sanctions Order also violated Federal Rule of Civil Procedure 83(b). Rule 83(b) provides that local federal procedure enforced by individual judges must be "consistent with federal law, rules adopted under [the Rules Enabling Act], and the district's local rules." Fed. R. Civ. P. 83(b). If a judge's individual procedure is violated, the rule mandates pre-sanctions notice. *Id*. ("No sanction or other disadvantage may be imposed for noncompliance with any requirement not

16

in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.").

The Advisory Committee has explained why pre-sanctions notice is essential. District courts "rely on multiple directives to control practice," including "internal directives," which "can lead to problems," including confusion as to exactly what rules apply in any given case. Fed. R. Civ. P. 83 advisory committee's note to 1995 amendment.

> There should be no adverse consequence to a party or attorney for violating special requirements relating to practice before a particular court unless the party or attorney has actual notice of those requirements. Furnishing litigants with a copy outlining the judge's practices--or attaching instructions to a notice setting a case for conference or trial--would suffice to give actual notice, as would an order in a case specifically adopting by reference a judge's standing order and indicating how copies can be obtained.

*Id*.; *see also Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 471 (2d Cir. 2002) (citing Fed. R. Civ. P. 83(b)) (holding that in the absence of an applicable local rule, a district court may not grant summary judgment on the ground that the nonmovant's papers failed to cite to the record when the parties were not given actual notice of such a requirement).

The Appellants had no notice, in writing or otherwise, that refiling in the Middle District following a Rule 41(a) voluntary dismissal in the Northern District might subject them to sanctions. Rule 83(b) thus expressly prohibits the sanction imposed against them.

### III. Federal Law Permits Judge-Shopping and Other Forms of Nonrandom Case Assignment.

#### A. Exceptions to Random Case Assignment Are Commonplace in the Federal Courts.

The Sanctions Order asserts that judge-shopping violates random case assignment and is therefore subject to condemnation. DE711:98. Random case assignment is sometimes, but not always, the practice that determines which judge hears which case in federal court. Departures from random case assignment are commonplace and are not met with universal condemnation.

Despite its heralded status, there is no right, fundamental or otherwise, to the random assignment of cases. Only one federal statute requires random case assignment—and only in a limited category of music-royalty cases. *See* 28 U.S.C. § 137(b) (requiring random assignment of "rate court proceedings"). Across the federal courts, exceptions to random case assignment abound. In the Southern District of New York, for example, senior judges and visiting judges are invited to select the type of cases over which they will preside. S.D.N.Y. Rules for the Division of Business Among District Judges, Rule 11 ("If a senior judge is willing and able to undertake assignment of pending cases from other judges, that judge may . . . accept assignment of all or any part of any case from any judge on mutual consent"); S.D.N.Y. Rules for the Division of Business Among District Judges, Rule 12 ("When a visiting judge is assigned to this district, that judge shall advise

the assignment committee of the number and categories of pending cases which
that judge is required or willing to accept.").

In the Western District of Texas, an incarcerated plaintiff who has previously
brought a civil rights action and then files another one, no matter the basis, will
have their subsequent case assigned to the same judge who presided over the first.
Plan A (Amended), Amended Plan for Random and Direct Assignment of Cases in
Multi-Judge Divisions at 2 (W.D. Tex. May 28, 2003). Similarly, motions brought
pursuant to 28 U.S.C. § 2255 are assigned to the same judge who sentenced the
moving party in the underlying criminal case. *Id*.

Local rules that permit the assignment of a later-filed matter to a judge
presiding over an earlier-filed "related case" also circumvent random case
assignment. Though intended to promote judicial efficiency, related cases rules
may permit parties or judges to steer certain cases to a particular judge, thereby
avoiding random assignment.

