In the
# United States Court of Appeals for
# the Eleventh Circuit

BOE, ET AL. v. MARSHALL, ET AL.,
(IN RE: MELODY H. EAGAN & JEFFREY P. DOSS)

―――――――――――

On Appeal from the United States District Court
for the Middle District of Alabama
(Case No. 2:22-CV-184-LCB-CWB)

―――――――――――

## APPELLANTS MELODY H. EAGAN AND JEFFREY P. DOSS'S REPLY BRIEF

―――――――――――

Richard Klugh
Jenny Wilson
KLUGH WILSON LLC
40 NW Third Street, PH 1
Miami, Florida 33128
Tel: (305) 536-1191

Robert B. Remar
SMITH GAMBRELL &
RUSSELL, LLP
1105 West Peachtree Street NE
Suite 1000
Atlanta, Georgia 30309
Tel: (404) 815-3568

*David Oscar Markus
MARKUS/MOSS PLLC
40 NW Third Street, PH 1
Miami, Florida 33128
Tel: (305) 379-6667
dmarkus@markuslaw.com

*Counsel of record for Appellants
Eagan and Doss

## TABLE OF CONTENTS

TABLE OF CITATIONS ............................................................................iii

INTRODUCTION.................................................................................. 1

ARGUMENT AND CITATIONS OF AUTHORITY ................................. 6

    I.    RULE 41 GRANTS PLAINTIFFS AN UNQUALIFIED RIGHT TO DISMISS, REGARDLESS OF THE REASONS FOR DOING SO ................................................. 6

        A. *Bellsouth* Does Not Control This Case ............................. 10

        B. After A Lawful Dismissal, Nothing In Rule 41 Or Any Other Rule Prohibits Refiling .................................. 14

        C. Sanctions Cannot Be Based On "Parade Of Horribles" Hypotheticals Or Counsel's Answers ............. 19

        D. *De Novo* Review Is Required Here Because These Sanctions Rest On Legal Errors, Not Courtroom Disruption ........................................................................ 23

    II.    EAGAN AND DOSS HAD A GOOD-FAITH OBJECTIVELY REASONABLE BELIEF THEIR CONDUCT WAS PERMISSIBLE AND WERE NOT ON NOTICE THAT RULE 41 WAS SUBSTANTIALLY NARROWED BY A NEW, POLICY-BASED JUDICIAL LIMITATION ...................................................................... 26

        A. Objective Reasonableness Forecloses Any Finding Of Bad Faith ................................................................... 26

B. *Bellsouth* Provided No Notice That Exercising Rule 41 Rights And Refiling In Another District Is Prohibited ........................................................................ 27

C. The District Court's Factual Findings Are Clearly Erroneous ............................................................... 29

III. THE SANCTIONS PROCEEDINGS VIOLATED DUE PROCESS .............................................................. 31

CONCLUSION ........................................................................ 33

# TABLE OF CITATIONS

**CASES:**

*Absolute Activist Value Master Fund Ltd. v. Devine,*
    998 F.3d 1258 (11th Cir. 2021) ..................................................... 15

*Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069 (8th Cir. 2017) ............... 17

*Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367 (11th Cir. 1992) .............. 26

*Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287 (5th Cir. 2016)........ 15

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) .............. 14, 15, 16

*In re BellSouth Corp.*, 334 F.3d 941
    (11th Cir. 2003) ..................................... 3, 4, 5, 6, 10-14, 23, 25, 27

*In re Fieger*, 191 F.3d 451, 1999 WL 717991 (6th Cir. 1999) ................ 18

*In re Finklestein*, 901 F. 2d 1560 (11th Cir. 1990)................ 24, 25, 27, 28

*In re Ruffalo*, 390 U.S. 544 (1968)........................................................... 32

*Grievance Adm'r v. Fried,* 570 N.W. 2d 262 (Mich. 1997) ..................... 12

*McCuin v. Texas Power & Light,* 714 F.2d 1255 (5th Cir. 1983).......12-14

*Matthews v. Gaither*, 902 F.2d 877 (11th Cir. 1990) ......................... 7, 11

*Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters*,
    506 F.2d 914 (5th Cir. 1975) ....................................................16-19

*Pub. Health Tr. of Dade Cnty. v. Lake Aircraft, Inc.*,
    992 F.2d 291 (11th Cir. 1993) ....................................................... 17

*Schlumberger Technologies, Inc. v. Wiley*,
　　113 F.3d 1553 (11th Cir. 1997) ......................................... 23, 24, 25

*Thomas v. Tenneco Packaging Co. Inc.*,
　　293 F.3d 1306 (11th Cir. 2002) ..................................................... 27

*United States v. Gillis*, 938 F.3d 1181 (11th Cir. 2019) ......................... 11

*United States v. Jackson*, 55 F.4th 846 (11th Cir. 2022) ........................ 11

*United States v. Shaygan*, 652 F.3d 1297 (11th Cir. 2011) .................... 16

*United States v. Solomon*, 136 F.4th 1310 (11th Cir. 2025) ................... 11

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
　　455 U.S 489 (1982) ........................................................................ 28

*Wolters Kluwer v. Scivantage*, 564 F.3d 110 (2d Cir. 2009) ................... 17

## STATUTORY AND OTHER AUTHORITY:

28 U.S.C. § 292(b) .................................................................................. 31

28 U.S.C. § 455 ...................................................................................... 10

Federal Rule of Civil Procedure 41
　　....................... 1-7, 9, 10, 14, 15, 16, 19, 20, 21, 22, 25-27, 29, 33, 34

