**United States Court of Appeals for the Eleventh Circuit**

BOE, ET AL. V. MARSHALL, ET AL.,
(IN RE: CARL CHARLES)

On Appeal from the United States District Court for the Middle District of

Alabama

(Case No. 2:22-CV-184-LCB-CWB)

## <u>REPLY BRIEF OF APPELLANT CARL CHARLES</u>

Barry A. Ragsdale
Robert S. Vance III
DOMINICK FELD HYDE, P.C.
1130 22nd Street South, Suite 4000
Birmingham, AL 35205
Tel.:  (205) 536-8888
bragsdale@dfhlaw.com
rvance@dfhlaw.com

W. Neil Eggleston
Afi Blackshear
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Tel.: (202) 389-5016
neil.eggleston@kirkland.com
afi.blackshear@kirkland.com

*Counsel for Appellant Carl Charles*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-3, Appellant Carl Charles states that he is an individual and that the following persons or entities may have an interest in the outcome of this appeal:

Alliance Defending Freedom—Counsel for Defendants

Assaf, Eugene F.—Counsel for Respondent

Austin, Sarah—Counsel for Plaintiff

Badham & Buck LLC—Counsel for Respondent

Bailey, Daryl D.—Defendant

Bainbridge Mims Rogers & Smith LLP—Counsel for Respondent

Balkoski, Katherine—Counsel for Respondent

Barnes, Brian W.—Counsel for Defendants

Beaverstock, Hon. Jeffrey U.—U.S. District Judge

Berg, Rachel—Counsel for Plaintiff

Bowdre, Alexander Barrett—Counsel for Defendants

Brooks, Roger G.—Counsel for Defendants

Bryan, Hon. Chad W.—U.S. Magistrate Judge

Buck, Brannon Jeffrey—Counsel for Respondent

Burke, Hon. Liles C.—U.S. District Judge

Carr, Danny—Defendant

Charles, Carl Solomon—Respondent

Cooper & Kirk, PLLC—Counsel for Defendants

Copeland Franco Screws & Gill—Counsel for Respondent

Crocker, Champ—Defendant

Davis, James William—Counsel for Defendants

Dominick Feld Hyde, P.C.—Counsel for Respondent

Doss, Jeffrey P.—Respondent/Appellant

Driver, Christopher B.—Counsel for Respondent

Eagan, Melody H.—Respondent/Appellant

Eggleston, Warren Neil—Counsel for Respondent

Esseks, James D.—Respondent

Farella Braun & Martell LLP—Counsel for Respondent

Faulks, LaTisha Gotell—Respondent

Frampton, Henry W. IV—Counsel for Defendants

Franklin, Samuel H.—Counsel for Respondent

GLBTQ Legal Advocates & Defenders—Counsel for Plaintiffs

Hartnett, Kathleen Roberta—Respondent

Holliday, Shannon Lynn—Counsel for Respondent

Human Rights Campaign Foundation—Counsel for Plaintiffs

Jenner & Block LLP—Counsel for Respondent

King & Spalding—Counsel for Plaintiffs

King, Mark Christian—Counsel for Respondent

Kirkland & Ellis LLP—Counsel for Respondent

LaCour Jr., Edmund Gerard—Counsel for Defendants

Levi, Jennifer L.—Respondent

Lightfoot, Franklin & White LLC—Counsel for Respondent

Marshall, Steve—Defendant

McCoy, Scott D.—Respondent

McKay, Charles A.—Counsel for Defendants

Mills, Christopher Ernest—Counsel for Defendants

Minter, Shannon—Respondent

National Center for Lesbian Rights—Counsel for Plaintiffs

Office of the Alabama Attorney General—Counsel for Defendants

Orr, Asaf—Respondent

Otterberg, April A.—Counsel for Respondent

Pacheco, Byron—Counsel for Respondent

Patterson, Peter A.—Counsel for Defendants

Peterson, Misty L.—Counsel for Plaintiffs

Prater IV, Harlan I.—Counsel for Respondent

Pratt, James Andrew—Counsel for Plaintiffs

Proctor, Hon. R. David—U.S. District Judge

Ragsdale, Barry Alan—Counsel for Respondent

Ramer, John D.—Counsel for Defendants

Reinke, Adam—Counsel for Plaintiffs

Rogers, Bruce Frederick—Counsel for Respondent

Schoenberg, Anthony Paul—Counsel for Respondent

Sechler, Philip A.—Counsel for Defendants

Segall, Robert David—Counsel for Respondent

Seiss, Benjamin Matthew—Counsel for Defendants

Shortnacy, Michael B.—Respondent

Soto, Diego Armando—Counsel for Plaintiffs

Southern Poverty Law Center—Counsel for Plaintiffs

Spero Law LLC—Counsel for Defendants

Stoll, Christopher F.—Counsel for Plaintiffs

Stone, Jessica Lynn—Counsel for Plaintiffs

Tarbox, James H.—Defendant

Terenzi, Elizabeth Nicholson—Counsel for Respondent

Thompson, David H.—Counsel for Defendants