In certain multi-division federal district courts, some divisions have only one
district judge, and that judge hears all cases filed in that division. In those
divisions, there is no random case assignment; all cases are assigned to the same
individual judge. Filing in those divisions is a form of judge-shopping because the
filing of the case guarantees assignment to one judge. The Northern and Western
Districts of Texas have been the subject of significant scrutiny due to the manner in

which single-judge divisions appeared to encourage judge-shopping, especially in cases in which the parties sought nationwide or statewide injunctions. Despite that scrutiny, the single-judge divisions, and the potential for judge-shopping they create, remain in place.

**B.      No Federal Statute or Federal Rule Prohibits Judge-Shopping.**

No law prohibits the conduct found objectionable here. The Judicial Conference recently addressed a limited category of judge-shopping and nonrandom case assignment. In March 2024, Judge Gregory Van Tatenhove, Chair of the Judicial Conference's Committee on Court Administration and Case Management, sent a memorandum to all district judges, announcing that the Judicial Conference had approved a policy regarding case assignment practices. Mem. from Gregory F. Van Tatenhove, Chair, Committee on Court Administration and Case Management, to Judges, United States District Courts, District Court Executives, and Clerks, United States District Courts (March 15, 2024). The policy recommended that district courts should assign cases district-wide, even when they are filed in single-judge divisions, if they seek to "bar or mandate statewide

enforcement of a state law" or "bar or mandate nationwide enforcement of a federal law." *Id.* at 1.[4]

The Rules Enabling Act describes the process through which a new federal rule or amendment to a federal rule is proposed. 28 U.S.C. § 2073. The March 2024 policy memorandum did not follow this process, and did not create binding law. A new federal rule, or an amendment to an existing federal rule, must be proposed by one of the Judicial Conference's Advisory Rules Committees, which must then seek permission from the Judicial Conference's Committee on Rules of Practice and Procedure ("the Standing Committee") to publish a draft of the proposed rule. U.S. Courts, *How the Rulemaking Process Works*, https://www.uscourts.gov/forms-rules/about-rulemaking-process/how-rulemaking-process-works (last visited July 22, 2025). Then, the proposed rule is evaluated through a multi-step process that involves numerous public hearings and

---

[4]     On March 21, 2024, Senator Schumer wrote Chief Judge Godbey of the Northern District of Texas to "encourage[] the District Court for the Northern District of Texas to implement the Judicial Conference's new policy regarding judge shopping." Letter from Charles E. Schumer, U.S. Senator, to the Honorable David C. Godbey, Chief Judge (March 21, 2024). Judge Godbey replied that "[t]he district judges of the Northern District of Texas met on March 27, 2024, and discussed case assignment," and that "[t]he consensus was not to make any change to our case assignment process at this time." Letter from David C. Godbey, Chief Judge, to the Honorable Charles E. Schumer (March 29, 2024).

opportunity for public comment. Katherine A. Macfarlane, *A New Approach to Local Rules*, 11 STAN. J. CIV. RTS. & CIV. LIBERTIES 121, 133–35 (2015).

In an April 9, 2024 meeting, the Advisory Committee on Civil Rules decided to delay any action that would result in the consideration of a federal rule regarding random case assignment. Advisory Committee on Civil Rules, Agenda Book, 565 (April 9, 2024). To date, no federal rule prohibits judge-shopping. Congress has considered but never passed a law that would address various forms of judge-shopping and nonrandom case assignment.

### C.    Imposing Sanctions for Alleged Judge-Shopping Creates Inconsistent Outcomes Across the Federal District Courts.

Despite the attention that judge-shopping has received—for example, in the Western and Northern Districts of Texas—the conduct has not resulted in sanctions.