# INTRODUCTION

Appellants Melody Eagan and Jeffrey Doss are well-respected attorneys from a highly regarded firm who acted in good faith and in accordance with the plain text of the Federal Rules of Civil Procedure. They concurred in a collective decision to do exactly what the Rules expressly permit: to exercise the absolute, self-executing right to voluntarily dismiss a case on behalf of their clients before a responsive pleading was filed and then refile a valid complaint in a proper venue with new plaintiffs. The district court nevertheless imposed punitive, reputation-destroying sanctions, not because Eagan and Doss violated any rule or binding precedent, but because the court disapproved of the consequences of a dismissal that Rule 41 unconditionally permits. That result cannot be squared with the text of Rule 41, this Court's precedents, or the constitutional minimum of due process. The sanctions must be reversed.

The starting point, and the ending point, should be the Rule itself. Federal Rule of Civil Procedure 41(a)(1)(A)(i) gives plaintiffs an unqualified right to dismiss an action without a court order before a responsive pleading is filed. The Rule does not require judicial

permission. It does not require counsel to explain or justify their motives. And it does not condition dismissal on whether a court approves of the dismissal's practical effects, including effects on judicial assignment.

Appellee does not dispute that Rule 41 says what it says. Rather, Appellee asks this Court to endorse rewriting Rule 41 to eliminate the right to dismiss when a court suspects what it views as an improper purpose or dislikes the downstream consequences of the dismissal. This sort of subjective limitation is not found in Rule 41's text, its history, or any controlling precedent, and courts do not have authority to amend the Federal Rules through inherent power.

Due process supplies an independent and dispositive reason these sanctions cannot stand. An attorney may not be punished under a court's inherent power unless the conduct violates a precise rule, standard, or law, and unless the attorney had fair notice that the conduct could give rise to sanctions. This requirement is not technical or abstract. It exists because punitive sanctions inflict lasting professional harm. A lawyer's reputation is one of her most valuable assets, and once damaged, it is hard to repair. Here, the district court identified no rule, precedent, or settled standard that prohibited what Eagan and Doss did. Instead, it

retroactively declared that rule-authorized conduct became sanctionable based on the court's view of counsel's motives and the consequences of a dismissal. That is precisely what due process forbids: punishment for violating an unwritten, after-the-fact standard that no reasonable lawyer could have anticipated. Lawyers cannot conform their conduct to standards that are announced only after punishment is imposed, and the law does not permit the destruction of a lawyer's professional reputation on that basis.

Unable to identify any violated rule, Appellee relies on an expansive misreading of this Court's decision in *In re BellSouth*. That reliance collapses under even minimal scrutiny. *BellSouth* is not a Rule 41 case. It addressed a narrow and extreme circumstance involving an affirmative contrivance (retaining a judge's family member) designed to force the judge's recusal. It did not hold that the exercise of a self-executing Rule 41 dismissal constitutes misconduct. It did not announce a free-floating "bad-faith contrivance" test. And it did not suggest that routine litigation conduct expressly authorized by the Federal Rules may be punished whenever a court perceives judge shopping. Appellee's effort to analogize a voluntary dismissal to retaining a judge's family member

to prompt recusal ignores both *BellSouth's* holding and the Rules. Far from being a covert manipulation, a Rule 41 dismissal is a transparent procedural act the Rules expressly authorize. Forum selection, plaintiff selection, and strategic refiling are ordinary features of federal litigation. Treating them as sanctionable "interference" converts lawful advocacy into misconduct based solely on judicial displeasure.

The undisputed record underscores that Eagan and Doss should not have been sanctioned. Every attorney involved in the decision to dismiss and refile testified that they believed Rule 41 meant exactly what it says. The nation's leading expert on sanctions law testified that a reasonable lawyer would have understood that Rule 41 permits dismissal for any reason. Civil-procedure scholars agree. No witness testified that Eagan or Doss violated a rule, precedent, or ethical obligation. And no case cited by the district court or Appellee put counsel on notice that concurring in a collective professional decision to exercise a Rule 41 dismissal could expose them to punitive sanctions. Any reasonable lawyer would have understood that dismissing as of right and refiling with different plaintiffs in a different forum was lawful litigation strategy, not sanctionable misconduct.

After brushing aside the text of Rule 41 and the actual holding of *BellSouth,* Appellee turns to due process, only to concede the core problem. Appellee does not defend the procedures used by the investigative panel as constitutionally adequate. Appellee argues instead that Appellants were not entitled to due process at that stage at all (even though the district court publicly released the panel's report declaring misconduct).

Tacitly conceding the tenuous nature of this argument, Appellee claims that a later show-cause hearing cured everything, while continuing to rely on fact-finding and narrative formed during the investigative process. This Court has rejected this approach. Once a sanctions proceeding is launched in a manner infected by structural bias, the damage is done. Due process requires an impartial tribunal from the outset, not a retroactive repair by the same trial court that triggered the investigation, considered itself the aggrieved party, and now defends on appeal the punitive order it entered.[1]

---

[1] Contrary to this Court's order requiring the Middle District of Alabama to file a response brief, counsel for Appellee instead entered an appearance on behalf of Hon. Liles C. Burke, the judge who imposed the sanctions order.