Ugai, John Michael—Counsel for Respondent

Unikowsky, Adam Granich—Counsel for Respondent

Vague, Amie A.—Counsel for Plaintiffs

Vance III, Robert Smith—Counsel for Respondent

Ventiere, Jessica—Defendant

Warbelow, Sarah—Counsel for Plaintiffs

Watkins, Hon. William Keith—U.S. District Judge

Weaver, Cynthia Cheng-Wun—Counsel for Plaintiffs

Whelan, Amy—Counsel for Plaintiffs

Wilson, Thomas Alexander—Counsel for Defendants

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ............................................................ i

TABLE OF CONTENTS ...................................................................................... vi

TABLE OF AUTHORITIES.................................................................................. vii

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 1

    I.     THE APPELLEE'S BELATED ADMISSION. .......................................... 1

    II.    THE DISTRICT COURT APPLIED THE INCORRECT LEGAL
    STANDARD TO IMPOSE SANCTIONS ON CHARLES. ................................... 3

        A.   The Appellee's Error Was Not Invited........................................... 4

        B.   The Heightened Standard Applies to These Facts and Charges.................... 7

    III.   CHARLES TIMELY CORRECTED HIS TESTIMONY. ........................... 9

    IV.   THE DISTRICT COURT VIOLATED CHARLES' DUE PROCESS
    RIGHTS................................................................................................. 13

CONCLUSION .................................................................................................... 14

FRAP 32(g) CERTIFICATE OF COMPLIANCE ..................................... 16

CERTIFICATE OF SERVICE................................................................................ 17

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Cherry v. Dometic Corp.*,
  986 F.3d 1296 (11th Cir. 2021).................................................................. 6

*Donaldson v. Clark*,
  819 F.2d 1551 (11th Cir 1987).................................................................. 7

*Fried v. Town of Vienna*,
  No. 1:11CV992 JCC/TRJ, 2011 WL 5326050 (E.D. Va. Nov. 4, 2011) ............ 2, 5

*Garvey v. Roberts*,
  203 F.3d 580 (9th Cir. 2000)..................................................................... 9

*Holston v. Mora*,
  No. 22-12808, 2024 WL 3100779 (11th Cir. June 17, 2024)................................ 8

*Jekyll Island-State Park Auth. V. Polygroup Macau Ltd.*,
  140 F.4th 1304 (11th Cir. 2025)................................................................. 6

*Johnson v. United States*,
  780 F.2d 902 (11th Cir. 1986)................................................................ 14

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90, 111 S.Ct. 1711 (1991)........................................................... 6

*Kleiner v. First National Bank of Atlanta*,
  751 F.2d 1193 (11th Cir. 1985)................................................................. 7

*Mackler Productions, Inc. v. Cohen*,
  146 F.3d 126 (2d Cir. 1998)................................................................ 7, 12

*Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*,
  633 F.3d 1297 (11th Cir. 2011)................................................................. 8

*Peer v. Liberty Life Assurance Co. of Bos.*,
  992 F.3d 1258 (11th Cir. 2021)................................................................. 9

*Sargeant v. Hall*,
  951 F.3d 1280 (11th Cir. 2020)................................................................. 2

*Sheely v. MRI Radiology Network*,
  505 F.3d 1173 (11th Cir. 2007)................................................................. 8

*State v. Hanson*,
  302 N.W.2d 399 (N.D. 1981)................................................................ 12

*U.S. v. Akwuba*,
  No. 22-11917, 2023 WL 6460040 (11th Cir. Oct. 4, 2023) .................................. 6

*U.S. v. Burnette*,
  65 F.4th 591 (11th Cir. 2023)................................................................... 6