Shortly after his confirmation to the Western District of Texas's Waco Division, Judge Alan D. Albright, the division's only judge, encouraged patent plaintiffs to file in the Waco Division, ensuring his assignment to their cases. *See* J. Jonas Anderson & Paul R. Gugliuzza, *Federal Judge Seeks Patent Cases*, 71 DUKE L.J. 419, 448–49 (2021). Certain plaintiffs that filed in Waco "were judge shopping." *Id.* at 424. On July 25, 2022, the Western District's then-Chief Judge Orlando Garcia ordered the random assignment of patent cases originally filed in the Waco Division, which otherwise would be assigned directly to Judge Albright,

22

to one of several judges in the Western District. Macfarlane, *Constitutional Case Assignment*, *supra*, at 1014; Order Assigning the Business of the Court as It Relates to Patent Cases (W.D. Tex. July 25, 2022). None of the plaintiffs that "shopped" for Judge Albright were sanctioned. Plaintiffs with non-patent cases can still direct their cases to Judge Albright by filing in the Waco Division. Amended Order Assigning the Business of the Court (W.D. Tex. May 31, 2024).

In 2023, Northern District of Texas Judge Matthew Kacsmaryk heard a motion for change of venue premised on the argument that plaintiffs had impermissibly filed in the Amarillo Division, where all cases are assigned to Judge Kacsmaryk, as a form of judge-shopping. *Utah v. Walsh*, No. 2:23-CV-016-Z, 2023 WL 2663256, at *4 (N.D. Tex. Mar. 28, 2023); Motion to Transfer Venue at 2, *Walsh*, No. 23-cv-016-Z (Feb. 7, 2023) (stating that "[p]laintiffs' and other litigants' ongoing tactic of filing many of their lawsuits against the federal government in single-judge divisions, or divisions where they are otherwise almost always guaranteed to procure a particular judge, undermines public confidence in the administration of justice"). In denying the motion, the court held that "Section 1404 does not require the Court to guess as to Plaintiffs' subjective motivations for choosing the forum." *Walsh*, 2023 WL 2663256, at *6. The parties accused of judge-shopping were not sanctioned.

## **CONCLUSION**

The Sanctions Order in this case should be vacated. It was issued by a judge without jurisdiction, violated Federal Rules of Civil Procedure 41(a) and 83(b), and was premised on the purported violation of a principle—judge-shopping—that federal law does not prohibit.

Respectfully submitted, this 4th day of August, 2025.

*/s/ Michael L. Eber*
Michael L. Eber
Georgia Bar No. 859338
T. Brandon Waddell
Georgia Bar No. 252639
Ashley C. Brown
Georgia Bar No. 287373
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
*meber@caplancobb.com*
*bwaddell@caplancobb.com*
*abrown@caplancobb.com*

John H. Fleming
Georgia Bar No. 263250
**EVERSHEDS SUTHERLAND LLP**
999 Peachtree Street NE
Atlanta, Georgia 30309
Tel: (404) 853-8065
*johnfleming@eversheds-sutherland.com*

*Counsel for Amici Curiae Law Professors*

24

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 29(a)(5). This brief contains 5,427 words.

I further certify that this brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirement of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

This 4th day of August, 2025.

*/s/ Michael L. Eber*
Michael L. Eber
Georgia Bar No. 859338
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
*meber@caplancobb.com*

*Counsel for Amici Curiae Law Professors*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day caused a true and correct copy of the

foregoing document to be filed with the clerk's office by this Court's CM/ECF

system, which will serve a true and correct copy of the same upon all counsel of

record.

This 4th day of August, 2025.

*/s/ Michael L. Eber*
Michael L. Eber
Georgia Bar No. 859338
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
*meber@caplancobb.com*

*Counsel for Amici Curiae Law Professors*

# APPENDIX

## LIST OF *AMICI CURIAE* LAW PROFESSORS[5]

Maureen S. Carroll
Professor of Law
University of Michigan Law School

Paul R. Gugliuzza
Professor of Law
University of Texas School of Law

Allan Ides
Professor of Law
Loyola Law School, Los Angeles

Katherine A. Macfarlane
Professor of Law
Syracuse University College of Law

Portia Pedro
Associate Professor of Law
Boston University School of Law

Elizabeth G. Thornburg
Professor Emeritus of Law
Southern Methodist University Dedman School of Law

Howard M. Wasserman
Professor of Law
Florida International University College of Law

---

[5]    Institutions are listed for affiliation purposes only. All signatories are participating in their individual capacity, not on behalf of their institutions.