At bottom, Appellee proposes a regime in which district courts may rewrite procedural rules, probe lawyers' strategic decisions and privileged communications, invent unwritten duties, and punish counsel for exercising express procedural rights—authority found nowhere in the Federal Rules or this Court's precedent. Appellee's defense confirms an unavoidable conclusion: these sanctions are untethered to law. They do not rest on Rule 41's text. They do not rest on *BellSouth's* holding. They rest on a trial court's perception that counsel's litigation decisions offended the judicial assignment process and, ultimately, the court itself. But the Federal Rules do not bend to judicial dissatisfaction. Our system of laws does not permit courts to punish lawyers for exercising express procedural rights without notice, text, or precedent. The sanctions order must be reversed.

## ARGUMENT AND CITATIONS OF AUTHORITY

## I. RULE 41 GRANTS PLAINTIFFS AN UNQUALIFIED RIGHT TO DISMISS, REGARDLESS OF THE REASONS FOR DOING SO.

The text of Rule 41(a)(1)(A)(i) is unambiguous: a plaintiff "may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for

summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). That provision grants an "unconditional right to dismiss." *Matthews v. Gaither*, 902 F.2d 877, 880 (11th Cir. 1990). Under Appellee's reading, however, "unconditional" does not mean "unconditional."

Rule 41 does not require a showing of good cause. Appellee acknowledges that premise but argues that Rule 41 "cannot be wielded by a lawyer to undermine the orderly administration of justice." Appellee Br. at 77. That claim, however, only highlights the wholly subjective, amorphous, and novel standard that Appellee proposes: at what point does exercising an express and unconditional right "undermine the orderly administration of justice"? Appellee offers no answer and identifies no case articulating the boundary lines of that standard. Neither the district court's order nor Appellee's brief articulates any principled test for when exercising a right on behalf of a client expressly conferred by the Federal Rules becomes sanctionable. Instead, Appellee sidesteps that question by arguing that, regardless of what Rule 41 says, Eagan and Doss should be sanctioned for interfering with the judicial-assignment procedures of the Northern and Middle Districts.

Notably, this premise is unmoored from the proceedings below. Before the panel and the district court, Eagan and Doss were charged with and found guilty of interfering with the "random" case-assignment procedures in the Northern and Middle Districts.[2] As previously explained—and now not disputed by Appellee—neither *Ladinsky* nor *Eknes-Tucker* was randomly assigned to Appellee. Judge Axon directly (not randomly) assigned *Ladinsky* to Appellee, and Judge Huffaker directly (not randomly) reassigned *Eknes-Tucker* to Appellee.

This is an important distinction. As a factual matter, Eagan and Doss did nothing to interfere with any "random" assignment, and tellingly Appellee recharacterizes the alleged offense on appeal. Appellee now claims that Eagan and Doss interfered with the judicial-assignment procedures generally. Whatever those unspecified procedures may be, they are neither public nor in the record. Nor is there any evidence that Eagan and Doss were aware of them prior to being sanctioned.

---

[2] The panel and district court repeatedly cited the alleged wrongdoing as the attempted manipulation of the "random" case-assignment procedures—over fifty times in their orders initiating proceedings, finding misconduct, ordering them to show cause, and imposing sanctions. (*Vague*, DE:1:5; DE:70; DE:406; DE:483; DE:484; DE:711). Not once did they cite the charge or offense as interference with the "judicial assignment process" in general.

Appellee's theory—an unwritten prohibition on dismissal to avoid a judge, an adverse ruling, or perceived "judge-shopping"—does not appear in Rule 41 and has been universally rejected by every Circuit Court to have considered the issue. This Court should follow those decisions and reaffirm this well-established holding: Rule 41 means what it says, and cases may be dismissed, unconditionally.

Recognizing the flaw in its position, Appellee retreats from the dismissal itself and claims instead that sanctions were imposed for filing a new complaint with different plaintiffs in a different jurisdiction because doing so allegedly permitted counsel to "select the judge." Appellee Br. at 50. That theory fares no better. Appellee concedes that the new complaint was proper in every respect. The *Eknes-Tucker* filing did not violate any Federal Rule, any local rule, or any case authority. And it did not "select the judge." *Eknes-Tucker* was randomly assigned in the ordinary course and then transferred to Judge Burke, specially sitting as a Middle District judge. Filing a new, valid complaint in a proper forum is ordinary litigation conduct. It is not sanctionable.

## A. *BellSouth* Does Not Control This Case.

To graft an atextual restriction on Rule 41, Appellee relies on *In re BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003). [3] This argument fails.

First, *BellSouth* did not address Rule 41; instead, it dealt with a scheme by a party to exploit 28 U.S.C. § 455 (i.e., the recusal statute) by hiring the judge's nephew as counsel to force the judge's recusal. This was, in this Court's words, a case of "contriving to engineer the recusal of a district judge by hiring a close relative of the judge as counsel." *BellSouth Corp.*, 334 F.3d at 943. On mandamus review, the split panel declined to issue the writ, finding petitioners failed to demonstrate a "clear and indisputable right to relief or demonstrable justice." *Id.* at 955-56.

As a matter of law and fact, nothing about *BellSouth* resembles what happened here. Stretching *BellSouth* to apply to the facts of this case would defy two important rules. First, an issue must have been unmistakably litigated and decided to have precedential effect. This

---

[3] Appellee now deems *BellSouth* to be "controlling," "clear," and "unambiguous" precedent, Appellee Br. at 45-46, 50, but *BellSouth* was not cited in Appellee's order first raising "judge shopping" concerns. (*Walker*, DE:24).