*U.S. v. DeLeon*,
  603 F.3d 397 (7th Cir. 2010)................................................................ 11

*U.S. v. Denison*,

663 F.2d 611 (5th Cir. 1981).................................................................... 10, 11

*U.S. v. Hayes*,
762 F.3d 1300 (11th Cir. 2014).............................................................. 6

*U.S. v. Roche*,
1992 WL 129634 (E.D. Pa. June 9, 1992) ............................................ 11

*U.S. v. Scrimgeour*,
636 F.2d 1019 (5th Cir. 1981)........................................................... 10, 11

*U.S. v. Shaygan,*
652 F.3d 1297 (11th Cir. 2011)................................................................ 14

*U.S. v. Smith*,
35 F.3d 344 (8th Cir. 1994)...................................................................... 10

*U.S. v. Swainson,*
548 F.2d 657 (6th Cir. 1977).................................................................... 11

*U.S. v. Tucker*,
495 F. Supp. 607 (E.D.N.Y. 1980)........................................................... 10

## Regulations

18 U.S.C. § 1623(d) ........................................................................... 10, 11

Fed. R. App. P. 28(i) .............................................................................. 14

Fed. R. Evid. 615 ............................................................................. 13, 14

**<u>INTRODUCTION</u>**

The proceedings that resulted in the sanctions against Charles are exceptional if not unique, both in their extraordinary procedures and rules that appeared to be made up as the process unfolded, and in the substantial resources devoted to prosecuting the pro bono civil rights lawyers who sought to challenge the constitutionality of Alabama's law criminalizing medical care for transgender minors. This years-long process is particularly remarkable given that it was entirely driven by the Appellee, without being joined by any opposing party.[1]

Although Appellee seeks to insulate from scrutiny the propriety of the sanctions entered against Charles by a heavy reliance on the traditional tenets of appellate review, in the end, the finding that Charles intentionally lied to the Panel is supported only by the district court's assertion that he simply did not believe Charles when he denied that he had lied. That is too slender a reed on which to support the potential end of a lawyer's career.

**<u>ARGUMENT</u>**

## I.   THE APPELLEE'S BELATED ADMISSION.

From the very outset of these proceedings, Charles and his fellow *Walker* co-counsel repeatedly and consistently argued that they could not have engaged in judge

---

[1] The intensely personal nature of the district court's involvement has continued. Despite this Court's order directing the Middle District of Alabama to file a responsive brief, Appellee counsel instead entered an appearance and filed a brief on behalf of Honorable Liles C. Burke, the judge who imposed the sanctions on Charles.

shopping because they only filed and dismissed a single case and never filed a second one. *See Vague* Dkt. 3 at 9-13 (May 19, 2022 Pre-Hearing Submission); Dkt. 370 at 15-18; Dkt. 518 at 22-25; June 27, 2024 Hr'g Tr. at 151. Filing and dismissing a single case – without filing a second case – cannot be improper judge shopping as a matter of law. *See, e.g., Sargeant v. Hall*, 951 F.3d 1280, 1287 (11th Cir. 2020) ("[T]he conduct that Rule 41(d) seeks to deter is the filing of the second action."); *Fried v. Town of Vienna*, No. 1:11CV992 JCC/TRJ, 2011 WL 5326050, at *2 (E.D. Va. Nov. 4, 2011) ("One instance of an action that complied with [Rule 41] cannot, on its own, amount to judge-shopping."); 8 James Wm. Moore *et al.*, Moore's Federal Practice—Civil § 41.70 (3d ed. 2019) ("Rule 41(d) does not permit an award of costs unless a second action has been commenced.").[2]

Despite this clear and dispositive defense to any allegation of judge shopping by Charles and his fellow *Walker* lawyers, the Panel and the Appellee ignored and failed to address this legal issue. May 23, 2024 H'rg Tr. at 88 ("THE COURT: Something tells me in June, I will again hear that the *Walker* counsel did not re-file."); Dkt. 640 at 106 ("THE COURT: … I am actually surprised Mr. Ragsdale has not already made the point that I am going to make. I get it that the *Walker* team did

---

[2] The Appellee's order first suggesting the appearance of judge shopping falsely accused the *Walker* lawyers of announcing to the media that "they plan[ed] to refile immediately." (*Walker* Dkt. 24 at 3). Despite it being undisputed that no such public announcement was ever made by the *Walker* lawyers, neither the Panel nor the Appellee ever corrected this accusation.

not refile."); *Id.* at 139.