Court "will not read precedent to have resolved an issue that was not before the court." *United States v. Solomon*, 136 F.4th 1310, 1320 (11th Cir. 2025). Indeed, "questions which merely lurk in the record . . . are not to be considered as having been so decided as to constitute precedents." *United States v. Jackson*, 55 F.4th 846, 853 (11th Cir. 2022). Second, a panel of this Court cannot overrule another panel's prior decision. *See, e.g.*, *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (prior panel rule means prior precedent controls "unless and until it is overruled or undermined to the point of abrogation by an opinion of the Supreme Court or of this Court sitting en banc").

Accepting the Appellee's position, however, would mean that *BellSouth* (i) decided an issue that was not before that Court (i.e., voluntary dismissals, even if motivated in part by a judge's identity, are forbidden), and (ii) overruled prior precedent (i.e., Rule 41 dismissals are no longer "unconditional," *Matthews*, 902 F.2d at 880, but merely permissive when acceptable motivations, whatever those may be, are at work).

Acknowledging that tension, Appellee seizes on stray language from *BellSouth*'s reasoning—not its holding—about "contrivance[s] to

interfere with the judicial assignment process." This language, though, cannot fairly be stretched to apply to Eagan and Doss's agreement with co-counsel's collective decision to dismiss *Ladinsky* and file *Eknes-Tucker*.

As a threshold matter, unlike Rule 41 and a voluntary dismissal, there is no unconditional right to intentionally force a judge's recusal, the situation facing this Court in *BellSouth*. Accordingly, *BellSouth,* and the cases it cites, must be read in context. For example, in the cited case of *Grievance Adm'r v. Fried,* 570 N.W. 2d 262 (Mich. 1997), the court recognized that many common tactics affect forum choice. It does not violate ethical rules to file "a motion for change of venue that recites legal grounds, but is motivated by a desire to move the case to a jurisdiction where [she] believes success is more likely." *Id*. at 267. Likewise, *McCuin v. Texas Power & Light,* 714 F.2d 1255, 1260 (5th Cir. 1983) (also cited in *BellSouth*) explained that, in our adversary system, "we tolerate a certain amount of manipulation without inquiry into motive," as litigants naturally make strategic choices. The conduct here—a straightforward voluntary dismissal and re-filing—falls squarely within those "permissible steps," not the tactic disallowed in *BellSouth*.

Reading *BellSouth* broadly, as Appellee proposes, would lead to absurd results and would conflict with settled law recognizing that forum-driven strategy is not only permissible but inherent in our adversary system. Under Appellee's theory, virtually any strategic act affecting venue or decisionmaker—removal, remand, transfer, venue selection, etc.—could be recharacterized as a sanctionable "contrivance" or, at a minimum, trigger multi-year inquiries into privileged communications regarding the reasons for the decision.

That cannot be right. As the Fifth Circuit explained in *McCuin*, forum shopping "is sanctioned by our judicial system" and is "as American as the Constitution." 714 F.2d at 1261. Our jurisdictional and venue statutes do not merely tolerate choice. They invite it. Litigants may select among state and federal courts, choose among multiple proper venues, and invoke procedural mechanisms that determine who will decide the case. The motive for those choices is "ordinarily of no moment." *Id*. In fact, until this case, no reported Eleventh Circuit decision had reported any inquiry into a litigant's decision to dismiss a case and file a new one. (And it is hard to understand the concern here given that the new case was transferred back to Judge Burke.)

Likewise, before this case, no court had construed *BellSouth* to reach anything except forced recusals. This Court has consistently distinguished legitimate procedural maneuvers from the conduct in *BellSouth*. The district court did the opposite. It announced a new, unwritten rule that the motivations behind a Rule 41 dismissal may be investigated. But dismissals taken for strategic reasons fall squarely within the zone of tolerated, client-serving conduct recognized by *McCuin* and decades of federal practice. *BellSouth* does not transform that permissible conduct into sanctionable misconduct.

## B. After a Lawful Dismissal, Nothing in Rule 41 or Any Other Rule Prohibits a New Filing.

The sanctions order cannot be reconciled with *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), which recognizes (i) an absolute right under Rule 41(a)(1) to take one voluntary dismissal without prejudice, and (ii) sanctions cannot be imposed as a consequence of that voluntary dismissal.

Appellee never identifies any sanctionable conduct separate from the Rule 41 dismissal itself. The district court sanctioned Eagan and Doss's agreement with a collective decision to take a single voluntary dismissal without prejudice on behalf of their clients pursuant to Rule 41

and then lawfully file a new case with different plaintiffs in a proper venue.

*Cooter & Gell* makes clear that this precise conduct is permitted. The Supreme Court drew a clear and dispositive line. While a court may impose Rule 11 sanctions for misconduct that is separate from a voluntary dismissal and may even bar refiling as a sanction for that separate misconduct, the sanctions may not be imposed as a consequence of a voluntary dismissal itself. 496 U.S. at 396–97.

Other circuits have applied that holding. For example, in *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287 (5th Cir. 2016), the Fifth Circuit reviewed a district court order that dismissed an action without prejudice under Rule 41(a)(1) but conditioned refiling on bringing any future action before the same judge. The Fifth Circuit reversed, holding that the refiling restriction violated Rule 41 as interpreted by *Cooter & Gell*. While acknowledging that forum shopping "is not a trivial concern," the court explained that "Rule 41(a)(1) essentially permits forum shopping." *Id.* at 293.