Instead, after almost four years of costly investigation, interrogation, and looming threats of career ending sanctions, the Appellee's brief has now finally admitted that neither Charles nor any of his *Walker* colleagues should have ever been accused, much less found guilty, of "judge shopping." According to the Appellee:

> If all Eagan and Doss had done was dismiss the *Ladinsky* action, it is **<u>inconceivable</u>** that they would have been sanctioned. Indeed, the *Walker* lawyers did not file another action, and they were not sanctioned for judge-shopping.

(App'ee Brief at 51 (emphasis added)).

"Inconceivable," yet Charles and his colleagues were caused to incur years of allegations and threats, and to incur costly expenses and interruptions to their law practices defending themselves against what the Appellee now casually admits were legally baseless charges of judge shopping. The Appellee's failure and refusal to address this threshold legal defense to the charges that spawned these proceedings and then later admitting that the defense was, in fact, dispositive of the charges against Charles and his *Walker* co-counsel casts further doubt on the reliability of the findings in the final order of sanctions.

## II.   THE DISTRICT COURT APPLIED THE INCORRECT LEGAL STANDARD TO IMPOSE SANCTIONS ON CHARLES.

As argued below, because of the unique nature of the charge against Charles, combined with the criminal character of the court's show cause order(s) and the

sanctions ultimately imposed by the Appellee, the case against Charles should have been decided using the standard of proof beyond a reasonable doubt.

## A.     The Appellee's Error Was Not Invited.

The Appellee's argument that the error in failing to apply the beyond a reasonable doubt standard was invited is disingenuous at best. Appellee's argument attempts to characterize the charges against Charles for allegedly lying to the Panel as composed of two separate charges: one for intentionally lying under oath and one for committing "perjury." In reality, the charges arising out of Charles' testimony to the Panel were routinely and regularly referred to as "perjury" by both the Appellee and Charles in the filings in this case. Charles never argued that the lesser clear and convincing standard should apply to the charges arising out of Charles' alleged lying to the Panel and Appellee's argument to the contrary misrepresents the record and parses Charles' arguments below in a misleading fashion.

Charles faced charges for allegedly lying to the Panel under oath and for other conduct unrelated to his sworn testimony, including judge shopping and failing to keep his clients informed. In the initial order to show cause, the Appellee labeled the testimonial charge against Charles as "**Perjury in Judicial Proceedings**" (doc. 406 at 9-10). The Appellee's supplemental order to show cause similarly referred to that charge against Charles as "Perjury in Judicial Proceedings" (doc. 481 at 15). There was no separate charge arising out of Charles' testimony other than "Perjury in

Judicial Proceedings." (*Id.*).

Charles filed a response to the supplemental show cause order regarding the charge of "Perjury in Judicial Proceedings" (doc. 517) and a separate response (joined by Respondents Esseks and Faulks) to all the other charges. (doc. 518).[3] The first response addressed only the testimonial charge of "Perjury in Judicial Proceedings." (doc. 517) and the second response addressed only the other charges. (doc. 518). In his response, Charles argued that the clear and convincing standard "applies to all of the charges against Mr. Charles, **except for the charge of 'perjury in judicial proceedings'**." (doc. 517 at 8-9 (emphasis added)). Charles then unambiguously argued that "[t]he charge that Mr. Charles committed perjury by 'willfully and contrary to his oath stating material matters which he did not believe to be true' requires proof beyond a reasonable doubt." (*Id.* at 9).

The Appellee regularly and routinely used "perjury" in reference to the charge arising out of Charles' testimony until the Appellee's previous reliance on the federal perjury statute was abandoned in the final order. There was no misunderstanding that the references to "Perjury in Judicial Proceedings" is the same charge for which Charles was sanctioned.

---

[3] Appellee cites both filings without acknowledging that they addressed different charges. Nothing in the response to the other charges invited the court to apply a lesser standard to the testimonial charge that the court had labeled "Perjury in Judicial Proceedings."