Appellee relies on *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258 (11th Cir. 2021), to avoid that conclusion, but that

decision only reaffirmed that "Rule 41(a)(1)(A)(i) means precisely what it says," *id.* at 1264, citing *Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters*, 506 F.2d 914, 916 (5th Cir. 1975), for the proposition that this remains true even in the face of forum shopping objections. Like *Cooter & Gell*, *Absolute Activist* recognized that a district court retains collateral jurisdiction to impose sanctions for misconduct that is independent of the dismissal. But that safeguard has no bearing here, where the alleged misconduct arises from the dismissal itself.

Appellee next argues that the sanctions were not imposed merely for dismissal, but for the "totality of the circumstances." Putting aside that this alleged grievance is simply too vague to impose sanctions, the argument fails. Even accepting Appellee's framing, the supposed "scheme" consists entirely of lawful acts: a voluntary dismissal under Rule 41 (which Rule 41 expressly permits), followed by the filing of a separate lawsuit in a different court by different plaintiffs with independent standing in a proper venue (which no rule prohibits). Whatever the "totality of the circumstances" means, it comes no closer to pinpointing the "precise rule, standard, or law," *United States v. Shaygan*, 652 F.3d 1297, 1318-19 (11th Cir. 2011), that Eagan and Doss

purportedly violated. At each step, they (along with their co-counsel who collectively made this strategy decision) followed the Rules, and Appellee does not cite a single case authorizing punitive sanctions when each act is independently lawful.

Nor does Appellee meaningfully distinguish the clear consensus of other circuits. The Second, Fifth, and Eighth Circuits have all held that Rule 41 dismissals are not sanctionable even when undertaken to avoid a judge or forum. *Wolters Kluwer v. Scivantage*, 564 F.3d 110 (2d Cir. 2009); *Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters*, 506 F.2d 914, 916 (5th Cir. 1975); *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069 (8th Cir. 2017).[4]

Each Circuit Court to have considered this issue has reversed sanctions imposed due to supposed judge-shopping concerns surrounding voluntary dismissals. Appellee suggests these cases are distinguishable because they involved refiling by the same plaintiff. If, however, the same plaintiff may dismiss and refile, even for judge-related reasons, then it

---

[4] This Court has repeatedly emphasized that it does "not create intercircuit splits lightly." *Pub. Health Tr. of Dade Cnty. v. Lake Aircraft, Inc.*, 992 F.2d 291, 295 n.4 (11th Cir. 1993).

certainly is permissible for lawyers with different plaintiffs with independent standing to file a new action in a proper venue after a prior dismissal elsewhere.

Appellee's argument ultimately rests on the unfounded premise that Eagan and Doss engaged in a concerted effort to select a particular judge. But that premise is false. Eagan and Doss never sought to choose a judge, in sharp contrast with *In re Fieger*, 191 F.3d 451, 1999 WL 717991, at *1 (6th Cir. 1999), where counsel filed thirteen complaints, failed to designate the cases as related in violation of a local rule, and dismissed all but one to ensure that the lone surviving case landed before the desired judge.[5] Nothing remotely resembling that conduct occurred here.

At most, dismissal was motivated in part by Eagan and Doss's perceptions of Appellee. Such motivations, however, may legitimately drive a dismissal decision. In *Pilot Freight Carriers*, 506 F.2d at 917, the defendant urged the former Fifth Circuit to prevent the plaintiff from voluntarily dismissing the case, claiming that the dismissal was a

---

[5] Moreover, in *Fieger*, the attorney did not contest the substantive basis for his sanction, only procedural matters.

prelude to judge shopping following an unfavorable ruling. Nevertheless, the former Fifth Circuit rejected the defendant's invitation to rewrite Rule 41 and noted that the Rule "means precisely what it says." 506 F.2d at 915-17. No one was questioned about the reasons for the dismissal, let alone sanctioned. *Pilot Freight* is controlling. Under binding precedent, Rule 41 allows a litigant to voluntarily dismiss even if done so to evade a particular judge.[6]

## C. Sanctions Cannot Be Based on "Parade of Horribles" Hypotheticals or Counsel's Answers.

Unable to ground the sanctions order in Rule 41's text or what happened in this case, Appellee pivots to a "parade of horribles." He points to exchanges during the sanctions hearing in which the district court questioned counsel with extreme hypotheticals: dismissing "20

---

[6] Appellee mischaracterizes Appellants' discussion of *Pilot Freight*. The passage Appellee cites (p. 55 n.8) was included to rebut the sanctions order's assertion that that "the holding in *Pilot* suggests that Rule 41(a)(1) does not permit judge-shopping precisely because judge-shopping is prohibited by other means." Appellant Br. at 39. Eagan and Doss's opening brief pointed out that this assertion distorts the holding in *Pilot Freight*: the decision cannot fairly be cited for the proposition that "other means" allow district courts to punish the exercise of Rule 41 rights when courts suspect judge-shopping. Appellee's reliance on *Pilot Freight* for this principle is incorrect. *Pilot Freight* stands for the opposite principle: even when there are concerns about forum-shopping, the broad rights conferred under Rule 41 trump those concerns.

times," hand-picking a judge, or dismissing a case to avoid a judge based on race. Appellee Br. at 61–64. None of that occurred here, nor did it relate to the undisputed collective reasoning of the *Ladinsky* team to exercise their unconditional right under Rule 41 and file a new case.