This Court has "traditionally construed invited errors narrowly, so as to preserve the opportunity for appellate review in close cases." *Jekyll Island-State Park Auth. V. Polygroup Macau Ltd.*, 140 F.4th 1304, 1325 n19 (11th Cir. 2025) (quoting *United States v. Burnette*, 65 F.4th 591, 600–01 (11th Cir. 2023)); *United States v. Akwuba*, No. 22-11917, 2023 WL 6460040, at *3 (11th Cir. Oct. 4, 2023). Further, the "doctrine is triggered only by unambiguous statements or representations." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1301 (11th Cir. 2021) (quoting *United States v. Hayes*, 762 F.3d 1300, 1310 n.6 (11th Cir. 2014))). Finally, "Federal courts must apply the correct legal standard, regardless of the interpretations advanced by parties." *Jekyll Island-State Park Auth.,* 140 F.4th at 1325 n19; *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S.Ct. 1711 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

Appellee points to no evidence in the record that Charles unambiguously argued that anything other than the beyond a reasonable doubt standard applied to the charge arising out of Charles testimony and the charge for which he was sanctioned.

## B.     The Heightened Standard Applies to These Facts and Charges.

Appellee's brief argues that the heightened standard of review does not apply in every sanctions proceeding, while failing to dispute that this Court's precedent supports the argument that it may be required in some exceptional cases. This case is such a case.

Appellee's reliance on *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir 1987) and *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) ignores that both those cases recognize that **some** sanctions proceedings require a heightened standard of proof and other criminal protections. Instead, Appellee argues that such a heightened standard does not apply in **every** sanctions case, something that Charles has never suggested. As Charles argued in his initial brief, *Donaldson* and *Kleiner* are consistent with the position that "this case fits within the narrow slice of such proceedings that require a heightened burden of proof." (Charles Brief at 20-21).

Appellee also focuses entirely on arguing that every sanction that might include disbarment does not require criminal protections, while essentially ignoring *Kleiner's* holding that disciplinary and sanctions proceedings involving "behavior giving rise to … criminal censure" may also require such protections. *Kleiner*, 751 F.2d at 1209-10. None of the cases cited or relied on by Appellee involve an attorney charged with perjury or any other criminal behavior. Further, Appellee ignores *Mackler Productions, Inc. v. Cohen*, 146 F.3d 126 (2d Cir. 1998), a case which dealt

7

directly with a factual scenario similar to the present case.

Finally, Appellee attempts to argue that, despite both the initial Order to Show Cause (Dkt. 406) and the Supplemental Order to Show Cause (Dkt. 481) specifically citing and relying on the federal perjury statute, the court's abandonment and omission of that statutory citation in the final order, means that the testimonial charge against Charles somehow no longer carried any criminal implications. (Appellee Brief at 97-98). This is pure sophistry. The Appellee's own final order concedes that "while this Court has made no findings of perjury, the criminal penalties it carries illustrate the enormity of knowingly false testimony." Dkt 711 at 224. The mere fact that Appellee changed the label used to describe the charges against Charles does not alter their criminal nature.[4] Indeed, if charging an attorney with perjury/intentionally lying under oath does not trigger the heightened burden of proof exception referenced in *Kleiner* and *Donaldson*, it is hard to imagine what would.

Because the Appellee applied the wrong evidentiary burden of proof to the charges against Charles, the sanctions order must be reversed as an abuse of discretion. *See Holston v. Mora*, No. 22-12808, 2024 WL 3100779, at *2 (11th Cir.

---

[4] *See Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1309 n23 (11th Cir. 2011) ("It is a familiar principle that the label a district court puts on its disposition of a case is not binding on a court of appeals.'" (quoting *Sheely v. MRI Radiology Network,* 505 F.3d 1173, 1182 (11th Cir. 2007)).

June 17, 2024); *see also Peer v. Liberty Life Assurance Co. of Bos.*, 992 F.3d 1258, 1265 (11th Cir. 2021) ("When attorney sanctions are appropriate, as they may be in this case, it is important that a district court apply the right test and follow the proper procedures.").

## III.  CHARLES TIMELY CORRECTED HIS TESTIMONY.

As anticipated, Appellee retreats to the friendly confines of the standards for appellate review in an effort to insulate the finding that Charles timely corrected his inaccurate testimony from any further scrutiny by this Court. This Court should resist the rote reliance on such standards, however.[5]

For example, it is of course undisputed that Charles corrected his previous inaccurate testimony within the same session and only moments after he had provided the testimony for which he was sanctioned. *Vague* Dkt. 75, May 20, 2022 Hr'g Tr. at 192. Under normal circumstances, Charles' recantation and correction of his testimony would have ended the matter.