Invoking these imagined extremes improperly conflates Appellants' actual conduct with hypothetical abuses of Rule 41. The "20 dismissals," "unlimited judge-shopping," and race-based scenarios were hypotheticals posed by the district court to test the outer limits of a strict textual reading of Rule 41. When the court asked whether a strict textual reading of Rule 41 theoretically permitted multiple dismissals, counsel answered yes. Appellee repackages those good-faith answers as evidence of misconduct and bad faith by Eagan and Doss, creating a dangerous trap for advocates who advance a faithful reading of the Rules with which a court may disagree. The mere possibility that a Rule could be pushed to an extreme does not justify sanctions for the actual conduct at issue here, which involved a single, lawful dismissal.

That is not how inherent-authority sanctions work. Lawyers cannot be punished because the logical extension of a Rule might permit conduct a court finds distasteful. The existence of extreme theoretical possibilities

does not convert lawful conduct into sanctionable misconduct. Nor does it mean courts lack tools to address genuinely abusive behavior. Race-based dismissals or repeated patterns of dismiss-and-refile may be actionable through independent doctrines, with notice and on an appropriate record, but none of those things happened here. Sanctioning Eagan and Doss based on their answers to Appellee's abstract hypotheticals rather than on their actual conduct is an abuse of the district court's inherent power. It also reinforces the danger to the judicial process of allowing a court to question lawyers as to why they made lawful strategic decisions on behalf of their clients.

Appellee argues that failing to sanction Eagan and Doss will open the door to widespread abuse of Rule 41. That concern is belied by the decades that Rule 41 has been on the books. The Second, Fifth, and Eight Circuits have rejected Appellee's view of Rule 41. Yet there is no widespread reporting of abuses about which Appellee warns.

Regardless, existing safeguards address these concerns. Rule 41's two-dismissal rule provides that a notice of dismissal "operates as an adjudication on the merits" if the plaintiff has previously dismissed an action based on the same claim. If an attorney were to manipulate a

revolving door of plaintiffs to evade that restriction, the conduct might raise separate issues—but even then, it would require notice. At the time Eagan and Doss refiled, they had no notice that refiling was prohibited. They invoked Rule 41 exactly once.

To the extent Appellee believes Rule 41 creates a systemic "judge shopping" problem—and, again, no rampant problem has been reported since the Second, Fifth, and Eighth Circuits rejected Appellee's view of Rule 41—the remedy is not ad hoc punishment through inherent-authority sanctions. The solution is straightforward: amend Rule 41 or adopt a local rule addressing the perceived abuse, as other district courts have done. Courts may not rewrite the Federal Rules case by case under the guise of sanctions, particularly where the text permits the very conduct being punished.

Finally, Appellee's brief makes clear that Eagan and Doss were sanctioned not only for their conduct, but for defending it. Appellee repeatedly characterizes their refusal to concede wrongdoing as "evasiveness." But maintaining a valid legal position is not dishonesty. Sanctioning lawyers for declining to capitulate to a court's legal theory

during a show-cause proceeding chills the right to a vigorous defense and exceeds the proper bounds of the inherent sanctions power.

### D. *De Novo* Review is Required Here Because These Sanctions Rest on Legal Errors, Not Courtroom Disruption.

Appellee's reliance on *Schlumberger Technologies, Inc. v. Wiley*, 113 F.3d 1553 (11th Cir. 1997), and *In re BellSouth* to argue for a deferential abuse-of-discretion standard is misplaced.

*Schlumberger* recognizes that where sanctions proceedings involve important legal questions or mixed questions of law and fact, *de novo* review is warranted. *Schlumberger* carved out a narrow category for conduct threatening the "orderly administration of justice," where more deference may be warranted. But this category was reserved for in-court disruptive behavior—conduct that delays trials or disrupts proceedings. This stands in contrast to decisions based on allegedly unethical conduct, where this Court reviews the application of rules to facts *de novo*. *See Schlumberger*, 113 F.3d at 1558 ("Even though Witten's conduct is related to the case at bar, that conduct occurred before the action was ever filed, did not occur in front of the district court, and *was not of a type to disrupt the proceedings before the court*") (emphasis added).

*Schlumberger* discussed and reconciled two lines of cases governing standards of review in attorney-disqualifications decisions. The orderly-administration-of-justice standard is reserved for rare cases. One example this Court gave was where "the disruptive effect of the attorney's conduct is evident" because "the court was forced to delay the beginning of the trial to hear testimony on a suppression motion that was utterly frivolous, to warn the attorney repeatedly about specific instances of misconduct, and to send the jury out of the courtroom no less than three times during the course of his opening statement." *Id.* at 1560.

As *Schlumberger* makes clear, that type of conduct stands in sharp contrast to those instances "where the district court's decision to disqualify an attorney was based on an alleged ethical violation," as is the case here. *Id.* In cases where conduct is "allegedly unethical," this Court "insist[s] that district courts rest their disqualification decisions on the violation of specific Rules of Professional Conduct, *not on some 'transcendental code of conduct that exists only in the subjective opinion of the court.'" Id.* at 1561 (emphasis added) (cleaned up) (quoting *In re Finklestein*, 901 F. 2d 1560, 1565 (11th Cir. 1990). And in reviewing those sanctions, this Court reviews "the district court's factual findings

for clear error and its application of the Rules to the facts *de novo*." *Id.* at 1558.