---

[5] *Cf. Garvey v. Roberts*, 203 F.3d 580, 594 (9th Cir. 2000) (Hawkins, Circuit Judge, concurring):

> [N]o standard of review, no rule of deference is so slavish as to require us to accept the conclusion of an arbitrator who says, in effect, "You lied before when you said there was no collusion, and I refused to rely on those lies in finding that there was collusion; but now that you are telling me that you did lie, that there really was collusion, I refuse to believe you." That is a pitch so far outside the strike zone that it is unworthy of deference, however defined.

Under the federal perjury statute and related caselaw, recantation is a defense if "it has not become manifest that such falsity has been exposed or will be exposed." 18 U.S.C. § 1623(d). "The proper test to apply ... when determining whether recantation occurred before imminent exposure was manifest, is whether the fact that the statements have been or will be exposed as false is objectively manifest to the declarant[.]" *U.S. v. Smith*, 35 F.3d 344, 347 (8th Cir. 1994). The focus is on "the witness's knowledge, gained either from independent sources or from the prosecutor"—or, here, from the Panel. *U.S. v. Tucker*, 495 F. Supp. 607, 614 (E.D.N.Y. 1980); *see also U.S. v. Denison*, 663 F.2d 611, 616 (5th Cir. 1981) (noting "[t]he entire discussion in *Scrimgeour* focused on the defendant's, not the grand jury's, awareness of the exposure of his false testimony").

In nearly every circumstance where courts have found manifest falsity, defendants were exposed to explicitly contradictory testimony or evidence (usually both), and the prosecution explicitly warned the defendant that it had reason to believe their testimony was false. In other words, the defendant's recantation occurred once learning exposure of the testimony's falsity was inevitable, if not confirmed.

For example, in *U.S. v. Scrimgeour*, 636 F.2d 1019 (5th Cir. 1981), the Fifth Circuit determined that the defendant was aware of his statement's falsity because he received two perjury warnings during the proceeding in which he falsely testified, his

attorney characterized another witness as being a "songbird," and the defendant discussed potential perjury charges with his counsel. *See* 636 F.2d at 1024–25 (5th Cir. 1981). For all intents and purposes, then, the *Scrimgeour* defendant was already caught.

In *U.S. v. DeLeon*, 603 F.3d 397, 405 (7th Cir. 2010), the Seventh Circuit similarly determined the falsity of the defendant's statements was manifest because two witnesses—the defendant's mother and his former attorney—both exposed that his statements were false before the defendant recanted. The Sixth Circuit reached the same conclusion in *U.S. v. Swainson,* 548 F.2d 657, 663 (6th Cir. 1977) because the defendant changed his testimony a couple of days after seeing testimony transcript from two witnesses to a transaction the defendant denied the occurrence of in his earlier testimony. *See also U.S. v. Roche*, 1992 WL 129634, at *7 (E.D. Pa. June 9, 1992) (concluding that falsity was manifest where the defendant recanted only after receiving a grand jury target letter that he was being investigated for penalties under § 1623 prosecution, so "it was clear to him his lies would be discovered"). Similarly, in *U.S. v. Denison*, 663 F.2d 611 (5th Cir. 1981), the Fifth Circuit concluded that the defendant's statement was manifestly false where he recanted only after the United States Attorney and FBI agent told him directly that he had perjured himself and the United States Attorney produced photographs evidencing his false statements. 663 F.3d at 614.

Here, there is no such definitive manifestation that Charles' testimony was false, and that the truth was emergent. Rather, Charles testified that the Panel's reading to him of his phone number sparked his recollection that he had in fact called Judge Thompson's chambers. The call's occurrence months before his testimony only underscores that he "genuinely couldn't recall the conversation" prior to his recollected memory. *Vague* Dkt. 75, May 20, 2022 Hr'g Tr. at 193:6-10. And, as Charles alluded to in his testimony, it was just as plausible that the Panel may have learned his phone number from other items his team "had to submit to th[e] Court," including "other filings," or from the *Walker* Team's disclosures to the Panel in the course of its investigation. *Id*. at 193:19-20. At no time prior to Charles' correction of his testimony did the Panel reveal it had possession of Judge Thompson's law clerk's email or any other proof of Charles' call to chambers. The Panel's mere possession of Charles' phone number—and nothing more—does little to evidence that Charles knew his errant testimony had been or would be exposed as false.