Appellee's argument would expand the "orderly administration" category to cover any conduct the district court subjectively views as a threat. If this were the rule, any district court could evade *de novo* review simply by characterizing the conduct as threatening. While *BellSouth* extended this category to forced recusal, it should not be extended further to cover Rule 41 dismissals. Doing so would collapse the distinct categories recognized in *Schlumberger* and effectively overrule *In re Finkelstein*, allowing sanctions based on a "transcendental code of conduct" to escape meaningful appellate review.

This case involves an unprecedented use of inherent authority to sanction strategic conduct permitted by the Rules. It raises important legal questions regarding the scope of Rule 41 and the notice required for sanctions. Because the district court's order rests on legal errors regarding the scope of Rule 41 and the applicability of *BellSouth*, this Court must review those legal conclusions *de novo*.

## II. EAGAN AND DOSS HAD A GOOD-FAITH OBJECTIVELY REASONABLE BELIEF THEIR CONDUCT WAS PERMISSIBLE AND WERE NOT ON NOTICE THAT RULE 41 WAS SUBSTANTIALLY NARROWED BY A NEW, POLICY-BASED JUDICIAL LIMITATION.

Because Eagan and Doss followed an objectively reasonable interpretation of the law, they did not act in bad faith. Even if this Court were to now impose a new atextual limitation on Rule 41, Eagan and Doss were not on notice of that limitation. Punishing them for reliance on a reasonable interpretation of then-existing law is the antithesis of the bad-faith standard.

### A. Objective Reasonableness Forecloses Any Finding of Bad Faith.

Eagan and Doss's interpretation of Rule 41 was both reasonable and correct. It has the support of the plain text of the Rule, the decisions of three other Circuits, the opinions of their co-counsel (who apologized but never recanted), and the expert opinion of Gregory Joseph, a leading authority on sanctions. The district court's decision to strike Mr. Joseph's opinion was an abuse of discretion because it ignored relevant evidence of the objective reasonableness of the attorneys' position. *See Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 374 (11th Cir. 1992) (abuse of discretion to ignore relevant evidence). It was not a legal opinion—it was what this

Court has recognized as being relevant to an inquiry like this one. *Finkelstein*, 901 F.2d at 1565. What is more, Appellee found that Eagan's and Doss's view of Rule 41 was "fanciful"—and, thus, bad faith—while disregarding relevant evidence that a "reasonable attorney would approve of [their] behavior." *Thomas v. Tenneco Packaging Co. Inc.*, 293 F.3d 1306, 1323 n.27 (11th Cir. 2002).

### B. *BellSouth* Provided No Notice That Exercising Rule 41 Rights and Refiling in Another District Is Prohibited.

There is no evidence that Eagan and Doss had subjective bad faith when they concurred in the team decision to dismiss *Ladinsky* pursuant to Rule 41 and file *Eknes-Tucker*. Attempting to show bad faith in exercising their clients' right to voluntarily dismiss, Appellee argues that *BellSouth* provided advance notice of sanctionable conduct. As discussed above, *BellSouth* did not address Rule 41 and provides notice only regarding the impropriety of forced statutory recusals. If a lawyer had searched for "Rule 41" on Westlaw or LexisNexis, *BellSouth* would not have been found. Scores of civil actions are dismissed under Rule 41 and refiled in preferred forums. Appellee's suggestion that a lawyer should have extrapolated from *BellSouth* a prohibition against using Rule 41 as Eagan, Doss, and their co-counsel did stretches the expectations imposed

on lawyers. Lawyers are expected to follow rules—not predict, with their careers on the line, how one judge might later interpret dicta involving distinct circumstances.

This case falls squarely under *In re Finkelstein*, 901 F.2d 1560. There was no "case law, applicable court rule, or lore of the profession" prohibiting dismissing a case and refiling in a different venue. The sanctions relied instead on a "transcendental code of conduct," punishing lawyers as much for defending against the sanctions as for the underlying conduct.

Appellee attempts to distinguish *Finkelstein* by claiming that the conduct here "threatens the orderly administration of justice." If interpreted as broadly as Appellee argues, the "orderly administration" exception would nullify *Finkelstein*, allowing courts to declare any conduct it dislikes a "threat" and impose sanctions without notice. Those vague standards would fail to give "fair warning" and encourage "arbitrary and discriminatory enforcement." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S 489, 498 (1982).

Appellee's proposed standard—prohibiting any conduct interfering with judicial assignments—is hopelessly overbroad. It would cover a wide

range of permissible strategy decisions. If adopted, this standard would usher in a new regime of judicial inquiry into attorney strategy and decision making, thereby fundamentally altering the role of lawyers and judges in our judicial system.

## C. The District Court's Factual Findings Are Clearly Erroneous.

The district court's sanctions order was influenced by its assessment of Eagan and Doss's testimony in its "show cause" proceeding. The very nature of that proceeding demonstrates the fundamental danger in permitting district courts to interrogate lawyers regarding their permitted litigation decisions. Eagan and Doss had an established, unconditional right to file a Rule 41 notice of dismissal on behalf of their clients and file a new case with new plaintiffs in another district. Their thought processes and strategy should not be subject to cross-examination by the district court and cannot be the basis for a finding of bad faith to support sanctions. This Court should therefore not consider the "factual findings" regarding Eagan and Doss's credibility and motives.