The district court's contrary conclusion depends on speculation to discredit the most logical explanation of what happened: that Charles forgot about the inconsequential phone call until the Panel's questioning jogged his memory. Courts "should refrain from speculating, when there is an absence of proof, that genuine regret and a desire to set matters straight did not motivate the retraction." *State v. Hanson*, 302 N.W.2d 399, 403 (N.D. 1981).

12

Regardless of the traditional deference afforded to a district court's findings, there is no evidence to support the conclusion that it was "objectively manifest" to Charles that his previous testimony – given only minutes previously – was about to be exposed. The Appellee's finding that Charles only corrected his testimony because "he knew he was caught" is unsupported by the record and is, therefore, clearly erroneous.

## IV. THE DISTRICT COURT VIOLATED CHARLES' DUE PROCESS RIGHTS.

The proceedings before the Panel and the district court were so extraordinary that the Appellee was unable to find anything comparable to justify them. The record below reveals repeated instances in which the Panel ignored or simply trampled on the Due Process rights of Charles and the other attorneys being investigated. In responding to these allegations, Appellee doesn't deny they occurred, only that Charles and they others had no Due Process rights until years later when the district court finally issued show cause orders.

In particular, Appellee makes no effort to justify the Panel's extraordinary exclusion of Charles and the other lawyers from the proceedings. Instead, the Appellee merely repeats the Panel's declaration that this tactic was "a modified version of sequestration under Fed. R. Evid. 615." (Appellee Brief at 23).

Appellee fails to recognize that Fed. R. Evid. 615 does not permit the

exclusion of parties. Fed. R. Evid. 615(a)(1) ("[T]his rule does not authorize excluding: (1) a party who is a natural person"). "Exclusion of persons who are parties would raise serious problems of confrontation and due process. Under accepted practice they are not subject to exclusion." Advisory Committee Notes to Fed. R. Evid. 615; *see Johnson v. United States*, 780 F.2d 902, 909 (11th Cir. 1986). Calling the exclusion of parties from their own proceedings "a modified version of Rule 615" is like arguing that government prior restraint is allowed under "a modified version of the First Amendment."

This and the myriad of other Due Process violations identified by Charles and the other Appellants render the district court's findings unreliable. *See U.S. v. Shaygan,* 652 F.3d 1297, 1319 (11th Cir. 2011) ("The record before us is unreliable because it was developed, after all, without affording either of them due process.").

Finally, Charles incorporates by reference the due process arguments advanced by Appellants Eagan and Doss in their initial brief and reply brief. *See* Fed. R. App. P. 28(i).

## CONCLUSION

The charges and sanctions against Charles are and continue to be a miscarriage of justice and an abuse of judicial authority. No amount of rote appellate deference can paper this over. From the very beginning of this years-long ordeal, Charles and his fellow lawyers have been treated like criminal suspects yet denied the most basic

due process protections. Now, the Appellee has casually admitted that the judge shopping charges that spawned these proceedings should have never been asserted against Charles and his *Walker* co-counsel. Meanwhile, Charles' reputation and legal career hang in the balance based solely on the district court's gut feelings that he was being untruthful. This Court should right this wrong and reverse the sanctions entered against Charles.

Respectfully submitted,

*/s/ Barry A. Ragsdale*
Barry A. Ragsdale
Robert S. Vance (VAN069)
Dominick Feld Hyde, PC
1130 22nd Street South, Suite 400
Birmingham, AL 35205
Tel.: (205) 536-8888
bragsdale@dfhlaw.com
rvance@dfhlaw.com

*/s/ W. Neil Eggleston*
W. Neil Eggleston
Afi Blackshear
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 389-5016
neil.eggleston@kirkland.com
afi.blackshear@kirkland.com

## FRAP 32(g) CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I hereby certify that the foregoing motion contains 3,756 words, excluding those parts exempted by Fed. R. App. P. 32(f). It further complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6), as it has been prepared in a proportionally-based typeface using Times New Roman 14-point font.

*/s/ Barry A. Ragsdale*
Barry A. Ragsdale

## CERTIFICATE OF SERVICE

I certify that, on January 30, 2026, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system and that notice of such filing was made through the CM/ECF system or by U.S. mail, postage prepaid, to all counsel of record.

*/s/ Barry A. Ragsdale*
Barry A. Ragsdale