Even if considered, the record does not support those findings. Appellee argues that it was entitled to disbelieve Eagan and Doss based

on the district court's perceptions of their demeanor while answering its questions. Yet those findings disregard the consistent sequestered testimony of every other *Ladinsky* lawyer, none of whom was sanctioned.

The record establishes that the decision to dismiss was motivated by genuine strategic concerns, including a perceived unusual transfer from one judge to another which broke from standard practice in the Northern District. Appellee dismisses these concerns as "not credible," but disbelieving uncontradicted testimony corroborated by extrinsic facts is clear error. If not, then there are no safeguards against sanctions proceedings—courts can simply disregard unrebutted evidence and impose sanctions regardless of the record. Even assuming that the district court was permitted to question Eagan and Doss about their reasons for filing the notice of dismissal, it erred in finding "tone" and "demeanor" sufficient to reject a plausible explanation corroborated by every other *Ladinsky* lawyer. And it was an abuse of discretion to rationalize sanctions on this basis. Appellee has not cited a case where a

district court's finding of bad faith was premised exclusively on "tone and demeanor."[7]

## III. THE SANCTIONS PROCEEDINGS VIOLATED DUE PROCESS.

Appellee attempts to sidestep the constitutional due process defects in the sanctions proceedings by labeling them "investigatory." That label does not cure the problem. Appellee's contention—that attorneys are entitled to no due process protections when compelled to appear before a three-judge panel in an unprecedented proceeding where they were sequestered, prohibited from coordinating a defense, barred from hearing the testimony of other witnesses, and forced to proceed without notice of the charges or their potential exposure, so long as the proceeding is called an "investigation"—has no basis in law.

In any event, Appellee's insistence that the proceedings were merely "investigatory" misdescribes what actually occurred. The so-called investigation consisted of compelled, closed-door interrogations in

---

[7] Regarding Appellee's appointment to *Eknes-Tucker*, Appellee relies on an undocketed standing order that was unavailable to the public, not originally part of the record, and does not explain how Appellee came to be appointed to this specific case. The plain text of 28 U.S.C. § 292(b) does not appear to extend to this order, leaving the question raised by *amicus* unanswered.

which fact-finders elicited testimony while forbidding the lawyers from hearing the evidence against one another, and which ultimately became the basis for the next wave of proceedings. Characterizing that process as "investigatory" does not sanitize the constitutional violation, particularly where the testimony became the foundation upon which sanctions were based.

Nor was the panel's work purely investigatory in effect. The proceedings resulted in public findings of misconduct issued by three federal judges. That alone constitutes a cognizable injury. Appellee attempts to distinguish *In re Ruffalo*, 390 U.S. 544 (1968), but never addresses the core principle for which Eagan and Doss cited it: due process is violated when charges are "amended on the basis of the testimony of the accused." *Id*. at 551. That is exactly what occurred here. Only after the participants were compelled to testify were charges crafted based on the evidence gathered. The show-cause orders did not cure the violation. They underscored it. After being compelled to testify before the panel, Eagan and Doss were ordered by Appellee to show cause why they should not be sanctioned for testimony they gave in defense of their

reasonable litigation decisions. None of Appellee's cited cases resemble this unprecedented exercise of judicial power.

## CONCLUSION

Appellee asks this Court to validate a sanctions regime that punishes lawyers for exercising clear textual rights under the Federal Rules whenever a district court dislikes their perceived motives. Because Rule 41 and established precedent permit the conduct, and because Appellants lacked notice to the contrary, the sanctions order must be reversed and vacated.

If courts believe a rule reaches too broadly, the solution is not to sanction attorneys who exercise rights on behalf of their clients that are expressly conferred by that rule. If concerns exist about Rule 41, the Rules Committee can amend it, or District Courts can adopt local rules reassigning refiled cases to the original judge. What courts cannot do is what Appellee did here: punish lawyers for doing precisely what the Federal Rules permit.

Affirmance would have a chilling effect on zealous advocacy. Lawyers would be forced to guess whether their litigation strategies would be subject to judicial interrogation and then be deemed "improper"

by a court, even when those strategies are expressly authorized by the Federal Rules. That uncertainty would discourage lawyers from asserting their clients' rights and undermine the adversarial system. The proper remedy for perceived abuses of Rule 41 is rulemaking, not sanctions.

Respectfully submitted,

Richard Klugh
Jenny Wilson
KLUGH WILSON
40 NW Third Street, PH 1
Miami, Florida 33128
Tel: (305) 536-1191
rklugh@klughwilson.com
jenny@klughwilson.com

Robert B. Remar
SMITH GAMBRELL &
RUSSELL, LLP
1105 West Peachtree Street NE
Suite 1000
Atlanta, Georgia 30309
Tel: (404) 815-3568
Ga. Bar No. 600575
rremar@sgrlaw.com

David Oscar Markus*
MARKUS/MOSS PLLC
40 NW Third Street, PH 1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By:   /s/ David Oscar Markus
      David Oscar Markus
      Florida Bar No. 119318
      dmarkus@markuslaw.com

*Counsel of record for Appellants Eagan and Doss*

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7). According to the WordPerfect program on which it is written, the numbered pages of this brief contain 6486 words.

By: /s/ David Oscar Markus
DAVID OSCAR MARKUS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed on this 30th day of January 2026 and served on that date by ECF filing upon all counsel of record.

By: /s/ David Oscar Markus
DAVID OSCAR MARKUS